<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE: | : | Civil Action No.: 12-2389 (PGS) |
|  | : |  |
| LIPITOR ANTITRUST | : |  |
| LITIGATION | : |  |
|  | : | MEMORANDUM AND ORDER |
|  | : |  |

**ARPERT, Magistrate Judge**

This matter comes before the Court on discovery motions by Direct Purchaser Plaintiffs and End-Payor Plaintiffs which seek to compel Defendants to produce certain documents [dkt. nos. 378, 377]. Defendants have opposed the Motions [dkt. nos. 387, 388]. In addition, non-parties Mylan Pharmaceuticals, Inc. and Mylan Inc. (collectively, "Mylan") sought leave to intervene for the limited purpose of opposing one such Motion to Compel [dkt. no. 399].[1] The Court has considered the Parties' submissions as well as the oral argument of counsel on June 28, 2013. For the reasons discussed below, Plaintiffs' Motions are **GRANTED**, in part, and **DENIED**, in part.

**I.     INTRODUCTION**

This is multidistrict class action litigation. The collective actions allege, inter alia, that Pfizer and the other Defendants conspired to prolong Pfizer's monopoly power in the market for Lipitor ® and its generic equivalents.

The facts, only as they relate to the instant Motions, are as follows. On August 24, 2012, Defendants moved to stay discovery pending resolution of their (then yet to be filed) motions to

---

[1] In a separate Memorandum and Order, the Court denied Mylan's Motion to Intervene. <u>See</u> dkt. no. 444.

dismiss. In an Order dated October 19, 2012, U.S. District Judge Peter G. Sheridan denied Defendants' motion to stay and directed the Parties to engage in limited discovery. See dkt. no. 197. Defendants separately moved to stay discovery pending the Supreme Court's decision in In re K-Dur Antitrust Litigation. On October 25, 2012, Judge Sheridan denied that request as well. See dkt. no. 213.

The basic issue presented by the instant Motions is whether, and to what extent, limited discovery is permissible in light of Judge Sheridan's prior directives.

## II.   SCOPE OF JUDGE SHERIDAN'S ORDER(S)

Plaintiffs and Defendants take vastly different positions regarding the scope of Judge Sheridan's October 19th Order ("the Order").[2] The Order provides:

> 1.   The initial case was commenced about a year ago, and despite same no discovery has been accomplished.
>
> 2.   Plaintiffs only seek limited discovery during this period. For example, the end-payor class seeks document production during this period. The limited discovery focuses on documents and written materials that have been produced previously in patent litigation or other litigation, or documents submitted to the Patent and Trademark Office and the Food and Drug Administration. Similarly, Mr. Alioto who represents Plaintiffs in the Chimes case also seeks document production; but he supplements the prior request by seeking copies of CVS Caremark, California Physician Services and other agreements between Pfizer and co-defendants Ranbaxy Pharmaceuticals. These discovery requests appear to be reasonable and are not over-reaching (Magistrate Judge Arpert will oversee all document production issues that may arise). See Haas v. Burlington, 2009 U.S. Dist. Lexis 110173, at *4 (2009).
>
> 3.   Defendants assert that permitting any discovery may violate the Twombly holding. To the Court, limited discovery like document production is a manageable step-by-step approach to discovery which sufficiently guards against the expenses of over burdensome discovery. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

---

[2] Although the Parties make little reference to Judge Sheridan's October 25th Order, the Court has reviewed that Order and finds it equally applicable to resolution of the instant Motions. For the sake of simplicity only, the Court's discussion focuses largely on the October 19th Order.

> 4.  Here, defendants do not show any clear case of hardship with the limited discovery requests, and there is no particular need for protection to defendants at this point on the discovery requested. See Worldcom Techs. Inc. v. Intelnet Int'l Inc, 2002 U.S. Dist. Lexis 15892. The scope of discovery and any disputes regarding same are subject to determination by Magistrate Judge Arpert. As such, discovery will be well managed.

[dkt. no. 197 at 1-2].

Plaintiffs claim the Order is illustrative only. That is, it provides "examples of general categories of documents that are discoverable." See, e.g., DP Br. at 2. Defendants, on the other hand, claim the Order is limited to those categories of discovery which are specifically enumerated therein. See Def.'s Opp. at 9. Defendants' position is based, in large part, on their view that Judge Sheridan relied on the Parties' representations (regarding the scope of discovery sought) in denying Defendants' motions to stay and allowing limited discovery. Id. at 2, 10. According to Defendants, Plaintiffs should not now be allowed to expand their previous positions.

The Court agrees with Plaintiffs' interpretation of the Order. The Order does not appear to inflexibly limit the scope of discovery. Instead, the Order establishes workable parameters to guide the Parties' initial discovery efforts. As Judge Sheridan noted, this case was commenced over a year ago. In light of the age of the case as well as the pending motions to dismiss, the Order strikes an appropriate balance between the Court's duty to "secure the just, speedy, and inexpensive determination," FED. R. CIV. P. 1, of this action against Defendants' concerns regarding hardship and burden. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Regarding Defendants' concerns, this Court need not revisit the arguments here except to the extent that they implicate issues not raised before Judge Sheridan. The Order makes clear that Judge Sheridan expects this litigation to move forward during the pendency of the motions to dismiss. In reaching this conclusion, Judge Sheridan expressly considered the Supreme Court's

instructions in Twombly and its progeny. Thus, the Order explicitly vests this Court with discretion, Order at ¶ 2, 4, to oversee the "manageable step-by-step approach to discovery which sufficiently guards against the expenses of over burdensome discovery." Id. at ¶ 3. The task for this Court, therefore, is to implement the Order and manage these concerns. With these principles in mind, the Court proceeds to address the Plaintiffs' Motions with a primary focus on the relevance of Plaintiffs' discovery requests.

### III. DIRECT PURCHASER PLAINTIFFS' MOTION

Direct Purchaser Plaintiffs seek documents which can be placed into three categories: (1) documents from two foreign litigations concerning Lipitor ("the foreign litigations" or "the foreign litigation documents"); (2) documents relating to the Pfizer/Ranbaxy litigation concerning Accupril ("the Accupril litigation"); and (3) an Agreement between Ranbaxy and Teva (the "Ranbaxy/Teva Agreement").

#### A. Foreign Litigation Documents

Direct Purchaser Plaintiffs seek documents relating to two foreign litigations regarding Pfizer's foreign counterparts to its '995 patent, the Canadian litigation and the Australian litigation. Specifically, Plaintiffs seek: (i) unredacted pleadings; (ii) fact and expert witness statements/declarations and corresponding exhibits; (iii) responses to discovery requests; (iv) documents produced by the parties; and (v) deposition and trial transcripts and corresponding exhibits. DP Br. at 29.

Disposition of both foreign litigations occurred after the Pfizer/Ranbaxy litigation was concluded in the District of Delaware. Plaintiffs maintain that the Australian court revoked the Australian counterpart to the '995 patent in December 2006 based on a finding that it had been obtained by fraud. One month later, according to Plaintiffs, the Canadian court held that the

Canadian counterpart to the '995 patent was invalid due to the falsity of the data used to support Pfizer's application.

Plaintiffs allege the full extent and nature of Pfizer's abuses before the Patent Trademark Office ("PTO") concerning the '995 patent only came to light during these foreign litigations, such that it was not known to the Delaware court at the time of its 2005 decision. DP Br. at 6. Thus, Plaintiffs seek to discover the information now in order to determine whether the Delaware court and the PTO had access to all of the facts that were developed in the foreign proceedings.

Defendants oppose production of the foreign litigation documents as unduly burdensome and potentially irrelevant. According to Defendants, if Judge Sheridan dismisses Plaintiffs' fraud claims, the issues implicated by the foreign litigation documents are no longer relevant to this action. As a result, Defendants maintain, any benefit of production at this stage of the litigation are outweighed by their burden and/or expense. Def.'s Opp. at 13.

Since Defendants have made a threshold showing that the relevance of the foreign litigation documents may be obviated by the Court's ruling on Plaintiffs' fraud claims, the Court will deny Direct Purchaser Plaintiffs' request <u>without prejudice</u> at this time.[3] For their part, Direct Purchaser Plaintiffs, at argument, disputed Defendants' characterizations regarding the relevance of the documents sought. While the Court might otherwise accept Direct Purchaser Plaintiffs' position, the fact remains that Defendants' motions to dismiss are pending. And, to be sure, production of the foreign litigation documents appears to require a significant undertaking. In light of these factors, the Court concludes that the resultant burden to Defendants is

---

[3] To be clear, Plaintiffs may submit a renewed request for production of the foreign litigation documents if they maintain they are relevant in the event Judge Sheridan dismisses their fraud claims.

outweighed by any immediate benefit to Plaintiffs in production at this time. Accordingly, Direct Purchaser Plaintiffs' Motion in this respect is **DENIED**.

### B. Accupril Litigation

Direct Purchaser Plaintiffs seek documents concerning Pfizer's litigation against Ranbaxy regarding Pfizer's Accupril product. In late 2004, Ranbaxy launched a generic version of Pfizer's Accupril product. Pfizer sued alleging patent infringement and in March 2005 obtained a preliminary injunction in a District of New Jersey action. Pfizer posted a $200 million bond in conjunction with the injunction, and informed that court that the launch had "decimated" its Accupril sales and that Pfizer intended to collect damages. DP Br. at 25. Under an alleged reverse payment agreement, however, Pfizer allegedly agreed to dismiss its claims against Ranbaxy with a "massive" reduction of the damages exposure that Ranbaxy was facing. Id.

Direct Purchaser Plaintiffs allege the Accupril information is relevant to their reverse payment agreement allegations. Id. at 24. Specifically, Direct Purchaser Plaintiffs claim the terms of the Accupril settlement formed a significant part of Ranbaxy's consideration in negotiating the agreement with Pfizer regarding Lipitor. Thus, Plaintiffs allege that Ranbaxy agreed to delay marketing its generic Lipitor product in exchange for, inter alia, Pfizer forgiving Ranbaxy's outstanding liability to it related to Accupril.

The Court agrees with Direct Purchaser Plaintiffs that the Accupril litigation documents are relevant. Defendants claim that the need for this information would be obviated should the Court elect to apply a "scope of the patent" test. Def.'s Opp. at 15. The Supreme Court, however, recently held that antitrust principles and patent principles are not mutually exclusive. F.T.C. v. Actavis, Inc., -- U.S. -- , 133 S. Ct. 2223, 2227, 2231 (2013) ("patent and antitrust policies are both relevant in determining the 'scope of the patent monopoly'—and consequently antitrust law

immunity—that is conferred by a patent"). Here, the Accupril litigation documents are relevant because they may shed light on the nature of the alleged reverse payment agreement between Pfizer and Ranbaxy. Defendants' argument is, therefore, not persuasive. Under Rule 26, the Accupril litigation documents are likely to lead to the discovery of admissible evidence, and there is no demonstrable burden on Defendants to produce these materials. Accordingly, Direct Purchaser Plaintiffs' Motion in this respect is **GRANTED**.

### C. The Ranbaxy/Teva Agreement

In connection with its status as a "first-filer," Ranbaxy stood to earn a substantial sum of money. Thus, Direct Purchaser Plaintiffs allege, Ranbaxy entered into an agreement with another generic pharmaceutical company, Teva, to ensure that Ranbaxy had a back-up manufacturing site for its generic product. DP Br. at 7 (referencing http://www.tevapharm.com/Media/News/Pages/2011/1634994.aspx?year=2011).

Direct Purchaser Plaintiffs claim the Ranbaxy/Teva Agreement is relevant to causation and antitrust injury. Id. at 28. Direct Purchaser Plaintiffs allege that,

> 'but-for' the unlawful settlement agreement, Ranbaxy would have have actively pursued its ANDA for Lipitor, the FDA would have approved that ANDA earlier than it actually did, and Ranbaxy would have been motivated to launch its generic product at the earliest possible moment as evidenced by, inter alia, its decision to partner with Teva in order to ensure that it had a back-up manufacturing site for its generic Lipitor product.

Id. Defendants, in contrast, maintain the Ranbaxy/Teva Agreement is irrelevant as it was negotiated nearly two years after the Ranbaxy/Pfizer settlement and alleged reverse payment agreement. Def.'s Opp. at 3.

The Court concludes the Ranbaxy/Teva Agreement is relevant and/or likely to lead to discovery of admissible evidence. Defendants make much of the fact that the agreement was not executed until several years after Pfizer and Ranbaxy entered into their settlement regarding

Accupril (and thus not relevant to an analysis which looks to the reasonableness of the agreement at the time it was executed). However, as mentioned above, the Supreme Court recently rejected such a hardline approach to evaluation of allegedly anticompetitive agreements. <u>Actavis</u>, -- U.S. -- , 133 S. Ct. at 2227. Nonetheless, even if the Court were to accept Defendants' position that the Pfizer/Ranbaxy Agreement must be evaluated at the time of its execution, the Ranbaxy/Teva Agreement would still be relevant. For example, the Agreement would be relevant to Ranbaxy's state of mind regarding what it stood to lose by delaying its generic entry. At a minimum, the Ranbaxy/Teva Agreement is likely to lead to the discovery of admissible evidence. And there is no demonstrable burden on Defendants to produce these materials. Accordingly, Direct Purchaser Plaintiffs' Motion in this respect is **GRANTED**.

## IV.    END-PAYOR PLAINTIFFS' MOTION TO COMPEL

End-Payor Plaintiffs seek production of settlement agreements related to six domestic litigations involving Pfizer and certain generic companies. In connection with Defendants' motions to stay, End-Payor Plaintiffs sought discovery of documents related to certain domestic litigations concerning to Pfizer's alleged attempts to delay generic Lipitor's entry into the market and to thwart efforts of generic manufacturers to obtain judgments of invalidity and/or noninfringement. Those litigations include: (1) the June 7, 2007 action against Teva in the U.S. District Court for the District of Delaware; (2) the December 6, 2007 action against Cobalt in the U.S. District Court for the District of Delaware; (3) the December 2008 action against Apotex in the U.S. District Court for the Northern District of Illinois; (4) the June 15, 2009 action against Mylan in the U.S. District Court for the District of Delaware; and (5) the August, 2010 action

against Actavis in the U.S. District Court for the District of Delaware.[4] Defendants have agreed to produce certain documents from these litigations but have not produced the settlement agreements. See Def.'s Opp. at 6.

The Court agrees with End-Payor Plaintiffs' that the settlement agreements in these cases are relevant. Defendants' position that these requests amount to an "impermissible fishing expedition," Def.'s Opp. at 15, is undermined by the fact that Pfizer has already agreed to produce documents from the underlying litigations which preceded each of the requested settlement agreements. See id. at 6. "Further, courts have considered settlement agreements where there are allegations of sham litigation." In re Neurontin Antitrust Litig., 2013 WL 4042460, at *9 (D.N.J. Aug. 8, 2013) (citation omitted). Finally, any concerns regarding confidentiality can be adequately addressed by the Discovery Confidentiality Order [dkt. no. 346] and Protective Order [dkt. no. 359], which are already in place. Under Rule 26, the settlement agreements are likely to lead to the discovery of admissible evidence. In addition, there is no demonstrable burden on Defendants to produce these materials. Accordingly, End-Payor Plaintiffs' Motion is **GRANTED**.

## V. CONCLUSION & ORDER

The Court having considered the papers submitted and argument of counsel, and for the reasons set forth on the record and above;

**IT IS** on this 20th day of August, 2013;

**ORDERED** that Direct Purchaser Plaintiffs' Motion to Compel [dkt. no. 378] is **GRANTED**, in part, and **DENIED**, in part, as set forth above; and it is further

---

[4] The March 24, 2008 action against Ranbaxy in the U.S. District Court for the District of Delaware was also requested. This case is not a subject of End-Payor Plaintiffs' Motion to Compel.

**ORDERED** that End-Payor Plaintiffs' Motion to Compel [dkt. no. 377] is **GRANTED**; and it is further

**ORDERED** that Defendants shall produce the responsive documents within 30 days of the entry of this Order.

<u>s/ Douglas E. Arpert</u>
**DOUGLAS E. ARPERT, U.S.M.J.**