**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE LIPITOR ANTITRUST LITIGATION | MDL No. 2332 |
| | Master Docket No. 3:12-cv-2389 (PGS/DEA) |
| This Document Relates To: ALL END-PAYOR CLASS ACTIONS | **MEMORANDUM AND ORDER** |

This matter comes before the Court on a motion filed by Plaintiffs Sandra Hellgren ("Hellgren") and Anita J. Cox ("Cox") (and together, "California Consumers") for relief from part of Case Management Order No. 1, ("CMO-1", ECF No. 109), to create a subclass of California consumers and to appoint Interim Lead Class Counsel for the subclass. (ECF No. 955). Oral argument was held on August 5, 2020. For the reasons set forth herein, the motion is denied.

## I.    Background

By way of background, in or about 2012, certain direct and indirect purchaser actions were initiated against Pfizer, Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Co., Warner-Lambert Co., LLC, Ranbaxy, Inc., and other defendants in connection with an alleged anticompetitive scheme to delay market entry of generic versions of the popular cholesterol drug Lipitor. On April 20, 2012, the U.S. Judicial Panel on Multidistrict Litigation (the "Panel") centralized before this Court four direct purchaser actions, which alleged similar anticompetitive schemes to delay market entry of generic Lipitor. (Transfer Order, ECF No. 1). Thereafter, the Panel issued seven Conditional Transfer Orders, which transferred to this District several additional "tag-along" direct and indirect purchaser actions. (Conditional Transfer Orders Nos. 1-7, ECF Nos. 3, 26, 88, 89, 102, 821).

On June 7, 2012, this Court ordered Cecchi and Pearlman to jointly convene a meeting of all plaintiffs' counsel, in both the direct and indirect purchaser actions, to confer about the appointment

1

of counsel and leadership structure issues. (ECF No. 35).

In accordance with the Superseding Order, all direct purchasers and end-payor plaintiffs agreed on appointments of counsel and leadership structures, which is memorialized in CMO-1. (*See* ECF Nos. 93, 94, CMO-1 at 3). CMO-1 applied to all of the civil actions centralized before this Court at that time (August 10, 2012), as well as all subsequent tag-along actions and other related cases that have been filed in, removed to, or transferred to this Court for consolidation with this litigation. (CMO-1 ¶ 1). CMO-1 addresses separately: (i) direct purchaser class organization; and (ii) end-payor class organization. Only the end-payor class organizational structure is implicated with respect to the instant motion.

## A.     END-PAYOR CLASS ORGANIZATION UNDER CMO-1

CMO-1 appoints four Interim Co-Lead Class Counsel for the proposed class of end-payors: Buchman, Esades, Richards and Wexler.[1] (*Id.* ¶ 26). In addition, the Court appointed Rodriguez as Interim Liaison Counsel. (*Id.* ¶ 27).

In addition to the four Co-Lead Class Counsel members, CMO-1 created an executive committee "delegating significant and meaningful participation in the prosecution of the End-Payor Class Actions." (*Id.* ¶ 29).  According to CMO-1, the executive committee consists of Goldstein, Stranch, Dugan, Scolnick, Papale and Sauder.  (*Id.*).

Pursuant to CMO-1, Interim Co-Lead Class Counsel maintain the sole authority over the following matters, *inter alia*, on behalf of plaintiffs in the End-Payor Class Actions: (i) the timing and substance of any settlement negotiations with the defendants, and decisions regarding acceptance of settlement proposals; (ii) the allocation of any Court awarded fees and costs among counsel in the end-payor class actions; and (iii) any and all other matters concerning the prosecution or resolution of the end-payor class actions. (*Id.* ¶ 30).

---

[1]     For ease of reading, the surname of individual lawyers are used herein, rather than reference to their law firm.

**B.    MEDIATION**

On March 12, 2020, at the request of all parties, the Court appointed Faith Hochberg, U.S.D.J. (ret.) as mediator to facilitate a possible resolution of all direct and indirect purchaser actions. (ECF No. 948). To date, there have been at least two mediation sessions conducted by video conference, due to the novel coronavirus (COVID-19).

For context, even though this litigation has been pending for more than eight years, the present motion seeking the creation of a new subclass of California consumers was only filed on May 22, 2020, or two months after mediation commenced.

**II.    LEGAL STANDARDS**

Under Fed. R. Civ. P. 23(c)(5), a district court may, where appropriate, divide a class into subclasses. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 202 (3d Cir. 2005) ("A district court hearing a class action has the discretion to divide the class into subclasses and certify each subclass separately.").

According to the Third Circuit, a district court's "option to utilize subclasses is designed to prevent conflicts of interest in class representation." *Id.* (citation and quotation marks omitted); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010). The Third Circuit cautioned, however, that "[w]hile subclasses can be useful in preventing conflicts of interest, they have their drawbacks." *Cendant*, 404 F.3d at 202. Pertinently, "subclassing can . . . present a huge obstacle to settlement if each subclass has an incentive to hold out for more money." *Ins. Brokerage*, 579 F.3d at 271 (citing *Cendant*, 404 F.3d at 202). Accordingly, the district court has considerable discretion in utilizing subclasses because the Third Circuit has "[r]ecogniz[ed] that the decision whether to certify a subclass requires a balancing of costs and benefits that can best be performed by a district judge who is familiar with the management of the case." *Cendant*, 404 F.3d at 202 (collecting cases and quoting *Alexander v. Gino's, Inc.*, 621 F.2d 71, 75 (3d Cir. 1980)); *see also Pet Food*, 629 F.3d at 343-44;

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (*en banc*). If a subclass is created, subclass counsel may be appointed by the Court if it is determined that counsel can "fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(4); *In re Nat. Football League Players Concussion Injury Litig.*, 775 F.3d 570, 582 (3d Cir. 2014).

### III.   ANALYSIS

Hellgren and Cox set forth various arguments as to why this Court should exercise its discretion in granting them leave to move for the creation of their subclass and appointment of counsel. The basic issue is whether a new end-payor subclass is warranted because Hellgren and Cox are "the only [plaintiffs] who took the [Lipitor] pill." (compare California Consumers' Moving Br. at 4, 16 *with* Opp. Br. at 4, ECF No. 962).

In order to resolve this dispute, one must look to the End-Payor Plaintiffs' Third Amended Consolidated Class Action Complaint and Jury Demand, ("TAC", ECF No. 815), to determine whether other consumers of Lipitor are included in the end-payor plaintiffs' consolidated pleading. In doing so, it appears that five individual consumers are named as plaintiffs: Edward Czarnecki, Emilie Heinle, Andrew Livezey, Jean Ellyne Dougan, and Nancy Billington. (TAC ¶¶ 33-36).[2]  The TAC alleges that each of these individuals "purchased and/or paid for some or all of the purchase price for Lipitor and/or its generic equivalent" in their respective states. (*Id.*). The TAC does not allege that these individual consumers purchased Lipitor for resale[3] or were otherwise stockpiling the drug. (*Id.*). It can be inferred that some of these individual plaintiffs (Czarnecki, Heinle, Livezey, Dougan, and Billington) actually consumed the Lipitor pill or its generic equivalent after purchasing it. Accordingly, contrary to their repeated assertions, Hellgren and Cox are unlikely to be the only plaintiffs in the end-payor class to have actually consumed the pill. In any event, there are other

---

[2] While Cox was included in the End-Payor Complaint initially, she was removed from same in subsequent iterations over objections from counsel. (California Consumers' Moving Br. at 11). At present, there are no California consumers named in the End-Payor Complaint. (Id.).
[3] To wit, if they resold the drug, they would not, by definition, be an end-payor.

concerns for the Court to consider with respect to their motion; specifically, (i) whether there is a conflict of interest within the class due to the asserted "pass-on" defense; (ii) standing concerns; and (iii) allocation issues.   Each of these issues are discussed, in turn, below.

The gravamen of Hellgren's and Cox's argument is that a subclass is needed to subvert a purported "imminent and fundamental conflict of interest between the California consumer and the other end-payors" that exists because of the affirmative "pass-on" defenses asserted by the defendants. (California Consumers' Moving Br. At 2, 9-12; *see also* Pfizer's Answer and Defenses to the End-Payor Plaintiffs' Third Amended Consolidated Class Action Complaint and Jury Demand at 105, Seventeenth Defense, ECF No. 827; Answer of Ranbaxy, Inc., Ranbaxy Pharmaceuticals, Inc., and Ranbaxy Laboratories Ltd. To Third Amended Consolidated Class Action Complaint at 95, Twelfth Affirmative Defense, ECF No. 826).

Generally, a pass-on defense raised in an antitrust action objects to the payment of damages where direct purchasers have "passed-on" some or all of the supracompetitive overcharges to indirect purchasers downstream in the chain of distribution. *See Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 763 (2010); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 633 (7th Cir. 2002). Federal and state courts do not ordinarily permit pass-on defenses in antitrust cases. *Id.* at 763; *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 488 (1968). There are, however, two limited circumstances in which pass-on defenses have been recognized: (i) in cases involving "cost-plus" contracts; and (ii) where necessary to avoid "duplicative recovery" because "multiple levels of purchasers have sued." *Id.* at 787. Hellgren and Cox assert that the second exception applies here, and same raises a "debilitating" conflict of interest within the End-Payor Class.

Specifically, Hellgren and Cox contend that the other California end-payors that are included in the TAC, such as Providence, Rhode Island and Baltimore, Maryland and Bluecross/Blueshield of Louisiana ("BCBSLA") are "entities who likely passed-on some or all of the overcharge to the

5

California consumers" by way of insurance premiums and co-payments. (California Consumers'
Moving Br. at 11). As such, Hellgren and Cox argue, Pfizer and Ranbaxy have asserted a pass-on
defense, which, in the context of the recent mediation, has created a conflict of interest between
California consumers (*e.g.*, Hellgren and Cox) and the other California end-payors named in the TAC.
(*Id.* at 12). Namely, Hellgren and Cox argue that, because of the pass-on defense, the "consumer
plaintiffs and the other end-payers are adverse parties on the central and fundamental issue of who can
claim damages against Pfizer and Ranbaxy." (*Id.* at 10).

Hellgren and Cox raise a peculiar argument. To wit, the notion that some end-payors are
passing on overcharges to other end-payors is illogical. As defined in CMO-1, end-payors are "the
last persons in the chain of distribution who pay all or a portion of the purchase price of Lipitor
prescriptions not for resale, such as consumers and third-party payors." (CMO-1 at 3). Thus, by
definition, it is highly improbable that one end-payor would pass-on an overcharge to another end-
payor because all end-payors are "the last persons in the chain of distribution." (*Id.*); *see In re
Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *22 (N.D. Cal. Feb. 21,
2017). Thus,  Hellgren's and Cox's reliance on the pass-on defense to assert a conflict of interest
within the End-Payor Class is misplaced.

Notwithstanding, in this case, it is unlikely that the defendants can successfully assert a pass-
on defense against the other California end-payors. Here, Hellgren and Cox argue that a pass- on
defense may be asserted because certain third-party payors in the End-Payor Class charged California
consumers insurance co-payments and premiums. (*See* California Consumers Moving Br. at 11-12).
However, third-party payors do not pass-on overcharges to consumers through copayments. (Opp. Br.
at 7-9). That is because third-party payors do not sell Lipitor to consumers.
(*Id.*). Rather, consumers and third-party payors are injured by different portions of the same Lipitor
purchase and related overcharge. (*Id.* at 7).  The consumers' portion of a Lipitor purchase (and

overcharge) is their copayment and the third-party payor's portion of the Lipitor purchase (and overcharge) is the remainder. (*Id.*). Moreover, our sister courts have routinely found that insurance premiums are not relevant to a pass-on defense "because insurance premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past." *In re Asacol Antitrust Litig.*, No. CV 15-12730-DJC, 2017 WL 53695, at *4 (D. Mass. Jan. 4, 2017)[4]. Accordingly, for the foregoing reasons, Hellgren and Cox have not adequately demonstrated that the purported availability of a pass-on defense will create a conflict of interest in the End-Payor Class such that the creation of a new subclass is warranted.

In addition, in their moving brief, Hellgren and Cox argue, in a single sentence, that the creation of a California consumer subclass is warranted because the other California end-payors named in the end-payor Complaint (the cities of Baltimore and Providence and BCBSLA) "may not have standing to sue under California's antitrust laws because they suffered no damages or did not purchase Lipitor or any generics in the state." (California Consumers' Moving Br. at 7).

As a threshold issue, it would be inappropriate for this Court to rule, in speculative fashion, on whether the defendants could successfully challenge certain end-payors' standing to sue in a California court. The defendants have previously chosen not to move to dismiss Plaintiffs' claims on the grounds that Plaintiffs' lacked standing to pursue claims for California consumers, (Opp. Br., at 4 n.8 (citing Mem. and Order, ECF No. 813)); and no such motions to dismiss for lack of standing are currently pending. Accordingly, the Court will not decide this issue or adjudicate the rights of certain California end-payors absent a proper motion because it is not ripe. As such, Hellgren and Cox have

---

[4] *See also Lidoderm*, 2017 WL 679367, at *23; *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-MD-2819 (NG) (LB), 2018 WL 5094090, at *3 (E.D.N.Y. Oct. 18, 2018); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. MDL 14-2503-DJC, 2016 WL 6897809, at *2 (D. Mass. Sept. 19, 2016); *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 690 (S.D. Fla. 2004)).

not adequately demonstrated that the standing issue warrants the creation of a new subclass.[5]

Separately, the Court sees no practical reasons for creating Hellgren's and Cox's proposed subclass. Under CMO-1, Interim Co-Lead Counsel and the Executive Committee were appointed to represent the interests of *all* end-payors, including both consumers and third-party payors. (*See* CMO-1 at 3). Indeed, Hellgren's and Cox's counsel, Mr. Papale, is a member of the Executive Committee who is specifically tasked with advising on California consumer issues. (*Id.* ¶ 30).   Moreover, over the last eight years, there is no evidence that Interim Co-Lead Counsel and the Executive Committee have failed to vigorously advocate on behalf of end-payors.

Finally, it was represented to the Court that, during the mediation before Judge Hochberg, the end-payors have attempted to negotiate settlements with Pfizer and Ranbaxy based on aggregate, class-wide damages. (Opp. Br. at 11). Since there are no conflicts of interest within the End-Payor Class, any issues concerning the apportionment of damages among the various end-payor plaintiffs may be addressed at a later time through mediation, if necessary.  *See Ins. Brokerage*, 579 F.3d at 272.

In sum, for all of the foregoing reasons, Hellgren's and Cox's motion is denied.

---

[5] Specifically, it is at least conceivable that, under *Glumetza* (on which Hellgren and Cox rely), allegations that the plaintiffs Baltimore, Providence, and BCBSLA each "purchased, paid and/or provided reimbursement for . . . Lipitor [or] its generic equivalent" in California and several other states (TAC ¶¶ 25, 27, 31), would be adequate to confer standing. *See In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2020 WL 1066934, at *10 (N.D. Cal. Mar. 5, 2020).

## <u>Order</u>

**THIS MATTER** having come before the Court on a motion filed by Plaintiffs Sandra Hellgren ("Hellgren") and Anita J. Cox ("Cox") (and together, "California Consumers") for relief from part of Case Management Order No. 1 to create a subclass of California consumers and to appoint separate Interim Lead Class Counsel, (ECF No. 955); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

**IT IS** on this 22nd day of September, 2020,

**ORDERED** that California Consumers' motion, (ECF No. 955), is DENIED.

_____
PETER G. SHERIDAN, U.S.D.J.