## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE LIPITOR ANTITRUST LITIGATION | MDL No. 2332 |
| | Master Docket No. 3:12-cv-2389 (PGS/DEA) |
| This Document Relates To: ALL DIRECT PURCHASER CLASS ACTIONS | **MEMORANDUM AND ORDER** |

      This matter comes before the Court on Plaintiff César Castillo, LLC's ("Castillo") motion to modify Case Management Order No. 1, ("CMO-1," ECF No. 109), to appoint Cecchi[1] and Nussbaum as additional Interim Lead Class Counsel for the proposed direct purchaser class.  (ECF No. 961). Oral argument was held on July 30, 2020.

I.

      By way of background, in or about 2012, certain direct and indirect purchaser actions were initiated against Pfizer, Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Co., Warner-Lambert Co., LLC, Ranbaxy, Inc., and other defendants in connection with an alleged anticompetitive scheme to delay market entry of generic versions of the popular cholesterol drug Lipitor.  On April 20, 2012, the U.S. Judicial Panel on Multidistrict Litigation (the "Panel") centralized before this Court four Direct Purchaser actions, which alleged similar anticompetitive schemes to delay market entry of generic Lipitor.  (Transfer Order, ECF No. 1).  Thereafter, the Panel issued seven Conditional Transfer Orders, which transferred to this District several additional "tag-along" direct and indirect purchaser actions.  (Conditional Transfer Orders Nos. 1-7, ECF Nos. 3, 26, 88, 89, 102, 821).

---

[1] For ease of reading, the surnames of individual attorneys are used rather than reference to their respective law firms.

On June 7, 2012, this Court ordered Cecchi and Pearlman to jointly convene a meeting of all Plaintiffs' counsel, in both the direct and indirect purchaser actions, to resolve management issues including the appointment of lead counsel.  (Superseding Order, ECF No. 35).  Within that Superseding Order, the Court sought Plaintiffs' counsel to select lead counsel who were best able to adequately protect their clients' interests.

Surprisingly, the direct and end-payor Plaintiffs agreed and recommended lead counsel and leadership structures.  In addition, Plaintiffs' and Defendants' counsel agreed to file a single complaint for all direct purchasers, and a separate complaint for all end-payors.  This recommendation was adopted in Case Management Order 1 (CMO-1) (ECF No. 109).  CMO-1 applied to all the civil actions centralized before this Court as well as all subsequent tag-along actions and other related cases pending before this Court.  Also, CMO-1 addressed separately the Direct Purchasers' Class action and the End-Payors' Class Action.  The goal of CMO-1 was for lead counsel to work together, and to represent the putative class fairly.  As the Court recalls, the appointments within CMO-1 were designated as "interim" because it sought to protect the right of disgruntled class members to challenge the composition of the management structure, if and when substantive issues arose.

CMO-1 appoints three attorneys as Interim Lead Class Counsel for direct purchasers.  They are Gerstein, Sobol and Sorensen.  In addition, Cecchi and Pearlman were appointed to serve as Co-Interim Liaison Counsel for the Direct Purchaser Class (CMO-1, ¶ 20).  Presently, Gerstein, Sobol and Sorensen maintain sole authority over all of the direct purchasers' litigation strategy, including timing and substance of any settlement negotiations (CMO-1, ¶ 21).

The end-payors have a different structure.  There are four Interim Co-Lead Counsel, namely Buchman, Richards, Esades and Wexler; and Rodriguez is liaison counsel for all end-payor class members.  In addition, the end-payors have an executive committee which is vested with

"significant and meaningful participation in the prosecution of the end-payor Class Actions"
(CMO-1, ¶ 29).  The executive committee has six members, namely Goldstein, Stranch, Dugan,
Scolnick, Papale, and Sauder. (CMO-1, ¶ 29).  Similarly, Co-Lead Counsel of the End-Payor Class
Action has the same authority as the Direct Purchaser Interim Co-Lead counsel, including the
oversight of the timing and scheduling of settlement negotiations. (CMO-1, ¶ 30).

Notably, the scope of CMO-1 is limited in two respects. First, the Direct Purchaser Class
Action and the End-Payor Class Action are not consolidated with each other, except that "pre-trial
proceedings and discovery between the consolidated actions will be coordinated to the extent
practicable."  (CMO-1, ¶ 10). Second, the CMO-1 does not provide any mechanism to develop a
uniform position among all Plaintiffs (direct purchasers and end-payors) to mediate a settlement
with defendant(s) during the pre-trial phase.

## II.

In the present motion, Castillo seeks the appointment of two additional Interim Lead Class
Counsel for the direct purchaser class: Cecchi and Nussbaum.  Castillo is a new party to this
already years-long litigation.  On May 22, 2020, Cecchi and Nussbaum (on behalf of Castillo)
filed a tag-along direct purchaser action.  (*Id*.).  That action was consolidated as a direct purchaser
action before this Court on July 16, 2020.  (*Id*., ECF No. 9).  According to counsel, Castillo is a
family-owned drug wholesaler who purportedly "purchased substantial amounts of brand-name
and generic Lipitor during the Class Period."  (CCI Moving Br. at 1, 3, ECF No. 961-1).  Castillo
is presently serving as class representative in other antitrust cases.  (*Id*. at 3 (citing *In re Actos
Direct Purchaser Antitrust Litig*., 1:13-cv-09244 (S.D.N.Y.); *In Re: Generic Pharms. Pricing
Antitrust Litig*., No. 2:16-md-2724 (E.D. Pa.); *In re Zetia (Ezetimibe) Antitrust Litig*., 18-cv-2836
(E.D. Va.))).

Castillo argues that two additional Interim Lead Counsel should be appointed because new

circumstances have arisen since CMO-1 was issued.  The changed circumstances are: (1) the complaint filed by Castillo; (2) the investigation of former executives of Rochester Drug by federal prosecutors, and a deferred prosecution agreement; and (3) Rochester Drug has filed for bankruptcy which may give rise to a conflict between it and a defendant who is a substantial creditor.  In addition, after oral argument, Sorensen advised that Rochester Drug no longer seeks to be a named plaintiff but he wishes to remain an Interim Lead Counsel (ECF 982).  As a result of these events, Castillo argues that the direct purchasers have a right to reconsider the membership of Interim Lead Counsel.

Gerstein and Sorensen oppose the motion and raise three arguments against Castillo.[2]  First, they argue that Castillo's motion has nothing to do with Rochester Drug's calamities and, rather, is an attempt to wrest control of the litigation strategy and ongoing settlement negotiations (mediation) by gaining controlling authority of Interim Lead Counsel. That is, since Cecchi and Nussbaum would most likely adopt Sobol's position, which favors mediation, those three would control the direction of the litigation – leaving Gerstein and Sorensen out in the cold.

Secondly, Gerstein and Sorensen argue that facts about Rochester Drug are not relevant to this motion because those issues should arise during the class certification motion, and not at this stage of the litigation.  This argument may be moot due to Sorensen's representations.

Their third argument is a ruthless attack on the professionalism of Cecchi and Nussbaum. Without deciding the merits of Gerstein and Sorensen's argument, suffice it to say, Cecchi and his law firm have zealously represented many clients before this Court and their professionalism has never been questioned.  On the other hand, Cecchi should have disclosed that his firm represents another client in a lawsuit who is opposed to three of the direct purchasers who support Gerstein's

---

[2]  Opponents to Castillo's motion include: (i) Gerstein and Mr. Sorensen; (ii) Pearlman; and (iii) Purchaser Plaintiffs Value Drug Company, Rochester Drug Co-Operative, Inc., McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Drug Corporation. (*See* ECF Nos. 971, 972, 973).

and Sorensen's position (ECF No. 972, p. 179).  Obviously, such representation may undermine the direct purchasers' confidence that Cecchi is best able to fairly act as Interim Lead Counsel.

In addition, Sorensen and Gerstein attack Nussbaum because she relinquished her representation of Meijer, Inc., and Meijer Distribution, a tag-along opt-out, whom she represented for about eight years, in order to undertake representation of Castillo.  According to Gerstein and Sorensen, Nussbaum's change of representation shows her lack of loyalty and working knowledge of the case.

III.

Under Rule 23(d) of the Federal Rule of Civil Procedure, an order entered by the Court regarding the management of a class action (e.g., CMO-1) "may be altered or amended from time to time."  Fed. R. Civ. P. 23(d)(2).  The Court may modify an order regarding the management of a class action only where "new facts have come to light, or there has been a change of circumstances since the original order was issued."  *Zenith Labs., Inc. v. Carter-Wallace Inc*. 530 F.2d 508, 512 (3d Cir. 1976); *City Select Auto Sales Inc. v. David/Randall Assocs., Inc.*, 96 F. Supp. 3d 403, 413 (D.N.J. 2015).[3]

Moreover, a leading treatise notes that "Rule 23(d) . . . gives the trial court extensive power to control the conduct of a class action.  Charles A. Wright & Arthur Miller, 7B *Federal Practice and Procedure* 1791 (3d ed. 1998).  "[T]he objective of [Rule] 23(d) is clearly indicated in the Advisory Committee Note; it states that the provision 'is concerned with the fair and efficient conduct of the action.'" *Id*. (quoting Fed. R. Civ. P. 23(d) advisory committee's note to 1966 amendment). Given these precepts, it appears that, under Rule 23(d), this Court has broad authority to modify CMO-1 to control the management of the class action to ensure the fairness and

---

[3]  Although these cases may be distinguished because they concern the modification of a class certification order; the rationale still applies.

efficiency of the litigation.  *Id.*

In any event, to modify CMO-1, one may consider the factors set forth in Federal Rule of Civil Procedure 23(g)(1)(A).  *In re Insulin Pricing Litig.*, No. 3:17-CV-0699-BRM-LHG, 2017 WL 4122437, at *1 (D.N.J. Sept. 18, 2017) (citing *Yaeger v. Subaru of Am., Inc.*, No. CIV.A 14-4490 (JBS/KMW), 2014 WL 7883689, at *1 (D.N.J. Oct. 8, 2014)).  Those factors include: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to  representing the class. *Id.*; Fed. R. Civ. P. 23(g)(1)(A). And, "[i]n addition to the mandatory factors enumerated in Rule 23(g)(1)(A), 'the Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class and may, if it deems it necessary, direct the proposed class counsel to provide information on any subject pertinent to the appointment.'" *Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*, No. CV 16-2740 (JMV), 2017 WL 1196458, at *2 (D.N.J. Mar. 13, 2017) (quoting *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 701-02 (S.D. Fla. 2004)), *report and recommendation adopted* No. CV 16-2740, 2017 WL 1181575 (D.N.J. Mar. 29, 2017); *see Third Circuit Task Force Report Selection of Class Counsel Third Circuit Task Force on Selection of Class Counsel*, 208 F.R.D. 340, 419-20 (2002).

After considering the motion and arguments, the Court has several observations:

1)      As demonstrated by counsels' fierce debate at oral argument, and impugning each other's professional ethical integrity, the dueling plaintiffs' counsel vehemently disagree about who is best able to act fairly on behalf of all direct purchasers.

2)      The alleged facts concerning the bankruptcy and criminal investigation of Rochester Drug and the selection of its attorney as Interim Lead Counsel may give rise to apprehension from

other counsel about Sorensen's involvement as Interim Lead Counsel.

    3)     CMO-1 may need modification because it placed significant authority in Sorensen and Gerstein to control the entire litigation. Such control may not have been envisioned by the putative class members at the time that the CMO-1 was ordered;

    4)     By the frequency of counsel changing representation, it appears that the attorneys rather than the clients are controlling the case. That is, the tail (legal fees) is wagging the dog (the substance of the litigation).

    5)     Other counsel has some significant frustration with the leadership of Gerstein and Sorensen for two reasons.[4]  First, the matter has been ongoing for eight years, yet Gerstein and Sorensen opposed mediation because they required more discovery; but they have not specified the exact nature of the discovery they require. Secondly, in the motion papers, there are statements that the settlement in the mediation was "deficient"; but "deficient" was not explained.  To the direct purchasers and end-payors, these amorphous and vague explanations may spark a need for leadership with more precise and wholesome answers.

    6)     CMO-1 may need modification because there is a lack of diversity of the direct purchasers Interim Co-Lead counsel.  More diversity and a fresh approach may broaden the perspective of the Interim Co-Lead Counsel.

    7)     It appears that the end-payors have a more diverse and broader management structure than the direct purchasers.  The direct purchasers may seek to reorganize in a fashion similar to the end-payors who have four Interim Lead Counsel and a six-member executive committee.  In addition, all counsel may desire a new committee comprised of members from the direct purchasers and the end-payors with the sole authority to engage in settlement negotiations.

---

[4]  Cecchi and Nussbaum would certainly agree with this proposition.

8)        Castillo's motion to add two members to the direct purchasers Interim Co-Lead Counsel is denied for several reasons.  First, Castillo is a newly filed case, and it is unfair or arbitrary to delegate such substantial authority to a new participant without the input from the direct purchasers.  Secondly, Gerstein and Sorensen have alleged, but have not adequately proven, that Cecchi and Nussbaum have acted in an unethical or unprofessional manner (changed representation). This change of representation issue may lead other counsel to conclude they are not best able to represent them as Interim Co-Lead Counsel.  Lastly, CMO-1 was developed by the mutual agreement of counsel, and any change in structure should reflect the collective consideration of all counsel before yielding to court intervention.

## ORDER

**THIS MATTER** having come before the Court on Plaintiff César Castillo, LLC's ("Castillo") motion to modify CMO-1 to appoint James E. Cecchi, Esq. of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., and Linda Nussbaum, Esq. of Nussbaum Law Group, P.C. as additional Interim Lead Class Counsel for the proposed direct purchaser class, (ECF No. 961); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

**IT IS** on this 24th day of September, 2020,

**ORDERED** that Castillo's motion, (ECF No. 961), is **DENIED**; and it is further

**ORDERED** that Messrs. Pearlman and Cecchi are hereby directed (1) to arrange a meeting of direct purchasers to confer and recommend whether the management of the Direct Purchasers Class Action as set forth in CMO-1 should be amended; and (2) Pearlman and Cecchi shall submit a report, in full and in detail, to the Court setting forth the resolutions and the varying positions of the parties by November 1, 2020, and it is further

**ORDERED** that Rodriguez, Pearlman and Cecchi are hereby directed to arrange a joint meeting of direct purchasers counsel and end-payor counsel to confer and recommend whether a committee should be established with the sole authority of negotiating a settlement on behalf of all Plaintiffs.  In addition, Rodriguez, Pearlman and Cecchi shall submit a report, in full and in detail, to the Court setting forth the resolutions and/or the varying positions of all parties by November 1, 2020; and it is further

**ORDERED**  that the mediation continues in accordance with Mediator Hochberg's direction.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 24, 2020