**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BURLINGTON DRUG CO., INC. et al., *Plaintiff*, v. PFIZER INC. et al., *Defendants*. | Civil Action No. 3:12-cv-02389-PGS-DEA **MEMORANDUM AND ORDER** |

This matter comes before the Court on Plaintiffs Sandra Hellgren's and Anita Cox's ("Named Consumers") motion for reconsideration of the Court's September 22, 2020 memorandum and order. (Moving Br., ECF No. 994). In that order, the Court denied the Named Consumers' motion (1) for relief from part of Case Management Order No. 1 ("CMO-1," ECF No. 109); (2) to create a sub-class of California Consumers; and (3) to appoint separate interim lead counsel for the subclass. (Mem. & Order, ECF No. 989). Named Consumers now move for reconsideration of that order on the grounds that the Court should have ruled on their claim that the End-Payor Plaintiffs did not have standing to assert California antitrust claims in their Third Amended Consolidated Complaint (ECF No. 815). (Moving Br. at 1). Oral argument was held on January 28, 2021. For the reasons that follow, the Named Consumers' motion is granted in that the Court will reconsider its prior ruling; but the relief requested is denied.

**I.**

This matter concerns a class action suit against Pfizer, Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Co., Warner-Lambert Co., LLC, Ranbaxy, Inc., and other defendants in connection with an alleged anticompetitive scheme to delay market entry of

1

generic versions of Lipitor, a cholesterol drug.  The Named Consumers initially filed their suit in the California Superior Court in 2011, and the U.S. Judicial Panel on Multidistrict Litigation consolidated and transferred the case, along with other complaints, to this Court in 2012.  Before this Court are four direct purchaser actions and several "tag-along" direct and indirect purchaser actions.

The Named Consumers allege that the California consumers paid billions of dollars more for Lipitor than they would have in a fully competitive market.  (ECF No. 955-2 at 1, 5).  Based on their belief that there is a conflict of interest between the California consumers and the other end-payor plaintiffs, Hellgren and Cox filed a motion seeking to create an interim sub-class of California consumers and appoint interim lead counsel to represent the sub-class in May 2020.  (*Id.* at 2).  They argued that they were "the only plaintiffs who have actually consumed Lipitor" and that they were entitled to be represented as a sub-class of consumers "who actually took the Lipitor pill." (*Id.* at 4).  By contrast, the Named Consumers contended, the other California purchasers named in the Third Amended Complaint were entities who did not literally consume the drug: two municipal corporations; the cities of Providence, Rhode Island and Baltimore, Maryland; and Bluecross/Blueshield of Louisiana (BCBSLA) (collectively referred to as "the End-Payors").  (*Id.*).

Further – and central to the present motion – the Named Consumers stated in the introduction section of their brief that "[t]he cities of Baltimore and Providence and BCBSLA may not have standing to sue under California's antitrust laws because they suffered no damages or did not purchase Lipitor or any generics in the state." (*Id.* at 7 (citing *In re Glumetza Antitrust Litig.*, No. C 19-05822 (WHA), 2020 WL 1066934 (N.D. Cal. Mar. 5, 2020)).  In its September 22, 2020 Memorandum and Order, the Court addressed that argument when it held that

> it would be inappropriate for this Court to rule, in speculative fashion, on whether the defendants could successfully challenge certain end-payors' standing to sue in a California court. The defendants have previously chosen not to move to dismiss Plaintiffs' claims on the grounds that Plaintiffs lacked standing to pursue claims for California consumers, and no such motions to dismiss for lack of standing are currently pending. Accordingly, the Court will not decide this issue or adjudicate the rights of certain California end-payors absent a proper motion because it is not ripe. As such, Hellgren and Cox have not adequately demonstrated that the standing issue warrants the creation of a new subclass.

(Mem. & Order at 7-8) (citations omitted). The Court also noted that "it is at least conceivable that, under *Glumetza* . . . allegations that the plaintiffs Baltimore, Providence, and BCBSLA each 'purchased, paid and/or provided reimbursement for . . . Lipitor [or] its generic equivalent' in California . . . would be adequate to confer standing." (*Id.* at 8 n.5). That holding is the subject of the Named Consumers' motion for reconsideration.

In this motion, the Named Consumers (1) argue that the Court erred when it declined to rule on the standing issue, and (2) ask the Court to "rule as a matter of law that it does not have subject matter jurisdiction over these End-Payor Plaintiffs' claims under the California Cartwright Act." (Moving Br. at 1-2). Accordingly, they seek dismissal of the End-Payors' Third Amended Complaint as it relates to the California causes of action. (*Id.* at 7). Alternatively, it asks the Court to "order and permit limited discovery by the Hellgren and Cox Plaintiffs into the factual basis for the End-Payors' subject matter jurisdiction." (*Id.* at 2).

In support of their argument, the Named Consumers rely on the following authorities. First, Fed. R. Civ. P. 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action," regardless of whether the parties have raised the issue. (*Id*. at 3 (citing, *e.g.*, *Rosenbaum v. Bauer*, 120 U.S. 450 (1887))). Second, the court must dismiss a claim if Article III standing is lacking. (*Id.* (citing *Adams v.*

3

*Governor of Delaware*, 922 F.3d 166, 173 (3d Cir. 2019))).  Third, the parties may raise, and the court should rule on, the issue of subject matter jurisdiction at any time during the litigation.  (*Id.* at 4-5 (citing, *e.g.*, *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).  Fourth, a party must make a purchase within the state in order to have standing under the California Cartwright Act.  (*Id.* at 5 (citing *Glumetza*, 2020 WL 1066934, at *10)).

The Named Consumers also argue that the End-Payors' allegation that they "purchased, paid and/or provided reimbursement for . . . Lipitor [or] its generic equivalent" is inadequate to confer standing, contrary to the Court's conclusion, because "the words 'purchased' and 'provided reimbursement' are contradictory." (*Id.* at 5).  Relying on the California Commercial Code, they assert that the words "purchase" or "purchaser" require a person or entity to "take an interest in the goods."  They insist that the End-Payors do not have such an interest here because they do not sell Lipitor to consumers, and there is no evidence that they "ever actually received and took possession of the goods that they allegedly 'purchased.'" (*Id.* at 5-6).  Rather, they contend that "the End-Payors acted merely as insurers" by reimbursing their clients who purchased Lipitor.  (*Id*. at 6).

In short, the Named Consumers argue that the End-Payor Plaintiffs lack standing to bring claims under the California Cartwright Act because they did not purchase Lipitor and, therefore, the Court lacks subject matter jurisdiction over – and should dismiss – those claims.  They believe the Court should have ruled on that issue in its September 22, 2020 decision and urge it to do so now upon reconsideration.

The End-Payors oppose the Named Consumers' motion.  First, they argue that reconsideration is not appropriate because the Named Consumers never fully argued the standing issue; rather, they "casually mentioned once in their 'Introduction' that End-Payor Plaintiffs *may*

not have standing to sue under the Cartwright Act," and "none of the cases upon which they now rely were cited in their prior motion," with the exception of *Glumetza*. (Opp. Br. 4, 8, ECF No. 1007). As such, the End-Payors argue that the Named Consumers are raising their subject matter jurisdiction argument for the first time in the present motion. (*Id.* at 80). They contend that in order to meet the standard for reconsideration, the moving party must have presented facts or legal authority that was overlooked by the court, which did not happen here. (*Id.* at 6-7).

Second, they argue that the Court did not err in failing to dismiss the California antitrust claims for lack of subject matter jurisdiction because the Court has Article III jurisdiction over the entire action based on diversity. (*Id.* at 6-7, 9). They contend that a lack of standing for some of their state law claims does not destroy the Court's subject matter jurisdiction over this matter and does not implicate Rule 12(h)(3), which discusses dismissing an entire action, not individual claims. (*Id.* at 4-5, 8-10 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014))).

Third, they assert that even if the Named Consumers had articulated standing and subject matter jurisdiction arguments in their prior motion, it would not change the disposition of the present motion. (*Id.* at 5). They cite numerous cases holding that an allegation that a plaintiff "purchased, paid and/or provided reimbursement" is sufficient to confer standing, and they claim that the cases cited by the Named Consumers do not hold otherwise. (*Id.* at 5-6, 10-14).

Overall, the End-Payors argue that the criteria for reconsideration have not been met, and they ask the Court to deny the Named Consumers' motion. (*Id.* at 7, 15).

On November 24, 2020, the Named Consumers requested that the End-Payors' opposition brief be stricken because it was filed two weeks late and without permission from the Court; in the alternative, they requested leave to file a reply, and submitted a proposed reply

brief.  (Reply Br. 1, ECF Nos. 1009, 1009-1).  In response, the End-Payors asserted that the Named Consumers conflated the opposition date with the return date for the motion, noting that a hearing on the motion had not yet been scheduled.  (ECF No. 1012).  They asked the Court to deny the Named Consumers' request to file a reply brief because it is being used as an attempt to improperly strike the End-Payors' opposition brief.  (*Id.*).  Further, if the Court were to accept the reply brief, they asked it to "accept their opposition as if it had been timely filed," as the Named Consumers did not assert that they suffered any prejudice due to the delayed filing.  (*Id.*).

On November 30, 2020, the Court denied the Named Consumers' request to strike the End-Payors' opposition brief, and denied the End-Payors' request to strike the Named Consumers' reply brief.  (ECF No. 1014).

In their reply, the Named Consumers insist that they raised the issue of subject matter jurisdiction in their prior moving brief, reply brief, and hearing (held August 5, 2020) when they challenged the End-Payors' Article III standing under the Cartwright Act.  (Reply Br. at 4-5, ECF No. 1009-1).  They claim they expressly relied on *Glumetza* and *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, No. 19-MD-02918-MMC, 2020 WL 6270948 (N.D. Cal. Oct. 23, 2020), in support of their standing argument both before and at the hearing.  (*Id.* at 6).

In addition, the Named Consumers contend that the End-Payors' argument that the Court has subject matter jurisdiction based on diversity is a "*non-sequitur*."  (*Id.* at 7).  They insist that because the End-Payors lack standing under the Cartwright Act (because they did not "buy" Lipitor within the meaning of § 2401(2) of the California Commercial Code[1]), the Court lacks

---

[1] The Named Consumers quote the following language from § 2401(2): "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods."  They maintain that the End-Payors neither took title to nor received physical delivery of the Lipitor pill and, therefore, are not "buyers."  (*Id.* at 8).

subject matter jurisdiction over those specific claims.  (*Id.*).  Therefore, they argue, the End-Payors "are not proper representatives of the class of California indirect purchasers under Rule 23."  (*Id.*).

Further, the Named Consumers challenge the End-Payors' reliance on *Lexmark* regarding whether a lack of Article III standing deprives a court of subject matter jurisdiction over those claims.  (*Id.* at 9).  First, they argue that in *Lexmark*, unlike the present case, the Court and the parties agreed that Article III standing existed.  (*Id.*).  Second, they argue that the End-Payors do not meet the *Lexmark* Court's definition of Article III standing – specifically, "there is no conduct prohibited under the Cartwright Act that can be 'fairly traceable' to the defendants and no 'favorable judicial decision' that can be redressed under the Cartwright Act by this Court."  (*Id.*).

The Named Consumers emphasize that reimbursing an insured client for Lipitor is not enough to establish standing under the Cartwright Act, and assert that the End-Payors have cited no authority to convince the Court otherwise.  (*Id.* at 10).  They maintain that under California insurance law, "the act of reimbursing a portion of the purchase price entitles the insurers to be subrogated to the rights of the insured, but only to the extent that they reimbursed."  (*Id.* at 10-11).  Overall, they ask the Court to (1) rule on the question of standing and subject matter jurisdiction, and (2) grant their motion to create an interim sub-class of California consumers who bought Lipitor and appoint separate lead counsel to represent them.  (*Id.* at 11).

## II.

### STANDARD

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.

1985), *cert. denied*, 476 U.S. 1171 (1986).  The moving party must submit a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate has overlooked."  L. Civ. R. 7.1(i).  The grounds for granting a motion for reconsideration are: (1) an intervening change in the law, (2) newly discovered evidence, or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice."  *Heine v. Bureau Chief Div. of Fire & Safety*, 765 F. App'x 816 (3d Cir. 2019) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  Reconsideration is not appropriate where the moving party raises an issue for the first time, *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001), or simply disagrees with the court's initial decision, *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988); *accord Johnson v. Berryhill*, No. CV 17-2490 (JMV), 2019 WL 78786 (D.N.J. Jan. 2, 2019).

Here, the Named Consumers raised the issue of standing in their moving brief (ECF No. 955).  Although they dedicated merely one written sentence to that argument, the parties discussed the issue in more detail at oral argument.  The fact that the Court addressed that matter in its September 22, 2020 decision indicates that it is not being raised for the first time in the present motion for reconsideration.  As such, the Court will consider the Named Consumers' argument that it should have ruled on the standing issue in its prior decision (ECF No. 989).  For the sake of completeness, an analysis of standing under the Cartwright Act follows.

## LEGAL PRINCIPLES

### A. Standing and Subject Matter Jurisdiction

A federal court may only resolve a case or controversy that meets the standing requirements of Article III of the United States Constitution.  *Nichols v. City of Rehoboth Beach*,

836 F.3d 275, 279 (3d Cir. 2016) (citing *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007)).

> To satisfy the standing requirements of Article III, a plaintiff must show that: (1) he or she has suffered an injury in fact "that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is likely that the injury will be redressed by a favorable decision.

*Nichols*, 836 F.3d at 285 (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

A "federal court must dismiss a complaint for lack of subject matter jurisdiction under the case-or-controversy requirement of Article III of the United States Constitution if the plaintiff lacks standing to bring a claim," "because standing is a jurisdictional matter." *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 544 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3d Cir. 2015) (first citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), then quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). *See also* Fed. R. Civ. P. 12(h)(3).

"[A] plaintiff must demonstrate standing for each claim he seeks to press," even "when all claims for relief derive from a 'common nucleus of operative fact.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). Here, the Named Consumers argue that the Court should dismiss only the California state claim, not the entire action, for lack of subject matter jurisdiction.

An objection to subject matter jurisdiction may be raised at any time, and a court may raise jurisdictional issues *sua sponte*. *Group Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016). While "courts are generally limited to addressing the claims and arguments advanced by the parties," "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and

9

decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

### B. California Cartwright Act

In order to determine whether the Court has subject matter jurisdiction over the End-Payors' California antitrust claims, the Court must examine the standing requirements under the relevant state law. The parties dispute whether the first prong of the Article III standing test is met for their Cartwright Act claim – that is, whether the End-Payors suffered an injury in fact because they reimbursed their clients for Lipitor but did not purchase it for their own use. (*See* Reply Br. at 9-10; Opp. Br. at 9-10). They rely on different authorities to support their respective arguments. The Named Consumers argue that the End-Payors and their reimbursements for Lipitor do not meet the California Commercial Code's definitions of "purchase," "purchaser," and "buyer," while the End-Payors cite case law holding that reimbursement constitutes an injury under the antitrust laws of California and other states.

The California Cartwright Act broadly defines the category of persons who have standing to sue for a violation thereof:

> Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction . . . . This action may be brought by any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant.[2]

---

[2] The Act prohibits the formation of a trust, which is defined as a combination of capital, skill or acts by two or more persons for any of the following purposes:
(a) To create or carry out restrictions in trade or commerce.
(b) To limit or reduce the production, or increase the price of merchandise or of any commodity.
(c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.
(d) To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State.

Cal. Bus. & Prof. Code § 16750.  Thus, the Cartwright Act does not require that a "purchase" form the basis of a plaintiff's injury, and it does not incorporate by reference the definitions in the California Commercial Code, upon which the Named Consumers' argument relies.  Indeed, courts have found that different types of injuries can establish standing under the Act, and "California law affords standing more liberally than does federal law." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000).

The Supreme Court set forth five factors a court should consider when evaluating antitrust standing: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Knevelbaard Dairies*, 232 F.3d at 987 (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983)); *see also In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1088-89 (N.D. Cal. 2007).  In analyzing the first factor, the Ninth Circuit articulated four elements of an "antitrust injury": "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Id.*  Emphasizing that "the central purpose of the antitrust laws, state and federal, is to

---

(e) To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:
(1) Bind themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure, or fixed value.
(2) Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure.
(3) Establish or settle the price of any article, commodity or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity.
(4) Agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected.

Cal. Bus. & Prof. Code § 16720.

preserve competition," the court held that the milk producer plaintiffs suffered an injury in fact when the cheese maker respondents conspired to depress milk prices in California – a violation of the Cartwright Act. *Id.* at 988-90. It found that an "[a]ntitrust injury requires that the 'injured party be a participant in the same market as the alleged malefactors,'" and both the milk producers and cheese makers were participants in the milk market. *Id.* at 989 (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)).

Other injuries that have established standing under the Cartwright Act include being excluded from a business transaction due to racial discrimination, *Burke v. Superior Court*, 180 Cal. Rptr. 537, 539 n.5 (Ct. App. 1982); paying artificially inflated fees and commissions without competitive negotiations, *Cal. Dental Assn. v. Cal. Dental Hygienists' Assn.*, 271 Cal. Rptr. 410, 418 (Ct. App. 1990); and being coerced into accepting an unwanted and unnecessary service due to a tying arrangement, *Classen v. Weller*, 192 Cal. Rptr. 914, 918-20 (Ct. App. 1983).

More pertinent to this action, courts have held that end-payor plaintiffs who paid, co-paid, or reimbursed others for a drug at supracompetitive prices suffered a monetary injury, and thus had standing to bring antitrust claims in the states in which they suffered that injury (including California). *See, e.g., In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 403-05 (D. Mass. 2013); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 156-58 (E.D. Pa. 2009). Where plaintiffs were employee benefit plans that reimbursed their members for the drug, the injury occurred in the state in which the member's purchase occurred. *Wellbutrin*, 260 F.R.D. at 156.

By contrast, courts have dismissed Cartwright Act claims for lack of standing where the plaintiff (1) did not participate in the relevant market, *Metro-Goldwyn-Mayer Studios Inc. v.*

*Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1224-25 (C.D. Cal. 2003); (2) purchased the goods only through a secondary, incidental market, *In re Dram Antitrust Litig.*, 516 F. Supp. at 1089; (3) lacked causation between their injury and the alleged antitrust violation, *Wilson v. Avemco Ins. Co.*, 59 F. App'x 928, 929 (9th Cir. 2003); *Cable & Computer Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1033, 1039 (9th Cir. 2000); *Krigbaum v. Sbarbaro*, 138 P. 364, 366 (Cal. Ct. App. 1913); or (4) was deterred from making an unspecified future investment due to speculative fear of anticompetitive conduct, *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1124 (N.D. Cal. 2005).

Neither *Glumetza* nor *Hard Disk Drive Suspension Assemblies Antitrust Litigation* supports the Named Consumers' argument that only a purchaser or buyer, as defined by the California Commercial Code, may establish standing under the Cartwright Act.  While the plaintiffs in those cases did purchase the drug in question, the issue was whether they could establish standing in states in which they did *not* make those purchases – not whether a "purchase" was distinguishable from other types of injuries.  Both courts found that the plaintiffs only had standing in the states in which they purchased the drug, but neither ruled on what type of injury confers standing under the Cartwright Act.  *See Glumetza*, 2020 WL 1066934, at *9-10; *Hard Disk Drive*, 2020 WL 6270948, at *3.  In sum, the cases cited by the Named Consumers neither reference the California Commercial Code's definition of "buyer" or "purchaser," nor hold that Cartwright Act standing demands such a narrow type of injury.

**III.**

Applying the antirust principles set forth in Section II. B, the Court finds that the End-Payors did suffer an injury in fact by nature of their payment for Lipitor.  Although they did not directly purchase or physically consume the drug, they need only allege that Defendants'

13

anticompetitive conduct caused them to suffer an economic loss that injured their business or property under Section 16750 of the Cartwright Act. Based on the principles described in Section II.B, the Court finds unpersuasive the Named Consumers' arguments that only a particular type of purchase constitutes an injury under the Cartwright Act, and that courts should rely on the California Commercial Code's definitions of "purchaser" or "buyer" when analyzing a party's standing under the Act. In fact, the plain language of Section 16750 and citing authorities indicate that there is a broad range of injuries that can establish standing under the Cartwright Act. And there is no question that the End-Payors participated in and were affected by the market for Lipitor when they reimbursed their clients for the drug. *See Knevelbaard Dairies*, 232 F.3d at 989.

The foregoing principles support the Court's finding in its September 22, 2020 Memorandum & Order that "it is at least conceivable that . . . allegations that the [End-Payor] plaintiffs . . . purchased, paid and/or provided reimbursement for . . . Lipitor . . . in California . . . would be adequate to confer standing." (ECF No. 989 at 8 n.5). As such, the Court did not commit a clear error of law when it denied the Named Consumers' request to create a subclass of California consumers, and the Named Consumers' standing argument does not change that decision. (*See id.* at 7-8).

Because the Court finds that the End-Payors have standing to assert their Cartwright Act claims, it rejects the Named Consumers' argument that it lacks subject matter jurisdiction over those claims. As such, the Court declines to dismiss those claims on that basis.

Further, to the extent that the Named Consumers' oral argument on January 28, 2021 focused on the issue of creating a subclass of California consumers, the Court finds that the allegations are sufficient to show that the named End-Payor plaintiffs can adequately represent

the class. (*See* Tr. of Jan. 28, 2021 Hearing 6:7-15, 13:5 – 14:20, ECF No. 1038; Third Am. Compl. ¶¶ 25, 27, 31, 478-84, ECF No. 815). Finding no change of circumstances, new evidence, or clear error of law, the Court will deny the relief requested in the Named Consumers' motion for reconsideration.

## ORDER

**WHEREAS**, this matter comes before the Court on Plaintiffs Sandra Hellgren's and Anita Cox's ("Named Consumers") Motion for Reconsideration of the Memorandum and Order dated September 22, 2020 (ECF No. 994); and

**WHEREAS**, the Court held oral argument on Named Consumers' motion on January 28, 2021; and

**WHEREAS**, the Court has carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments set forth on the record; and for good cause shown;

**IT IS** on this 26th day of day of February 2021,

**ORDERED** that Named Consumers' Motion for Reconsideration (ECF No. 994) is **granted**, but the relief requested is **denied**.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.