# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: LIPITOR ANTITRUST LITIGATION**<br><br>This document relates to:<br><br>Direct Purchaser Class Actions | MDL No. 2332<br><br><br>Master Docket No. 3:12-cv-2389 (PGS/DEA) |

# DIRECT PURCHASER PLAINTIFFS'
# PROPOSED TRIAL PLAN

Direct Purchaser Plaintiffs Drogueria Betances, LLC, Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc., and Value Drug Company (collectively, "Direct Purchaser Plaintiffs" or "DPPs") submit this Proposed Trial Plan to set forth the claims that will be tried on a Class-wide basis. Direct Purchaser Plaintiffs reserve the right to amend this Proposed Trial Plan prior to trial, including as a result of any issues that may arise regarding discovery, expert reports, changes in the law governing this litigation, or any orders of the Court.

## I.   INTRODUCTION

Direct Purchaser Plaintiffs represent a class (the "Class") defined as:

All persons or entities in the United States and its territories who purchased Lipitor or its AB-rated bioequivalent generic products directly from any of Defendants at any time during the period June 28, 2011 through May 28, 2012 (the "Class Period"). Excluded from the proposed Class are the defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy during the Class Period; and (ii) all persons or entities that purchased Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011.

Broadly, Direct Purchaser Plaintiffs claim that Defendants[1] unlawfully

---

[1] "Defendants" are Pfizer Inc., Pfizer Manufacturing Ireland, Warner-Lambert Co., and Warner-Lambert Co. LLC (collectively, "Pfizer") and Ranbaxy Inc., Ranbaxy Laboratories Limited, and Ranbaxy Pharmaceuticals, Inc. (collectively, "Ranbaxy").

delayed and suppressed generic Lipitor competition. In exchange for Ranbaxy's commitment to delay generic Lipitor, Pfizer paid Ranbaxy by releasing Ranbaxy from hundreds of millions of dollars in liability Ranbaxy faced for infringing a different Pfizer patent for another drug (Accupril) and accepting just $1 million. Put differently, Plaintiffs allege that Pfizer induced Ranbaxy to delay marketing its generic Lipitor product with a reverse payment worth hundreds of millions of dollars—far above any litigation costs Pfizer avoided by settling the Lipitor patent litigation.

Direct Purchaser Plaintiffs allege that these actions were undertaken for the purpose of, and had the intended effect of, restraining generic Lipitor competition, and resulted in harm to competition and overcharges to the Class.

## II.   TRIAL PLAN OVERVIEW

All of Direct Purchaser Plaintiffs' claims arise under federal law, Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, and are made privately actionable through Section 4 of the Clayton Act, 15 U.S.C. § 15(a).  Direct Purchaser Plaintiffs propose to try all claims and defenses as to liability, impact (injury/causation), and damages on a Class-wide basis in a single trial.

Direct Purchaser Plaintiffs will seek a sum certain in a single jury verdict. Mandatory trebling, attorney fees, and costs are determined by law, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

## III.   PROVING LIABILITY AND IMPACT THROUGH COMMON EVIDENCE

Direct Purchaser Plaintiffs will establish liability for all claims and defenses with predominantly common evidence (*i.e.*, evidence that is applicable to the Class as a whole, not individual to its members). The issues applicable to liability, which Direct Purchaser Plaintiffs will prove and/or rebut (as appropriate) through common evidence, include:

a)  whether Pfizer willfully obtained and/or maintained monopoly power over Lipitor and its generic equivalents;

b)  whether Ranbaxy entered into a contract, combination, and/or conspiracy with Pfizer that unreasonably restrained trade;

c)  whether Defendants, through their anticompetitive scheme, unlawfully excluded competitors and/or potential competitors from the market for atorvastatin calcium, *i.e.*, Lipitor and its AB-rated generic bioequivalents;

d)  whether Defendants unlawfully delayed or prevented generic manufacturers from coming to market in the United States with generic versions of Lipitor;

e)  whether Pfizer maintained monopoly power over atorvastatin calcium by delaying generic competition;

f)  whether the law requires definition of a relevant market when, as here, direct proof of market power exists, and if so, the definition of the relevant market;

g)  whether Defendants' actions caused any procompetitive benefits and if so, whether those benefits outweighed the anticompetitive effects caused by Defendants' actions;

h)  whether Defendants' actions have substantially affected interstate commerce;

i)  whether, and to what extent, Defendants' conduct caused antitrust injury (*i.e.*, overcharges) to the direct purchasers and the members of the Class; and

j)  the quantum of aggregate overcharge damages to the Class.

This common evidence will include witness testimony by defense witnesses and testifying experts, and internal documents from Defendants and non-parties, all of which will be common to the Class as a whole rather than individual to its members.

## IV. PROVING DAMAGES THROUGH COMMON EVIDENCE

Direct Purchaser Plaintiffs will establish the quantum of overcharge damages owed to the Class in the aggregate under Section 4 of the Clayton Act, 15 U.S.C. § 15(a) using evidence that is applicable to the Class as a whole rather than individual to its members.

Direct Purchaser Plaintiffs will quantify the Class's aggregate overcharge damages using a methodology that utilizes benchmarks or yardsticks to estimate what would have happened absent Defendants' unlawful conduct. Direct Purchaser Plaintiffs will use data produced by Defendants and the non-party generics to calculate the prices the Class actually paid for brand and generic Lipitor. Direct Purchaser Plaintiffs will calculate the volume of brand and generic Lipitor the Class would have purchased and the prices the Class would have paid had the conspiracy not restrained competition using benchmarks and will use these benchmarks to calculate how much the Class would have spent on brand and generic Lipitor absent Defendants' conspiracy. The estimates of what the Class would have spent on brand and generic Lipitor will then be subtracted from the known quantities of brand and

generic Lipitor actually purchased at known prices during the relevant time period to arrive at estimated, aggregate overcharge damages. Direct Purchaser Plaintiffs intend to use evidence common to the Class as a whole, rather than individual to its members, to calculate such damages, evidence such as:

a. Transactional data from Defendants and non-party generics showing unit and dollar sales, pricing, discounts, rebates, chargebacks, and other unit and/or dollar adjustments for brand and generic Lipitor sold to the Class;

b. Defendants' and non-party generics' internal generic conversion models and forecasts;

c. The extensive body of economic literature and empirical evidence regarding the effects of generic competition; and

d. Expert analysis and opinion, applicable to all Class members on a Class-wide basis.

## V.     ENTRY OF JUDGMENT AND POST-JUDGMENT PROCEEDINGS

If the jury renders a verdict for Defendants, judgment for Defendants would enter. Such a verdict and judgment would be against the Class as a whole, and not differ between or among its members.

If the jury renders a verdict for the Class, then issues of trebling the jury verdict (a matter of simple verdict molding) and of awarding attorney fees and costs and post-judgment interest would be determined by the Court under applicable law including Section 4 of the Clayton Act, 15 U.S.C. § 15(a). Such a verdict would be in favor of the Class as a whole and not differ between or among its members. A molded judgment in a total sum on the basis of the aggregate Class-wide damages

would issue on behalf of the Class.  Allocation of monies recovered under the judgment would take place, upon usual proceedings for the allocation of such recovery in matters such as this, *pro rata* to each Class member in proportion to its purchases of brand and/or generic Lipitor.

Dated:  May 5, 2023

Respectfully submitted,

s/ *Matthew F. Gately*
COHN LIFLAND PEARLMAN
HERMANN & KNOPF LLP
Park 80 West, Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
mfg@njlawfirm.com

*Liaison Counsel for the Direct Purchaser Class Plaintiffs*

s/ *Kimberly Hennings*
**GARWIN GERSTEIN & FISHER LLP**
Bruce E. Gerstein
Kimberly Hennings
88 Pine Street, 10th Floor
New York, NY 10005
bgerstein@garwingerstein.com
khennings@garwingerstein.com

s/ *Caitlin G. Coslett*
**BERGER MONTAGUE PC**
David F. Sorensen
Caitlin G. Coslett
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net
ccoslett@bm.net

s/ *Thomas M. Sobol*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com

*Co-Lead Counsel for the Direct Purchaser Class Plaintiffs*

Stuart E. Des Roches

Susan Segura

Andrew W. Kelly
**ODOM & DES ROCHES LLP**
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077

David C. Raphael
Erin R. Leger
**SMITH SEGURA RAPHAEL
& LEGER LLP**
221 Ansley Blvd
Alexandria, LA 71303
Tel: (318) 445-4480

Peter Kohn
**FARUQI & FARUQI LLP**
1617 JFK Blvd, Suite 1550
Philadelphia, PA 19103
Tel: (215) 277-5770

Russell Chorush
**HEIM PAYNE & CHORUSH**
1111 Bagby Street, Suite 2100
Houston, TX 88002
Tel: (713) 221-2000

*Additional Counsel for the Direct Purchaser Class Plaintiffs*