# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE: LIPITOR ANTITRUST
LITIGATION

This document relates to:

Direct Purchaser Class Actions

MDL No. 2332

Master Docket No. 3:12-cv-2389 (PGS/DEA)

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on February 7, 2024, by and between

Pfizer Inc., Pfizer Manufacturing Ireland, Warner-Lambert Co., and Warner-Lambert Co. LLC

(collectively or individually, "Pfizer"), by and through their counsel White & Case LLP, and

Drogueria Betances, LLC, Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc.,

Stephen L. LaFrance Holdings, Inc., and Value Drug Company (collectively, "Named Plaintiffs"

or "Plaintiffs"), individually and on behalf of the Direct Purchaser Class (as defined in Paragraph

1 below, the "Direct Purchaser Class" or "Class"), by and through Berger Montague PC, Garwin

Gerstein & Fisher LLP, and Hagens Berman Sobol Shapiro LLP in their capacity as interim lead

counsel for the Direct Purchaser Class ("Lead Class Counsel") in the above-captioned litigation.

This Settlement Agreement is intended to, and upon occurrence of the Effective Date will, fully,

finally, and forever resolve, compromise, discharge, and settle all the claims of the Direct

Purchaser Class in the above-captioned litigation, subject to the terms and conditions set forth

herein.

WHEREAS, Named Plaintiffs each filed lawsuits on behalf of the Direct Purchaser Class

alleging that Pfizer violated Sections 1 and 2 of the Sherman Act through an overarching

anticompetitive scheme, and that Pfizer and Ranbaxy Inc., Ranbaxy Laboratories Limited, and

1

Ranbaxy Pharmaceuticals, Inc. (collectively, "Ranbaxy") (Pfizer and Ranbaxy are, together, "Defendants") violated Sections 1 and 2 of the Sherman Act by entering into an agreement in restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1, and engaging in a conspiracy to monopolize the market in violation of the Sherman Act 15 U.S.C. § 2, with respect to brand and generic Lipitor (atorvastatin) tablets;

WHEREAS, Named Plaintiffs' claims were consolidated under the caption *In re: Lipitor Antitrust Litigation*, Master Docket No. 3:12-cv-2389 (PGS/DEA), before the United States District Court for the District of New Jersey (the "Court") as a putative class action on behalf of the Direct Purchaser Class, as defined in Paragraph 1 below (the "Direct Purchaser Class Action" or the "Action");

WHEREAS, Pfizer denies each and every one of the allegations asserted in the current pending and prior complaints on behalf of the Direct Purchaser Class, and does not concede or admit any liability, and the Direct Purchaser Class and Pfizer agree that neither this Settlement Agreement nor the settlement it embodies (the "Settlement") nor any actions taken in furtherance of either the Settlement Agreement or the Settlement shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Pfizer, or of the truth of any of claims or allegations asserted on behalf of the Direct Purchaser Class or a waiver of any defenses thereto;

WHEREAS, Lead Class Counsel have concluded, after investigation of the facts and carefully considering the circumstances of the Direct Purchaser Class Action, including the claims asserted in this Action, and the possible and asserted legal and factual defenses thereto, that it would be in the best interests of the Direct Purchaser Class to enter into this Settlement Agreement to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a

2

benefit to the Direct Purchaser Class and further, that Lead Class Counsel considers the Settlement set forth in this Settlement Agreement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and in the best interests of the Direct Purchaser Class;

WHEREAS, Pfizer has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement solely to avoid the uncertainties and additional costs of further litigation and to finally put to rest all claims asserted on behalf of the Direct Purchaser Class against Pfizer relating to the Action;

WHEREAS, Lead Class Counsel, on behalf of themselves and the Direct Purchaser Class, on the one hand, and counsel for Pfizer on the other, have engaged in arm's-length settlement negotiations, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the settlement between the Named Plaintiffs, both individually and on behalf of the Direct Purchaser Class, and Pfizer;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Named Plaintiffs and the Direct Purchaser Class, on the one hand, and Pfizer, on the other, that the Direct Purchaser Class Action and all claims of Named Plaintiffs and the Direct Purchaser Class be settled, compromised, discharged and dismissed with prejudice as to Pfizer (and, except as hereinafter provided, without any costs being assessed to Named Plaintiffs, the Direct Purchaser Class, or Pfizer), subject to Court approval, on the following terms and conditions:

1. **Direct Purchaser Class.** This settlement is on behalf of the Named Plaintiffs and all "Class Members" of the Direct Purchaser Class (the "Class" or "Direct Purchaser Class") defined as follows:

> All persons or entities in the United States and its territories who purchased Lipitor or its AB-rated bioequivalent generic products

3

directly from any of Defendants at any time during the period June 28, 2011 through May 28, 2012 (the "Class Period").

Excluded from the proposed Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy during the Class Period; and (ii) all persons or entities that purchased Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011.

Also excluded from the Class for purposes of this Settlement Agreement are the following entities: CVS Pharmacy, Inc. (which includes Caremark), Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co. (which includes Kerr Drug), The Kroger Co. (which includes Peytons), Safeway Inc., SuperValu Inc., Meijer, Inc. and Meijer Distribution, Inc., Giant Eagle, Inc., and H-E-B L.P. ("Retailer Plaintiffs").

2.    **Reasonable Best Efforts to Effectuate This Settlement.** Counsel for Named Plaintiffs and Pfizer agree to recommend approval of this Settlement Agreement to the Court and to undertake their reasonable best efforts, including undertaking all actions contemplated by and steps necessary to effectuate this Settlement Agreement, to carry out the terms of this Settlement Agreement and to secure the prompt, complete, and final dismissal with prejudice of all claims against Pfizer in the Direct Purchaser Class Action. This includes Pfizer serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715 in accordance with the timing set forth therein.

3.    **Motion for Preliminary Approval of the Settlement.** Within ten (10) days of the execution of this Settlement Agreement, Named Plaintiffs shall submit to the Court—and Pfizer shall support—a motion (the "Motion") requesting entry of an order preliminarily approving the settlement, and authorizing dissemination of notice to the Direct Purchaser Class (the "Preliminary Approval Order") substantially in the form of Exhibit A hereto.

4

The Motion shall:

    a.    request preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Direct Purchaser Class;

    b.    request a schedule for a hearing by the Court after the notice period has expired to approve the Settlement and to consider Lead Class Counsel's applications for attorneys' fees, reimbursement of costs and expenses, and service awards as set forth in this Settlement Agreement;

    c.    request a stay of all proceedings against Pfizer in the Direct Purchaser Class Action until such time as the Court renders a final decision regarding the approval of the Settlement as described below, except those proceedings provided for or required by this Settlement Agreement;

    d.    seek approval of an escrow agreement regarding the Settlement consideration described below;

    e.    seek approval for notice to the Class by means of direct first-class United States mail notice in the form substantially in the form attached hereto as Exhibit B; and

    f.    include a proposed form of order, which includes such provisions as are typical in such orders, including a finding that the proposed plan of notice complies with Fed. R. Civ. P. 23 and the requirements of due process, and a provision that if preliminary or final approval of the settlement is not obtained, the settlement is null and void and the parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses; and

    g.    seek certification of the Direct Purchaser Class as defined in Paragraph 1 for purposes of settlement.

4.    **Class Certification.**

Named Plaintiffs shall seek Court approval of the certification of the Direct Purchaser Class in connection with the proposed Settlement only, concurrently with their Preliminary Approval Motion. Pfizer shall not oppose. Neither this Settlement Agreement, nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as, or be deemed to be evidence of or an admission or concession by Pfizer as to whether any class, in this case or others, may be certified for purposes of litigation and trial.

5.    **Motion for Final Approval and Entry of Final Judgment.**    If the Court preliminarily approves this Settlement Agreement, Named Plaintiffs shall submit—and Pfizer shall support—a motion for final approval by the Court of this Settlement Agreement ("Final Approval Motion") after notice has been disseminated to the Class pursuant to the Preliminary Approval Order. The Final Approval Motion shall be submitted to the Court no later than 14 days before the date of the final Fairness Hearing set by the Court in its Preliminary Approval Order and shall seek entry of a final judgment and order ("Final Judgment and Order") substantially in the form attached hereto as Exhibit C:

      a.    finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Named Plaintiffs and the Direct Purchaser Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

      b.    finding that all members of the Class ("Class Members") shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in

6

this Settlement Agreement;

      c.      finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

      d.      incorporating the release set forth in Paragraphs 13 and 14 of this Settlement Agreement, and forever barring the Releasors from asserting any Released Claims against any of the Releasees as defined below;

      e.      providing for the payment of reasonable attorneys' fees and reimbursement of expenses solely from the Settlement Fund;

      f.      providing for payment solely from the Settlement Fund of a service award in the amount of $100,000 to each of the Named Plaintiffs, in addition to whatever monies each of the Named Plaintiffs may receive from the Settlement Fund pursuant to a Court-approved plan of allocation;

      g.      directing that the Direct Purchaser Class Action be dismissed with prejudice as to Pfizer and, except as provided for herein, without costs or attorney's fees recoverable under 15 U.S.C. § 15(a);

      h.      retaining exclusive jurisdiction over the Settlement and the Settlement Agreement, including the administration and consummation of the Settlement; and

      i.      directing that the judgment of dismissal with prejudice of all Direct Purchaser Class claims against Pfizer shall be final and appealable pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay.

      **6.**      **Finality of Settlement.** This Settlement Agreement shall become final upon the occurrence of all of the following (the "Effective Date"):

      a.      The Settlement is not terminated pursuant to Paragraphs 15 or 17 below;

7

b.      The Settlement and this Settlement Agreement are approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

c.      The Court enters an order finally approving the Settlement substantially in the form attached hereto as the Final Judgment and Order, entering a final judgment of dismissal with prejudice against Named Plaintiffs and the Class Members; and

d.      The time for appeal from the Court's signing of the Final Judgment and Order as described in subparagraph 6(b) and entry of the Final Judgment and Order as described in subparagraph 6(c) has expired or, if appealed, either such appeal has been resolved by agreement and withdrawn by the appealing party, or it has been affirmed by the court of last resort to which an appeal of such Final Judgment and Order may be taken.

7.      **Settlement Payment.** The "Settlement Amount" shall be Ninety-Three Million Dollars and no/100 ($93,000,000.00). Subject to the terms and conditions of this Settlement Agreement and an escrow agreement to be entered into by Class Counsel, and in full, complete, and final settlement of the Direct Purchaser Class Action: (a) within ten (10) calendar days after entry of the Preliminary Approval Order, provided that Lead Class Counsel has notified Pfizer of the establishment and identity of an escrow account (the "Escrow Account") and has provided to Pfizer all information required to process payment no later than fourteen (14) calendar days before such payment is due, Pfizer shall deposit Twenty-Three Million, Two-Hundred and Fifty Thousand Dollars and no/100 ($23, 250,000.00) into the Escrow Account subject to the terms and conditions of the escrow agreement attached hereto as Exhibit D (the "Escrow Agreement"); and (b) the remainder of the Settlement Amount ($69,750,000.00) shall be deposited on or before fifteen (15) calendar days prior to the District Court's fairness hearing regarding final approval of the Settlement. Payment shall be made by wire transfer pursuant to instructions from Lead Class

8

Counsel. Pfizer shall not pay any additional amount at any time, whether for wire transfer fees or bank fees of any kind associated with the wire transfer of funds, interest, notice, administration, costs, attorneys' fees, or otherwise, into the Escrow Account. The total consideration that Pfizer will pay for this Settlement shall be the Settlement Amount only (once paid, the "Settlement Fund").

8.      **Discovery.**      Pfizer shall not oppose a motion to be filed by Plaintiffs after Preliminary Approval to lift the stay of discovery in the Action. If and when the Court lifts the stay of discovery in the Action, Pfizer shall (a) produce to Plaintiffs the "substantial completion" (and corresponding privilege logs) covered under ECF No. 899 (Oct. 1, 2019 Further Amended Scheduling Order) within 90 days of the lifting of the stay; and (b) produce certifications pursuant to Federal Rule of Evidence 902(11) concerning the authenticity and admissibility of documents and data produced or created by Pfizer no later than 45 days before the close of fact discovery and, if required by the Court, provide a custodian of records, or other witness testimony, at trial to lay a foundation for the admission of any documents or data produced or created by Pfizer. Pfizer, no later than 45 days before the close of fact discovery, shall produce a Rule 30(b)(6) witness or witnesses in response to a Rule 30(b)(6) deposition notice by Plaintiffs as to matters relating to the operative complaint in the Direct Purchaser Class Action, subject to the parties meeting and conferring about the scope of such a 30(b)(6) deposition. As to any additional documents or data that Plaintiffs request that Pfizer produce, or any current or former Pfizer employees whom Plaintiffs seek to depose, Pfizer shall not use the fact of this Settlement Agreement or the Settlement it embodies to try to oppose or preclude or restrict such document requests or depositions in any way, but Pfizer otherwise preserves all other objections it may have to such discovery. As to former employees, if requested by Plaintiffs, Pfizer shall provide information

9

reasonably accessible to it concerning the present location and contact information for such former employees. Pfizer shall, within 90 days of the lifting of the stay, elect whether it is asserting privilege or work product as to any matter alleged in the operative complaint. If Pfizer elects not to assert privilege, Pfizer shall identify with specificity those matters as to which it is not asserting privilege. Pfizer thereafter shall not change its position regarding such assertion or waiver of privilege without the written consent of Lead Class Counsel or as ordered by the Court. In the event a dispute arises concerning Pfizer's performance under this paragraph, the parties agree to meet and confer in good faith to resolve the issue. If, after meeting-and-conferring, the dispute remains unresolved, the Parties may present the issue to the Court to resolve the dispute. Such disputes may be raised and submitted to the Court regardless of whether the Effective Date has passed.

9.     **The Settlement Fund.**

a.     Before the Court issues the Final Judgment and Order, disbursements for expenses associated with providing notice of the Settlement to the Class, expenses associated with administering the Settlement, and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement (collectively, "Administration Expenses") may be made from the Settlement Fund. In the event the Agreement is disapproved, terminated, or otherwise fails to become effective, the Settlement Fund shall be refunded to Pfizer plus interest earned (net of any taxes paid on such interest), minus half the actual costs of class notice and claims administration. Court approval shall not be required for disbursements or distributions of Administration Expenses for amounts (in the aggregate) of less than $75,000. Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

10

b.     At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in Paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested pursuant to Paragraph 3 of the Escrow Agreement as directed in writing by Lead Class Counsel. All interest and dividends earned on the Settlement Fund shall become and remain part of the Settlement Fund. Any losses on the Settlement Fund shall be borne by the Settlement Fund and shall not be recoverable from Pfizer. Pfizer shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

c.     After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution. After making the payment of the Settlement Amount described in Paragraph 7 above, Pfizer shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible for any disputes relating to the amount, allocation, or distribution of any fees, costs or awards. Further, after making the payment of the Settlement Amount described in Paragraph 7 above, Pfizer shall not be liable for any additional payments to the Direct Purchaser Class or Lead Class Counsel or any other Counsel for the Named Plaintiffs or the Class pursuant to this Settlement Agreement.

d.     Pfizer shall have no right of reimbursement or repayment from the Settlement Fund except as set forth in Paragraphs 15 or 18 hereof.

e.     Named Plaintiffs and their counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. Pfizer shall not be liable for any costs, attorneys'

11

fees, other fees, or expenses of any of Named Plaintiffs or the Direct Purchaser Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

    f.  To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

   **10.**  **No Injunctive Relief.** This Settlement Agreement does not include any provisions for injunctive relief.

   **11.**  **Full Satisfaction; Limitation of Interest and Liability.** Class Members shall look solely to the Settlement Fund for settlement and satisfaction against Pfizer of all claims that are released hereunder.

   **12.**  **Attorneys' Fees, Expenses and Costs.**

    a.  Lead Class Counsel intend to seek, solely from the Settlement Fund, attorneys' fees of up to one-third of the Settlement Fund (including interest accrued thereon) and the reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, and service awards to the Named Plaintiffs ("Fee and Expense Award"). Any motion for attorneys' fees, costs and expenses ("Motion for Fee and Expense Award") shall be filed no fewer than fourteen (14) days before the deadline for Class members to opt out or object to the Settlement. Any award of service awards, attorneys' fees, costs and expenses by the Court shall be paid solely out of the Settlement Fund as ordered by the Court. In no event shall any Fee and Expense Award be paid before the Final Approval Date. Named Plaintiffs, Class Members, and their respective counsel, shall not seek payment of any attorneys' fees, expenses, costs, or service awards from Pfizer in this action, or in any other action related to the released claims set forth in Paragraphs 13

and 14 hereof, from any source other than the Settlement Fund.

b.     The procedures for and the allowance or disallowance by the Court of any motion or application for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. Notwithstanding any right of termination in Paragraph 15, any order or proceeding relating to the fee and expense application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, provide a basis to terminate or cancel this Agreement, affect or delay the finality of the judgment approving settlement, or affect or delay the payment of the Fee and Expense Award as provided in Paragraph 12(a).

13.     **Release and Covenant Not to Sue.**

a.     **Direct Purchaser Class Release.**  Upon the occurrence of the Effective Date in accordance with Paragraph 6 hereof, and in consideration for the Settlement Amount described in this Settlement Agreement, Direct Purchaser Plaintiffs and the Direct Purchaser Class, on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as the past and present general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives of all Class Members (the "Direct Purchaser Class Releasors"), shall release and forever discharge, and covenant not to sue Pfizer and its respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, general partners, limited partners, officers, directors, management, supervisory boards, insurers, employees, agents, servants, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, successors, heirs, executors, administrators, and assigns of each of the

13

foregoing) (the "Pfizer Releasees"), with respect to, in connection with, or relating to any and all past, present, or future liabilities, claims, demands, obligations, suits, damages, penalties, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions up to the date of this Settlement Agreement, (a) alleged, or which could reasonably have been alleged, in the Direct Purchaser Class Action, (b) concerning purchases of Lipitor and/or its generic equivalents and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, any state or federal RICO statutes, or any other federal or state statute or common law doctrine relating to antitrust, fraud, unfair competition, unjust enrichment, or consumer protection, or (c) the sale, marketing, or distribution of Lipitor or generic Lipitor except as provided for in Paragraph 13(c) and 14 herein (the "Released Claims"). Upon the Effective Date, the Direct Purchaser Class Releasors will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any forum whatsoever, including any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against the Pfizer Releasees. Upon entry of the Final Judgment and Order approving this Settlement, and in consideration of the promises set forth in this Settlement Agreement, including payment of the Settlement Amount, the Direct Purchaser Plaintiffs and Direct Purchaser Class shall dismiss the Direct Purchaser Class Action with prejudice as to Pfizer.

In addition, Direct Purchaser Plaintiffs, on behalf of themselves and all other Releasing Parties, hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims that the creditor or releasing party does not know

or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. The Direct Purchaser Releasors may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this Paragraph 13, but each Direct Purchaser Releasor hereby expressly waives and fully, finally, and forever settles, releases, and discharges, upon this Settlement becoming final, any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Direct Purchaser Releasor also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against any Pfizer Releasee under Section 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

b.      **Defendants' Release.**  Upon the occurrence of the Effective Date and in consideration of the Releases and Covenants specified in Paragraph 13.a. above, Pfizer on behalf of itself and its respective past, present, and future parents, subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys,

15

servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and representatives (collectively, the "Pfizer Releasors"), hereby release and forever discharge, and covenant not to sue, Direct Purchaser Class Members and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (collectively, the "Direct Purchaser Class Releasees") from all claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity, asserted in connection with the Action or that should have been asserted in the Action as compulsory counterclaims arising out of the alleged conduct that is the subject matter of Paragraph 13.

       c.    **Reservation of Claims.** The Releasing Parties intend by this Settlement Agreement to release only the Pfizer Releasees and the Direct Purchaser Class Releasees with respect to the Released Claims. The Direct Purchaser Releasors specifically do not intend this Settlement Agreement, or any part hereof or any other aspect of the proposed Settlement Agreement, to compromise or otherwise affect in any way any rights the Direct Purchaser Releasors have or may have against any other person, firm, association, or corporation whatsoever. The release set forth above in this Paragraph 13 is not intended to and shall not release any claims other than the Released Claims.

16

**14.    Additional Reservation of Claims.** The intent of this Settlement is to effect a complete and total resolution of this Action to the extent of the claims of the Direct Purchaser Class against Pfizer, as well as any compulsory counterclaims of Pfizer, relating to the allegations in this Action that were or should have been asserted, but is not intended to release any claims (1) arising in the ordinary course of business between any Direct Purchaser Class member and Pfizer arising under Article 2 of the Uniform Commercial Code (pertaining to sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury; (2) unrelated to purchases of Lipitor or generic Lipitor; or (3) arising out of or in any way relating to the alleged horizontal price-fixing agreements between Pfizer and other manufacturers of generic pharmaceutical products that are alleged in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724, 16-MD-2724 (E.D. Pa.).

**15.    Termination - Effect of Disapproval.**

a.    Pfizer and Plaintiffs shall have the option to terminate the Settlement and have their Settlement Payment refunded if the Court declines to grant preliminary or final approval to the Direct Purchaser Class Settlement. If for any reason the Settlement does not become final in accordance with the terms of Paragraph 6 of this Settlement Agreement, then (i) this Settlement Agreement shall be of no force or effect; (ii) all funds paid by Pfizer into the Settlement Fund, plus interest (net of any taxes paid on such interest), minus half the actual costs of class notice and claims administration, shall be returned to Pfizer as set forth in Paragraph 18; (iii) any release pursuant to Paragraphs 13 and 14 above shall be of no force or effect; and (iv) the parties agree, subject to the Court's approval, that litigation of the Direct Purchaser Class Action by the Named Plaintiffs and the Direct Purchaser Class will resume, in a reasonable manner and on a reasonable timetable to be approved by the Court.

17

b.    For the avoidance of doubt, any order of the Court that (i) narrows or does not approve the scope of the release and covenant not to sue contemplated by this settlement; (ii) purports to impose additional material obligations on Pfizer; or (iii) declines to enter a final judgment that meets the minimum requirements set forth in Paragraph 5 of this Agreement, or any order on review or appeal that would have the foregoing effects, except as otherwise agreed to in writing by Pfizer and Named Plaintiffs, constitutes a failure to grant preliminary or final approval of this Agreement and confers on Pfizer and Named Plaintiffs the right to terminate provided by this Paragraph.

c.    A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such Final Judgment and Order and shall not give rise to any right of termination.

**16.    Contingency in the Event the Settlement is Not Approved for Reasons Other Than Fairness or a Lipitor Direct Purchaser Requests Exclusion from the Direct Purchaser Class.**

a.    In the event the Settlement is disapproved by the Court or on appeal (including because the Court does not certify the Direct Purchaser Class for purposes of settlement) for any reason other than the Settlement is not fair, reasonable or adequate, Pfizer agrees to offer, as soon as practical, each entity falling within the definition of Direct Purchaser Class (as defined in Paragraph 1) ("Lipitor Direct Purchaser") at least its *pro rata* share of the Settlement Fund Amount (as defined below in Paragraph 16(e)), net of all known assignments to the Retailer Plaintiffs, after conferring with Lead Class Counsel in exchange for a release substantively equivalent to the one set out in Paragraphs 13 and 14, above.

18

b.      If the Settlement is approved by the Court and becomes final as defined in Paragraph 6, and one or more Lipitor Direct Purchaser(s) had properly excluded itself (themselves) from the Direct Purchaser Class (other than a Retailer Plaintiff) prior to the expiration of the opt-out period prescribed by the Court, the Settlement Fund (as discussed in Paragraph 7) will be reduced by the amount of the *pro rata* share for that Lipitor Direct Purchaser, net of all known assignments to the Retailer Plaintiffs (as defined below, in Paragraph 16(e)). Nothing herein will preclude a Lipitor Direct Purchaser(s) who has sought exclusion from the Direct Purchaser Class from seeking leave of court to rescind its (their) decision to exclude itself (themselves) from the Direct Purchaser Class until such time the Settlement becomes final pursuant to Paragraph 6. Nothing precludes Class Counsel or counsel for Pfizer from contacting such Lipitor Direct Purchaser(s) concerning its (their) decision(s) to opt out of the Class. A decision by one or more Lipitor Direct Purchasers to opt out of the Direct Purchaser Class will have no impact on the validity and enforceability of this Settlement Agreement as to the remaining members of the Direct Purchaser Class, including the release provisions in Paragraphs 13 and 14.

c.      Any offer to an individual Lipitor Direct Purchaser under Paragraph 16(a) shall be expressly subject to the condition that the Lipitor Direct Purchaser(s) receiving the offer(s) submit to the jurisdiction of the United States District Court for the District of New Jersey regarding the issue of its obligation to pay its proportionate share of the Direct Purchaser Class Counsel's attorneys' fees, costs and expenses, and service awards. Each Lipitor Direct Purchaser that chooses to accept an offer from Pfizer shall be given written notice by Pfizer (the content of which is to be agreed to by Lead Class Counsel) of Lead Class Counsel's intent to apply for Direct Purchaser Class Counsel's attorneys' fees, costs, expenses, and service awards and to seek the awards out of the escrowed funds (described below), and an opportunity to respond to the

19

application. Defendants shall inform Lead Class Counsel of any subsequent private offers made to, and accepted by, Lipitor Direct Purchasers within five (5) days of the acceptance of the offer by the Lipitor Direct Purchaser.

        d.      For any offer accepted by a Lipitor Direct Purchaser under Paragraph 16(a), Pfizer agrees to place 40% of the accepted offer into escrow to cover the Lipitor Direct Purchaser's proportionate share of Direct Purchaser Class Counsel's attorneys' fees, costs and expenses, and service awards. The amount of any such attorneys' fees, costs, expenses, and service awards awarded shall be determined by the Court. Any funds placed into escrow pursuant to this provision that exceed the amount of attorneys' fees, costs, expenses, and/or incentive awards awarded by the Court shall be paid out to the Lipitor Direct Purchaser.

        e.      The amount of each Lipitor Direct Purchaser's *pro rata* share of the Settlement Fund Amount shall be based on a schedule prepared by Dr. Jeffrey J. Leitzinger ("Dr. Leitzinger"), which Direct Purchaser Class Counsel represents is based on Pfizer's sales of brand Lipitor and Ranbaxy's sales of generic Lipitor and data related to the Retailer Plaintiffs' assignments available to the Plaintiffs at the time of this Settlement Agreement.

        f.      The parties will use their best efforts to implement this Paragraph 16.

    **17.**    **Opt-Outs.** Class Notice shall provide that the opt-out shall be in writing and shall be signed by the member of the Class who is opting-out. In the event of any opt outs from the Class prior to final approval of the Settlement, the Settlement Amount will be reduced in proportion to the opt-out Class Members' pro rata share of aggregate brand and generic Lipitor purchases of Class Members. Further, Pfizer shall have the option in its sole discretion to terminate the Settlement Agreement in the event that Class Members representing in the aggregate more than a certain percentage of total brand and generic Lipitor purchases (as set forth in a confidential side

letter that, with the Court's permission, will not be filed with the Court or, alternatively, will not be filed publicly) opt out of the Class following the preliminary approval of the Settlement. All pro rata shares shall be calculated by Dr. Leitzinger, the expert economist for the Direct Purchaser Class.

**18.** **Effect of Termination.** If this Settlement Agreement is terminated pursuant to the provisions of Paragraphs 15 or 17 above, or for any reason does not become final in accordance with the terms of Paragraph 6 hereof, the Escrow Agent (as defined in the Escrow Agreement) shall return the Settlement Fund to Pfizer, plus interest (net of any taxes paid on such interest), minus half the actual costs of class notice and claims administration. Subject only to expiration of any time deposit investment(s) not to exceed ninety (90) days, the Escrow Agent shall disburse the Net Settlement Fund to Pfizer in accordance with this Paragraph within fifteen (15) business days after receipt of either (i) written notice signed by Pfizer's counsel or Lead Class Counsel stating that this Settlement Fund has been terminated; or (ii) any order of the Court so directing. Any remaining portion of the Net Settlement Fund invested in time deposits not to exceed ninety (90) days shall be disbursed within ten (10) days after the expiration of such investments. If the Settlement Agreement is terminated pursuant to Paragraphs 15 or 17 above, any obligations pursuant to this Settlement Agreement (other than disbursement of the Net Settlement Fund to Pfizer as set forth above) shall cease immediately and the releases set forth in Paragraphs 13 and 14 shall be null and void.

**19.** **Stay of Proceedings.** Pending Court approval of the Settlement embodied in this Settlement Agreement, the Parties agree to stay any and all proceedings against Pfizer in the Direct Purchaser Class Action other than those incident to the settlement process and agree to extensions of time with respect to any court filings necessary to effectuate such stays. Nothing herein alters

the provisions of Paragraph 8, above,

20.     **Claim Forms.** Direct Purchaser Plaintiffs and Lead Class Counsel will ensure that each claim form contains a copy of the release set forth in Paragraphs 13 and 14 hereof. A claim form shall be signed by each member of the Direct Purchaser Class or its authorized representative as a precondition to receiving any portion of the Settlement Fund.

21.     **Preservation of Rights.** The parties hereto agree that this Settlement Agreement, whether it becomes final or not, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party (except to the extent provided herein), shall not be deemed or construed to be an admission or evidence of any violation of any statute or law (or lack thereof), of any liability or wrongdoing by Pfizer (or lack thereof), or of the truth (or lack thereof) of any of the claims or allegations contained in the Complaints or any other pleading or document, and evidence thereof shall not be discoverable or used directly or indirectly, in any way (other than to effectuate or enforce the terms of this Settlement Agreement). The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

22.     **Confidentiality.** The fact of settlement of the Direct Purchaser Class Action and the terms of this Settlement Agreement shall remain confidential until Direct Purchaser Plaintiffs move for preliminary approval of the Settlement, except that the Court and any other parties may be informed of the fact of settlement, unless Pfizer and Lead Class Counsel agree otherwise. Direct Purchaser Plaintiffs' Counsel and Pfizer agree that they will not, at any time, make public statements (which includes press releases, communication to the press or other media, statements in the Internet, speeches, or other communications in public fora) concerning the Settlement, the Direct Purchaser Class Action, the litigation of the Direct Purchaser Class Action, or the Parties,

witnesses, or counsel involved in the Direct Purchaser Class Action, apart from their mutually agreed public relations statements, with the exceptions that (i) the Parties shall have the right to disclose the Settlement to comply with their financial, legal, reporting, and securities obligations, and (ii) the Parties shall have the right to take actions to enforce the Settlement to the extent necessary; and (iii) Counsel for the Direct Purchaser Class shall have the right to post the Settlement Agreement and relating filings on their websites and note the same. Additionally, Direct Purchaser Plaintiffs, their counsel and other agents for or representatives of Direct Purchaser Plaintiffs and of the Direct Purchaser Class, as well as Pfizer, its counsel, and other agents for or representatives of Pfizer, shall abide by the terms of the Discovery Confidentiality Order approved and entered by the Court on February 25, 2013 (ECF No. 346), and as amended on January 25, 2019 (ECF No. 840) (the "Confidentiality Order"). Any obligation to abide by the Confidentiality Order shall survive beyond the Effective Date of this Settlement Agreement

**23.    Taxes.**

a.    The parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund. Lead Class Counsel shall be solely responsible for directing the Escrow Agent to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Lead Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund. Lead Class Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this Paragraph. Pfizer shall have no responsibility to make any tax filings related to the Settlement, this Settlement

Agreement, or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay taxes with respect thereto unless the settlement is not consummated and the Settlement Fund or the Net Settlement Fund is returned to Pfizer. Other than as specifically set forth herein, Pfizer shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, for any period of time, Pfizer is required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Pfizer with notice to Lead Class Counsel, timely pay to Pfizer sufficient monies from the Settlement Fund to enable it to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

b.    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

c.    The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Accounts in this manner. In addition, the Escrow Agent and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent

24

to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Accounts being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

24.     **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the parties hereto and to the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Named Plaintiffs and Lead Class Counsel shall be binding upon all Class Members.

25.     **Integrated Agreement.** The documents incorporated herein by reference, contain an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties hereto with respect to the transactions contemplated by this Agreement, and supersede all prior agreements or understandings, whether written or oral, between or among any of the parties hereto with respect to the subject matter hereof. This Settlement Agreement shall not be modified in any respect except by a writing executed by all of the parties hereto.

26.     **Independent Settlement.** This Settlement of the Direct Purchaser Class Action is not conditioned on approval by any other direct purchaser or settlement of any other case. This Settlement of the Direct Purchaser Class Action is not conditioned on the disposition of the claims of any other plaintiff or proposed class of plaintiffs.

27.     **Headings.** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

28.     **No Party is the Drafter.** None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

29.    **Choice of Law.** All terms of this Settlement Agreement shall be governed by federal common law.

30.    **Consent to Jurisdiction.** Pfizer and each Class Member hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the District of New Jersey for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein. Nothing in this paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim; or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

31.    **Representations and Warranties.** Each party hereto represents and warrants to each other party hereto that it has the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

32.    **No Admission.** Nothing in this Settlement Agreement, nor in any document related to this Settlement Agreement, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Pfizer, including, without limitation, that Pfizer has engaged in any conduct or practices that violate any antitrust statute or

26

other law.

**33.**     **Notice.**  Notice to Pfizer pursuant to this Settlement Agreement shall be sent by

United States mail and electronic mail to:

> Raj Gandesha
> WHITE & CASE LLP
> 1221 Avenue of the Americas
> New York, New York  10020
> rgandesha@whitecase.com

Notice to the Plaintiffs pursuant to this Settlement Agreement shall be sent by United

States mail and electronic mail to Lead Class Counsel:

> Bruce E. Gerstein
> GARWIN GERSTEIN & FISHER, LLP
> Wall Street Plaza
> 88 Pine Street, 10th Floor
> New York, NY 10005
> bgerstein@garwingerstein.com

> David F. Sorensen
> BERGER MONTAGUE PC
> 1818 Market Street, Suite 3600
> Philadelphia, PA 19103
> dsorensen@bm.net

> Thomas M. Sobol
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 1 Faneuil Hall Sq., 5th Floor
> Boston, MA 02109
> tom@hbsslaw.com

Any of the parties may, from time to time, change the address to which such notices,

requests, consents, directives, or communications are to be delivered, by giving the other parties

prior written notice of the changed address, in the manner hereinabove provided, ten (10) calendar

days before the change is effective.

**34.**     **Execution in Counterparts.**  This Settlement Agreement may be executed in

counterparts, and a facsimile or .pdf signature shall be deemed an original signature for purposes

of executing this Settlement Agreement.

By: _____

Raj Gandesha
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
rgandesha@whitecase.com

*Counsel for Pfizer Inc., Pfizer*
*Manufacturing Ireland, Warner-Lambert*
*Co., and Warner-Lambert Co. LLC*

By: _____
Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

By _____
David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

By: _____
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall, Sq., 5th Floor
Cambridge, MA 02109
tom@hbsslaw.com

*Interim Lead Counsel for Direct Purchaser*
*Class Plaintiffs and the Class*

of executing this Settlement Agreement.

By: _____

    Raj Gandesha
    WHITE & CASE LLP
    1221 Avenue of the Americas
    New York, NY 10020
    rgandesha@whitecase.com

    *Counsel for Pfizer Inc., Pfizer*
    *Manufacturing Ireland, Warner-Lambert*
    *Co., and Warner-Lambert Co. LLC*

By: _____
Bruce E. Gerstein
GARWIN GERSTEIN & FISHER LLP
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
bgerstein@garwingerstein.com

By: _____
David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

By: _____
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall, Sq., 5th Floor
Cambridge, MA 02109
tom@hbsslaw.com

*Interim Lead Counsel for Direct Purchaser*
*Class Plaintiffs and the Class*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: LIPITOR ANTITRUST LITIGATION | MDL No. 2332 |
| This document relates to: | Master Docket No. 3:12-cv-2389 (PGS/DEA) |
| Direct Purchaser Class Actions | |

**[PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS'
UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS,
APPOINTMENT OF LEAD CLASS COUNSEL, PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE
TO THE CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

Upon review and consideration of Direct Purchaser Class Plaintiffs' Unopposed Motion

for Certification of a Settlement Class, Appointment of Lead Class Counsel, Preliminary Approval

of Proposed Settlement, Approval of the Form and Manner of Notice to the Class, Proposed

Schedule for a Fairness Hearing, and exhibits thereto, and any hearing thereon, IT IS HEREBY

ORDERED, ADJUDGED AND DECREED that said motion is GRANTED as follows:

**Jurisdiction**

1.     This Order hereby incorporates by reference the definitions in the Settlement

Agreement dated February 7, 2024 among Pfizer Inc., Pfizer Manufacturing Ireland, Warner-

Lambert Co., and Warner-Lambert Co. LLC (collectively "Pfizer); Drogueria Betances, LLC

("Betances"), Professional Drug Company, Inc. ("PDC"), Rochester Drug Co-Operative, Inc.

("RDC"), Stephen L. LaFrance Holdings, Inc. ("LaFrance"), and Value Drug Company ("VDC")

(collectively "Named Plaintiffs"), and the Direct Purchaser Class, and all capitalized terms used

and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.     This Court has jurisdiction over each of the Named Plaintiffs, Betances, PDC, RDC,

1

LaFrance, VDC, and Defendant Pfizer, and jurisdiction over the litigation to which the Named

Plaintiffs and Pfizer are parties.

## Certification of the Proposed Class

3.      The Court makes the following determinations as required by Federal Rule of Civil

Procedure 23 solely in connection with the proposed Settlement:

      a.      Pursuant to Rule 23(c)(1)(B), the Class, which shall hereinafter be

denominated "the Class" or "Direct Purchaser Settlement Class" is defined as follows:

> All persons or entities in the United States and its territories who
> purchased Lipitor or its AB-rated bioequivalent generic products
> directly from any of Defendants at any time during the period June
> 28, 2011 through May 28, 2012 (the "Class Period").
>
> Excluded from the Class are the Defendants and their officers,
> directors, management, employees, subsidiaries, or affiliates, all
> federal governmental entities, and all persons or entities that (i)
> purchased Lipitor directly from Pfizer for the first time during the
> Class Period after November 30, 2011, but did not purchase
> generic Lipitor directly from Ranbaxy[1] during the Class Period;
> and (ii) all persons or entities that purchased Lipitor directly from
> Pfizer after November 30, 2011 that did not also purchase generic
> Lipitor after November 30, 2011.
>
> Also excluded from the Class for purposes of this Settlement
> Agreement are the following entities: CVS Pharmacy, Inc. (which
> includes Caremark), Rite Aid Corporation, Rite Aid Hdqtrs. Corp.,
> Walgreen Co. (which includes Kerr Drug), The Kroger Co. (which
> includes Peytons), Safeway Inc., SuperValu Inc., Meijer, Inc. and
> Meijer Distribution, Inc., Giant Eagle, Inc., and H-E-B L.P.
> ("Retailer Plaintiffs").

4.      Pursuant to Rule 23(a)(1), the Court determines that, in connection with and solely

for purposes of settlement, the Class is so numerous and geographically dispersed that joinder of

all members is impracticable. The Class has 63 members geographically dispersed throughout the

---

[1] Ranbaxy Inc., Ranbaxy Laboratories Limited, and Ranbaxy Pharmaceuticals, Inc. are
collectively "Ranbaxy."

United States, which is sufficient to satisfy the impracticality of joinder requirement of Rule 23(a)(l).

5.      Pursuant to Rule 23(c)(l)(B), the Court determines that, in connection with and solely for purposes of settlement, the following issues relating to claims and/or defenses (expressed in summary fashion) present common, class-wide questions, including:

> a.      whether Pfizer and Ranbaxy conspired to suppress generic competition for Lipitor;
>
> b.      whether Ranbaxy agreed to delay its entry into the market with generic Lipitor;
>
> c.      whether Pfizer made a large reverse payment to Ranbaxy;
>
> d.      whether Pfizer's reverse payment to Ranbaxy was for a purpose other than the delayed entry of generic Lipitor;
>
> e.      whether Pfizer's reverse payment to Ranbaxy and Ranbaxy's associated delayed launch of generic Lipitor were reasonably necessary to yield and/or were the least restrictive means of yielding a procompetitive benefit that is cognizable and non-pretextual;
>
> f.      whether the challenged conduct is illegal under the antitrust rule of reason;
>
> g.      whether the challenged conduct suppressed generic competition to Lipitor;
>
> h.      whether Pfizer possessed market or monopoly power over Lipitor;
>
> i.      to the extent a relevant market must be defined, what that definition is;
>
> j.      whether the challenged conduct substantially affected interstate commerce;

3

           k.      whether, and to what extent, Pfizer and Ranbaxy's conduct caused antitrust injury (overcharges) to Direct Purchaser Class Plaintiffs and the Direct Purchaser Class; and

           l.      the quantum of overcharge damages paid by the Direct Purchaser Class in the aggregate.

3.     The Court determines, in connection with and solely for purposes of settlement, that the foregoing class wide issues relating to claims and/or defenses are questions of law or fact common to the Class that satisfy Rule 23(a)(2).

4.     The Named Plaintiffs are hereby appointed as representatives of the Class, for the following reasons:

           a.      The Named Plaintiffs allege, on behalf of the Class, the same manner of injury from the same course of conduct that they complain of themselves, and assert on their own behalf the same legal theory that they assert for the Class. The Court therefore determines that the Named Plaintiffs' claims are typical of the claims of the proposed Class within the meaning of Rule 23(a)(3); and

           b.      Pursuant to Rule 23(a)(4), the Court determines that the Named Plaintiffs will fairly and adequately protect the interests of the Class. The Named Plaintiffs' interests do not conflict with the interests of absent members of the Class. All of the members of the Class share a common interest in proving Pfizer's and Ranbaxy's alleged anticompetitive conduct, and all Class Members share a common interest in recovering the overcharge damages sought in the Complaint. Moreover, the Class is made up of

4

> business entities and any Class Member that wishes to opt out will be given an opportunity to do so. Furthermore, the Named Plaintiffs are well qualified to represent the Class in this case, given their experience in prior cases, and the vigor with which they have prosecuted this action thus far.

5.      Pursuant to Rule 23(b)(3), the Court determines that, in connection with and solely for purposes of settlement, common questions of law and fact predominate over questions affecting only individual members. In light of the Class-wide claims, issues, and defenses set forth above, the issues in this action that are subject to generalized proof, and thus applicable to the Class as a whole, predominate over those issues that are subject only to individualized proof. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-311 (3d Cir. 2008).

6.      Also pursuant to Rule 23(b)(3), the Court determines that, in connection with and solely for purposes of settlement, a class action is superior to other available methods for the fair and efficient adjudication of this action. The Court believes it is desirable, for purposes of judicial and litigation efficiency, to concentrate the claims of the Class in a single action. The Court also believes that there are few manageability problems presented by a case such as this, particularly in light of the Settlement preliminarily approved in this Order.

7.      Pursuant to Fed. R. Civ. P. 23(c)(l)(B) and 23(g), the Court, having considered the factors provided in Rule 23(g)(1)(A), appoints David F. Sorensen and his firm Berger Montague PC, Bruce E. Gerstein and his firm Garwin Gerstein & Fisher LLP, and Thomas M. Sobol and his firm Hagens Berman Sobol Shapiro LLP as Lead Class Counsel, having previously appointed those firms as interim lead counsel on August 10, 2012. ECF No. 109 ¶ 19.

## Preliminary Approval of the Proposed Settlement

8.      Pursuant to Rule 23(e)(1)(B)(i), the Court finds that it will likely be able to approve the Settlement under Rule 23(e)(2), and therefore preliminarily approves the Settlement as set forth in the Settlement Agreement, including the releases contained therein, as being fair, reasonable and adequate to the Class based on the relevant factors under Rule 23(e)(2), subject to the right of any class member to challenge the fairness, reasonableness or adequacy of the Settlement Agreement and to show cause, if any exists, why a final judgment dismissing the Action against Pfizer, and ordering the release of the Released Claims against the Pfizer Releasees and the Direct Purchaser Class Releasees, should not be entered after due and adequate notice to the Class as set forth in the Settlement Agreement and after a hearing on final approval.

9.      The Court finds that the proposed Settlement, which includes a cash payment of ninety-three million dollars ($93,000,000.00) into an escrow account for the benefit of the Class (the "Settlement Fund") in exchange for, *inter alia,* dismissal of the litigation between Direct Purchaser Class Plaintiffs and Pfizer with prejudice and releases of certain claims against Pfizer by Direct Purchaser Class Plaintiffs and the Class, as set forth in the Settlement Agreement, was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation and a mediation led by experienced mediator, the Hon. Faith Hochberg, falls within the range of possibly approvable settlements, and is hereby preliminarily approved, subject to further consideration at the Fairness Hearing provided for below.

## Approval of the Plan of Notice to the Class and Plan of Allocation

10.     The proposed form of Notice to Class Members of the pendency of this Class Action and the proposed Settlement thereof (annexed as Exhibit B to the Settlement Agreement) satisfies the requirements of Rule 23(e) and due process, is otherwise fair and reasonable, and therefore is

6

approved. Lead Class Counsel shall cause the Notice substantially in the form attached to the Settlement Agreement to be disseminated by _____, 2024 (15 days following the entry of this Order) via first-class mail to the last known address of each Class Member.

11.    Members of the Class may request exclusion from the Class or object to the Settlement no later than _____, 2024 (45 days from the date that the Notice is mailed to each member of the Class). Lead Class Counsel or their designee shall monitor and record any and all opt-out requests that are received.

12.    Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pfizer shall serve notices as required under CAFA within 10 days from the date Direct Purchaser Class Plaintiffs file the Settlement Documents with the Court. Pfizer shall contemporaneously provide Lead Class Counsel with copies of any such notices.

13.    The Court appoints RG/2 Claims Administration to serve as Notice and Claims Administrator and to assist Lead Class Counsel in disseminating the Notice. All expenses incurred by the claims administrator must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund. The proposed Plan of Allocation, filed as Exhibit 2 to Plaintiffs' motion, satisfies the requirements of Rule 23(e), is otherwise fair and reasonable, and is, therefore, preliminarily approved, subject to further consideration at the Final Fairness Hearing.

14.    The Court appoints The Huntington National Bank to serve as Escrow Agent for the purpose of administering the escrow account holding the Settlement Fund. All expenses incurred by the Escrow Agent must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund. A copy of the Escrow Agreement executed by The Huntington National Bank and Lead Class Counsel is annexed as Exhibit D to the Settlement Agreement. The Court approves the establishment of the Settlement Fund under the Settlement Agreement as a qualified

7

settlement fund ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder and retains continuing jurisdiction as to any issue that may arise in connection with the formation and/or administration of the QSF. Lead Class Counsel are, in accordance with the Settlement Agreement, authorized to expend funds from the QSF for the payment of the costs of notice, payment of taxes, and settlement administration costs.

## Final Fairness Hearing

15.    A hearing on final approval (the "Fairness Hearing") shall be held before this Court at _____ on _____, 2024, at the United States District Court for the District of New Jersey, 402 East State Street, Courtroom 1, Trenton, New Jersey 08608. At the Fairness Hearing, the Court will consider, *inter alia:* (a) the fairness, reasonableness and adequacy of the Settlement and whether the Settlement should be finally approved; (b) whether the Court should approve the proposed plan of allocation of the Settlement Fund among Class members; (c) whether the Court should approve any motion for attorneys' fees and reimbursement of costs and expenses; (d) whether service awards should be awarded to the Named Plaintiffs; and (e) whether entry of a Final Judgment and Order terminating the litigation between Direct Purchaser Class Plaintiffs and Pfizer should be entered. The Fairness Hearing may be rescheduled or continued; in this event, the Court will furnish all counsel with appropriate notice. Lead Class Counsel shall be responsible for communicating any such notice promptly to the Class by posting a conspicuous notice on Lead Class Counsel's websites.

16.    Class members who wish to: (a) object with respect to the proposed Settlement; and/or (b) wish to appear in person at the Fairness Hearing must first send an Objection and, if intending to appear, a Notice of Intention to Appear, along with a Summary Statement outlining the position(s) to be asserted and the grounds therefore, together with copies of any supporting

8

papers or briefs, via first class mail, postage prepaid, to the Clerk of the United States District

Court for the District of New Jersey, 402 East State Street, Trenton, New Jersey 08608, with copies

to the following counsel:

*On behalf of Direct Purchaser Class Plaintiffs and the Class*:

> David F. Sorensen
> BERGER MONTAGUE PC
> 1818 Market Street, Suite 3600
> Philadelphia, PA 19103
> dsorensen@bm.net
>
> Bruce E. Gerstein
> GARWIN GERSTEIN & FISHER, LLP
> Wall Street Plaza
> 88 Pine Street, 10th Floor
> New York, NY 10005
> bgerstein@garwingerstein.com
>
> Thomas M. Sobol
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 55 Cambridge Parkway, Suite 301
> Cambridge, MA 02142
> tom@hbsslaw.com

*On behalf of Pfizer*:

> Raj Gandesha
> WHITE & CASE LLP
> 1221 Avenue of the Americas
> New York, NY 10020
> rgandesha@whitecase.com

To be valid, any such Objection and/or Notice of Intention to Appear and Summary

statement must be postmarked no later than _____, 2024 (45 days from the date

that the Notice is mailed to each member of the Class). Except as herein provided, no person or

entity shall be entitled to contest the terms of the proposed Settlement. All persons and entities

who fail to file an Objection and/or Notice of Intention to Appear as well as a Summary Statement

as provided above shall be deemed to have waived any such objections by appeal, collateral attack or otherwise and will not be heard at the Fairness Hearing.

17.    All briefs and materials in support of the final approval of the Settlement and the entry of Final Judgment proposed by the parties to the Settlement Agreement shall be filed with the Court by _____, 2024 (21 days after the expiration of the deadline for Class members to request exclusion from the Class or object to the Settlement and/or attorney's fees, expenses and service awards).

18.    All briefs and materials in support of any motion or application for an award of attorneys' fees and reimbursement of costs and expenses shall be filed with the Court by _____, 2024 (14 days prior to the expiration of the deadline for Class members to request exclusion from the Class or object to the Settlement and/or attorney's fees, expenses and service awards).

19.    All proceedings in the action between the Direct Purchaser Class Plaintiffs and Pfizer are hereby stayed until such time as the Court renders a final decision regarding the approval of the Settlement and, if the Court approves the Settlement, enters Final Judgment and dismisses such actions with prejudice.

20.    Neither this Order, nor the Settlement Agreement, nor any other Settlement-related document, nor anything contained herein or therein or contemplated hereby or thereby, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Pfizer as to the validity of any claim that has been or could have been asserted by Direct Purchaser Class Plaintiffs against Pfizer or as to any

10

liability by Pfizer as to any matter set forth in this Order, or as to whether any class, in this case or others, may be certified for purposes of litigation and trial.

      21.    If final approval of the Settlement is not obtained, the Settlement is null and void and the parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses.

SO ORDERED this _____ day of _____, 2024

_____
The Honorable Peter G. Sheridan
United States District Judge

11

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

# If you purchased brand or generic Lipitor® (atorvastatin calcium) directly from Pfizer Inc., Pfizer Manufacturing Ireland, Warner-Lambert Co., Warner-Lambert Co. LLC, Ranbaxy Inc., Ranbaxy Laboratories Limited, or Ranbaxy Pharmaceuticals, Inc., your rights may be affected by the settlement of a class action lawsuit.

*A federal court authorized this Notice. It is not a solicitation from a lawyer. You are not being sued.*

The purpose of this Notice is to alert you to the existence of and provide important details about a proposed settlement relating to a class action lawsuit brought by Drogueria Betances, LLC, Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc., and Value Drug Company (collectively "Plaintiffs" or "Class Representatives") on behalf of direct purchasers of brand or generic Lipitor directly from Pfizer Inc., Pfizer Manufacturing Ireland, Warner-Lambert Co., and Warner-Lambert Co. LLC (collectively, "Pfizer") and/or Ranbaxy Inc., Ranbaxy Laboratories Limited, and Ranbaxy Pharmaceuticals, Inc. (collectively, "Ranbaxy") and to give you the opportunity to object to or opt out of a proposed settlement of that lawsuit with only Pfizer.

The proposed settlement is with Pfizer only and will provide $93,000,000 in cash to resolve the Direct Purchaser Class's claims against Pfizer only (the "Settlement Fund").

## YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT, SO PLEASE READ THIS NOTICE CAREFULLY.

The Court has scheduled a hearing to decide on final approval of the settlement with Pfizer, the plan for allocating the Settlement Fund to Direct Purchaser Class members (summarized in the responses to Questions 6 and 7 below), and Lead Class Counsel's request for settlement administration costs, attorneys' fees, reimbursement of Class Counsel's out-of-pocket expenses and costs, and service awards to the Class Representatives. That hearing is scheduled for [date] before U.S. District Court Judge Peter G. Sheridan in Courtroom [xx] of the United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

Judge Peter G. Sheridan of the United States District Court for the District of New Jersey has determined that the lawsuit between Plaintiffs and Pfizer can proceed as a class action for purposes of this settlement because it meets the requirements of the Federal Rule of Civil Procedure 23, which governs class actions in federal courts. The class (hereinafter, the "Direct Purchaser Class" or the "Class") includes the following:

> All persons or entities in the United States and its territories who purchased Lipitor or its AB-rated bioequivalent generic products directly from any of Defendants at any time during the period June 28, 2011 through May 28, 2012 (the "Class Period").

Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy during the Class Period; and (ii) all persons or entities that purchased Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011.

Also excluded from the Class for purposes of this Settlement Agreement are the following entities: CVS Pharmacy, Inc. (which includes Caremark), Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co. (which includes Kerr Drug), The Kroger Co. (which includes Peytons), Safeway Inc., SuperValu Inc., Meijer, Inc. and Meijer Distribution, Inc., Giant Eagle, Inc., and H-E-B L.P. ("Retailer Plaintiffs").

The proposed settlement will affect the rights of all members of the Class, as defined above, unless they exclude themselves from the Class.

The Court in charge of this case still has to decide whether to give Final Approval to the proposed settlement with Pfizer.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| IF YOU WISH TO RECOVER A SHARE OF THE SETTLEMENT FUND, PROMPTLY COMPLETE AND RETURN THE ENCLOSED CLAIM FORM | You do not need to do anything now to remain a member of the Direct Purchaser Class.<br><br>*However, to recover a share of the Settlement Fund, you must complete and return the enclosed Claim Form within 60 days of the date of the Claim Form (by date).* |
| EXCLUDE YOURSELF FROM THE CLASS | You may choose to exclude yourself (*i.e.*, "opt out") from the Class. If you decide to exclude yourself, you will not be bound by any decision in this lawsuit relating to Pfizer. This is the only option that allows you to ever be part of any legal action other than this lawsuit relating to the legal claims against Pfizer in this case. If you decide to "opt out," do not complete and return the Claim Form because you will not be eligible to receive a share of the Settlement Fund if you exclude yourself from the Class. |
| STAY IN THE LAWSUIT BUT OBJECT TO THE SETTLEMENT | If you object to any part or all of the proposed settlement but you do not wish to exclude yourself from the Class, write to the Court about why you do not like the proposed settlement.<br><br>*Regardless of whether you object to any part of the settlement, you must complete and return the enclosed* |

| | *Claim Form within 60 days of the date of this Notice (by date) in order to recover a share of the Settlement Fund.* |
|---|---|
| **GET MORE INFORMATION** | If you would like to receive more information about the proposed settlement, you can send questions to the lawyers identified in this Notice and/or attend the hearing at which the Court will evaluate the proposed settlement. |

*These rights and options—and the deadlines to exercise them—are explained in this Notice.*

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ............................................................................................... 5
   1.   Why Did I Get This Notice? .......................................................... 5
   2.   What Is This Lawsuit About? ........................................................ 5
   3.   Why Is This Lawsuit a Class Action? ........................................... 6
   4.   Why Is There a Settlement? ......................................................... 6
WHO IS INCLUDED IN THE CLASS AND THE SETTLEMENT ..................................... 7
   5.   Am I Part of the Class and the Settlement? .................................. 7
THE SETTLEMENT BENEFITS: WHAT YOU GET ..................................................... 7
   6.   What Does the Settlement Provide? .............................................. 7
   7.   When Would I Get My Payment and How Much Would It Be? .......... 8
   8.   How Can I Get a Payment? ........................................................... 8
THE LAWYERS REPRESENTING YOU ........................................................................ 9
   9.   Do I Have a Lawyer in this Case? ................................................. 9
   10.  Should I Get My Own Lawyer? ...................................................... 9
   11.  How Will the Lawyers Representing the Class Be Paid? ................. 9
EXCLUDING YOURSELF FROM THE CLASS AND THE SETTLEMENT .................. 10
   12.  Can I Get Out of the Settlement with Pfizer? ............................... 10
   13.  If I Don't Exclude Myself, Can I Sue Pfizer for the Same Thing Later? ............ 10
OBJECTING TO THE SETTLEMENT .......................................................................... 10
   14.  How Do I Tell the Court That I Do Not Like the Settlement? ........... 11
THE COURT'S FINAL FAIRNESS HEARING ............................................................. 12
   15.  When and Where Will the Court Decide Whether to Approve the Settlement? ............................................................................... 12
   16.  Do I Have to Come to the Hearing? ............................................. 12
   17.  May I Speak at the Hearing? ....................................................... 12
IF YOU DO NOTHING ............................................................................................... 12
   18.  What Happens If I Do Nothing at All? .......................................... 12
GETTING MORE INFORMATION ............................................................................. 13
   19.  How Do I Get More Information? ................................................. 13

## BASIC INFORMATION

**1.    Why Did I Get This Notice?**

You received this Notice because, according to sales data produced by Pfizer and Ranbaxy, you may have purchased brand Lipitor directly from Pfizer and/or generic Lipitor directly from Ranbaxy during the period from June 28, 2011 through May 28, 2012.

A federal court authorized this Notice because you have a right to know about the proposed settlement with Pfizer and about all of your options before the Court decides whether to grant final approval of the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and eligibility for those benefits. Note that you may have received this Notice in error; simply receiving this Notice does not mean you are definitely a member of the Direct Purchaser Class. You may confirm that you are a member of the Direct Purchaser Class by reviewing the criteria set forth in Question 5 below. You may also call or write to the lawyers in this case at the telephone numbers or addresses listed in Question 9 below.

**2.    What Is This Lawsuit About?**

Plaintiffs filed lawsuits individually and as representatives of all persons or entities in the U.S. and its territories who purchased brand or generic Lipitor directly from Pfizer and/or Ranbaxy at any time during the period from June 28, 2011 through May 28, 2012 (the "Class"). Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy during the Class Period; and (ii) all persons or entities that purchased generic Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011. Also excluded from the Class for purposes of the Settlement with Pfizer are the following entities: CVS Pharmacy, Inc. (which includes Caremark), Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co. (which includes Kerr Drug), The Kroger Co. (which includes Peytons), Safeway Inc., SuperValu Inc., Meijer, Inc. and Meijer Distribution, Inc., Giant Eagle, Inc., and H-E-B L.P. ("Retailer Plaintiffs").

The lawsuit asserts that as a result of Pfizer's and Ranbaxy's alleged unlawful conduct, the prices paid for brand Lipitor and generic Lipitor (atorvastatin calcium tablets) were higher than they otherwise would have been. The Plaintiffs seek to recover damages in the form of overcharges on direct purchases of brand or generic Lipitor from Pfizer, Ranbaxy, and Watson Pharmaceuticals, Inc. ("Watson") (who sold authorized generic Lipitor). Plaintiffs allege the overcharges were caused by Pfizer's and Ranbaxy's conduct. Under federal antitrust law, any damages awarded at trial are automatically trebled (that is, tripled). Plaintiffs also seek to recover attorneys' fees and costs.

The lawsuit alleges that Pfizer and Ranbaxy violated federal antitrust laws by unlawfully impairing and delaying the introduction of generic versions of the prescription drug Lipitor into the United States market. The Plaintiffs allege that Pfizer, the manufacturer of brand Lipitor, and Ranbaxy, a generic pharmaceutical company, entered into a "pay for delay" or "reverse payment" agreement in violation of the federal antitrust laws. A "pay for delay" or "reverse payment" agreement, generally speaking, is an agreement in which a brand name drug company provides

compensation to a generic competitor, and in return, the generic competitor agrees to stop challenging, or stop trying to invent around, the brand company's patent and agrees to delay launching its generic product. Absent the alleged unlawful conduct, the Plaintiffs claim, Ranbaxy would have launched generic Lipitor earlier than November 30, 2011, the date on which Ranbaxy actually launched generic Lipitor. The Plaintiffs allege that the prices for brand and generic Lipitor were higher than they would have been absent the challenged unlawful conduct.

Pfizer denies all these allegations, including that the Plaintiffs or Class members are entitled to damages or any other relief.

There has been no determination by the Court or a jury that the allegations against Pfizer have been proven or that, if proven, Pfizer's conduct caused harm to the Class. This Notice is not an expression of any opinion by the Court as to the claims against Pfizer or Ranbaxy or the defenses asserted by Pfizer or Ranbaxy.

Judge Peter G. Sheridan of the United States District Court for the District of New Jersey is overseeing this class action and the settlement. The lawsuit is known as *In re Lipitor Antitrust Litigation*, No. 3:12-cv-2389 (PGS/DEA) (S.D.N.Y.).

### Why Is This Lawsuit a Class Action?

In a class action lawsuit, one or more persons or entities sue on behalf of others who have similar claims. Together, all these entities make up the "Class" and are called "Class members." The companies that filed suit are called the "Plaintiffs" (or "Class Representatives"). The companies that are sued are called the "Defendants."

In a class action lawsuit, one court resolves the issues for everyone in the class, except for those class members who exclude themselves from the class.

For the purpose of this proposed settlement, the Court has decided that this lawsuit can proceed as a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. The common legal and factual questions include:

- Whether Pfizer conspired with Ranbaxy to suppress generic competition to Lipitor;
- Whether Pfizer's conduct caused the Plaintiffs and members of the Class to pay higher prices than they otherwise would have; and
- Whether the alleged unlawful conduct is illegal under the antitrust laws.

The members of the Class are "Class members" or "Direct Purchaser Class members." A copy of the Court's preliminary order certifying the Class is available at [website].

### Why Is There a Settlement?

Plaintiffs and Pfizer were preparing to proceed with the litigation and eventually to go to trial, but they have now agreed to a proposed settlement. By settling, both the Plaintiffs and Pfizer avoid the risk of trial and the continued costs of litigation. The Class Representatives and Lead Class

Counsel believe that the proposed settlement with Pfizer is fair, adequate, reasonable, and in the best interests of the Class.

## WHO IS INCLUDED IN THE CLASS AND THE SETTLEMENT

To see if you are in the Class, and if so, how you will be able to share in the Settlement Fund, you first have to decide if you are a Class member.

**5.    Am I Part of the Class and the Settlement?**

You are in the Class if you are a person or entity in the United States and its territories who purchased Lipitor or its AB-rated bioequivalent generic products directly from any of Defendants at any time during the period June 28, 2011 through May 28, 2012 (the "Class Period"). Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy during the Class Period; and (ii) all persons or entities that purchased Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011. Also excluded from the Class for purposes of the Settlement Agreement are the following entities: CVS Pharmacy, Inc. (which includes Caremark), Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co. (which includes Kerr Drug), The Kroger Co. (which includes Peytons), Safeway Inc., SuperValu Inc., Meijer, Inc. and Meijer Distribution, Inc., Giant Eagle, Inc., and H-E-B L.P. ("Retailer Plaintiffs").

If you are not sure whether you are included, you may call or write to the lawyers in this case at the telephone numbers or addresses listed in Question 9 below.

## THE SETTLEMENT BENEFITS: WHAT YOU GET

**6.    What Does the Settlement Provide?**

Pfizer has agreed to pay $93,000,000 in cash into an interest-bearing escrow account ("Settlement Fund") for the benefit of the Class.

If approved by the Court, the Settlement Fund, minus any Court-awarded fees and expenses to Lead Class Counsel, the cost of settlement notice and administration, and service awards to the Class Representatives (the "Net Settlement Fund"), will be distributed to Class members who return valid and timely Claim Forms. The distribution will be made on a *pro rata* basis, consistent with each Class member's aggregate share of the total Class purchases of brand and generic Lipitor during the relevant time periods described below in response to Question 7. The Allocation Plan utilizes the combined totals of each Class member's purchases of brand and generic Lipitor during the relevant time periods described below in response to Question 7.

Transactional sales data from Pfizer, Ranbaxy, and Watson (who sold authorized generic Lipitor) will be used to make these calculations. Class members will be given the opportunity to provide data or information to supplement or correct this information if they choose. With this Notice, each Class member is being sent a Claim Form pre-populated with information about Class members' purchases to review, sign, and submit.

7

Lead Class Counsel will ask for service awards for each Class Representative of $100,000 from the Settlement Fund in recognition of their efforts to date on behalf of the Class.

In exchange for the Settlement Fund, Pfizer will be released and discharged from all antitrust and similar claims relating to brand and generic Lipitor ("Pfizer Releasees" and "Released Claims" as defined in the Settlement Agreement). In addition, Pfizer will release Direct Purchaser Class Releasees from claims asserted in connection with the Action or that should have been asserted in the Action as compulsory counterclaims arising out of the alleged conduct that is the subject matter of this case. The full text of the release is included in the Settlement Agreement, available at [website].

This Notice is a summary only and is not intended to, and does not, vary the terms of the actual Settlement Agreement.

**7. When Would I Get My Payment and How Much Would It Be?**

Each Class member's proportionate *pro rata* recovery will be determined using a Court-approved Plan of Allocation. The detailed Plan of Allocation is posted and can be reviewed at [website]. Under the Plan of Allocation, your share of the Net Settlement Fund will depend on the total amount of brand Lipitor that you purchased from Pfizer from June 28, 2011 through May 29, 2014 and generic Lipitor that you purchased from Ranbaxy and/or Watson (who sold authorized generic Lipitor) from November 30, 2011 through May 28, 2012 ("Class Purchases"). Generally, those who purchased more will get a higher recovery.

Your share of the Net Settlement Fund will also depend on the number of valid Claim Forms that Class members submit. If fewer than 100% of the Class members send in a Claim Form, you could get a larger *pro rata* share.

Money from the settlement will only be distributed to Class members if the Court grants final approval of the settlement. Payment is conditioned on several matters, including the Court's approval of the settlement and such approval no longer being subject to any appeals to any court or, if there is an appeal, such appeal being final and no longer subject to any further appeal.

The Settlement Agreement may be terminated if the Court does not approve the settlement or materially modifies it. If the Settlement Agreement is terminated, the lawsuit will proceed against Pfizer as if such settlement had not been reached.

**8. How Can I Get a Payment?**

You must complete and return the enclosed Claim Form by mail within 60 days (by date) to request a *pro rata* share of the Net Settlement Fund (though money from the settlement will only be distributed to Class members if the Court grants final approval of the settlement). Court-approved fees and expenses for the attorneys and service awards to the Class Representatives will also be paid by the Settlement Fund. Transactional sales data from Pfizer, Ranbaxy, and Watson (who sold authorized generic Lipitor) will be used to make the *pro rata* share calculations. You will need to verify the accuracy of the information in the Claim Form, and to sign and return the Claim

8

Form according to the directions on the Claim Form. Class members have the opportunity to provide data or information to supplement or correct this information.

Claim Forms must be postmarked (with any necessary supporting documentation if the Claimant disagrees with the information contained in its Claim Form) within sixty (60) days of the date of the Claim Form (so by date).

## THE LAWYERS REPRESENTING YOU

### 9. Do I Have a Lawyer in this Case?

The Court appointed the following attorneys to serve as Lead Class Counsel to represent you and all Class members. Their contact information is as follows:

Bruce E. Gerstein
GARWIN GERSTEIN & FISHER, LLP
Wall Street Plaza
88 Pine Street, 10th Floor
New York, NY 10005
bgerstein@garwingerstein.com

David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
tom@hbsslaw.com

### 10. Should I Get My Own Lawyer?

You do not need to hire your own lawyer if you are in the Class because the lawyers appointed by the Court are working on your behalf as to claims against Pfizer. You may hire a lawyer and enter an appearance through your lawyer at your own expense if you so desire.

### 11. How Will the Lawyers Representing the Class Be Paid?

If the Court gives Final Approval to the settlement with Pfizer, then the Court will be asked to approve reasonable fees and expenses for the lawyers who worked on the case and for reimbursement of the litigation expenses they have advanced on behalf of the Class. Lead Class Counsel intend to seek attorneys' fees of up to one third (33 1/3%) of the Settlement Fund, less court-approved expenses and service awards, but including a proportionate share of accrued interest. If the Court grants Lead Class Counsel's request, attorneys' fees and expenses would be deducted from the Settlement Fund. Class members will not have to pay any attorneys' fees or expenses out of their own pockets.

Any application by Lead Class Counsel for an award of attorneys' fees, reimbursement of expenses, and service awards to the Class Representatives will be filed with the Court and made available for download and/or viewing on or before [date] at [website(s)], as well as the offices of the Clerk of Court for the United States District Court for the District of New Jersey, United

States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, during normal business hours.

## EXCLUDING YOURSELF FROM THE CLASS AND THE SETTLEMENT

**12.  Can I Get Out of the Settlement with Pfizer?**

Yes, if you exclude yourself from the Class (*i.e.*, "opt out" of the Class) on or before [date]. To exclude yourself, you must send a letter via first class U.S. mail saying that you want to exclude yourself from the Direct Purchaser Class Action in *In re Lipitor Antitrust Litigation*, No. 3:12-cv-2389 (PGS/DEA) (S.D.N.Y.). Be sure to include your name, address, telephone number, and your signature. Mail the exclusion to the lawyers listed in Question 14 below. Your letter requesting exclusion must be postmarked no later than [date].

If you exclude yourself from the Class, you will not get a share of the Net Settlement Fund, you will not be legally bound by anything that happens in the lawsuit between Plaintiffs and Pfizer, and you may be able to sue (or continue to sue) Pfizer in the future about the legal issues in this case. If you exclude yourself from the Class, do not complete and return the Claim Form. If you exclude yourself from the Class so that you can start, or continue, your own lawsuit against Pfizer and/or Ranbaxy, you should talk to your own lawyer as soon as possible because your claims will be subject to a statute of limitations, which means that your claims will expire if you do not take timely action. You need to contact your own lawyer about this issue.

If you do not exclude yourself from the Class, you will not be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Pfizer arising from the claims released as part of the settlement, including claims brought in the case between Plaintiffs and Pfizer. All of the Court's orders in *In re Lipitor Antitrust Litigation*, No. 3:12-cv-2389 (PGS/DEA) (D.N.J.) relating to claims against Pfizer will apply to you and legally bind you. You will also be bound by the Settlement Agreement between Plaintiffs and Pfizer if the Court grants Final Approval to the proposed settlement and enters final judgment in the case between the Plaintiffs and Pfizer.

**13.  If I Don't Exclude Myself, Can I Sue Pfizer for the Same Thing Later?**

No. If you remain in the Class and the settlement is approved by the Court, you give up your right to sue Pfizer relating to your purchases of brand and generic Lipitor. That is called "releasing" your claims and potential claims against Pfizer relating to your purchases of Lipitor and/or generic Lipitor from Pfizer and Ranbaxy. The full text of the release is included in the Settlement Agreement at Paragraph 13.

If you have your own pending lawsuit, speak to your lawyer in that case immediately, because you must exclude yourself from this Class to continue your own lawsuit against Pfizer. Remember, the exclusion deadline is [date].

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with all or any part of the proposed settlement, and/or the application for attorneys' fees, costs, and expenses, and/or service awards to the Class Representatives. If you exclude yourself from the Class, however, you cannot object to the proposed settlement or the application for attorneys' fees, costs, expenses and/or service awards

10

to the Class Representatives. If you object to the proposed settlement but remain in the Class, you still must complete and return the enclosed Claim Form by mail within 60 days (by date) to request a *pro rata* share of the Net Settlement Fund.

## 14.   How Do I Tell the Court That I Do Not Like the Settlement?

If you are a member of the Class, you can object to the settlement or any part of it if you do not like it. The Court will consider your views. To object, you must send a letter via First Class U.S. Mail saying that you object to the settlement in *In re Lipitor Antitrust Litigation*, No. 3:12-cv-2389 (PGS/DEA) (S.D.N.Y.). Be sure to include your name, address, telephone number, signature, and the reasons why you object to the settlement. Mail the objection separately to each of the following:

| Counsel for Pfizer | Lead Class Counsel |
|---|---|
| Raj Gandesha<br>White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>rgandesha@whitecase.com | Bruce E. Gerstein<br>GARWIN GERSTEIN & FISHER, LLP<br>Wall Street Plaza<br>88 Pine Street, 10th Floor<br>New York, NY 10005<br>bgerstein@garwingerstein.com<br><br>David F. Sorensen<br>BERGER MONTAGUE PC<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>dsorensen@bm.net<br><br>Thomas M. Sobol<br>HAGENS BERMAN SOBOL SHAPIRO LLP<br>1 Faneuil Hall Sq., 5th Floor<br>Boston, MA 02109<br>tom@hbsslaw.com |
| Clerk of the Court | |
| Clerk of the United States District Court for the District of New Jersey<br>United States District Court for the District of New Jersey<br>Clarkson S. Fisher Federal Building & U.S. Courthouse<br>402 East State Street<br>Trenton, New Jersey 08608 | |

**Your objection must be postmarked no later than [date]. Again, whether or not you object to the proposed settlement, if you remain in the Class and do not opt out, you must complete and return the enclosed Claim Form by mail by [date] to request a *pro rata* share of the Net Settlement Fund.**

11

## THE COURT'S FINAL FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend, and you may ask to speak, but you do not have to.

**15.   When and Where Will the Court Decide Whether to Approve the Settlement?**

The Court will hold a Final Fairness Hearing at [date/time] in Courtroom xx of the United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608. At this hearing, the Court will consider whether the settlement with Pfizer is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take. The date and time of the hearing is subject to change. Notice of such change will be posted at [website].

**16.   Do I Have to Come to the Hearing?**

No, you do not have to attend the hearing. Lead Class Counsel will answer any questions that Judge Sheridan may have. You are welcome to attend at your own expense, however.

If you send an objection, you do not have to come to Court to talk about it. So long as you mail your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but this is not necessary for you to receive a *pro rata* share of the Net Settlement Fund.

**17.   May I Speak at the Hearing?**

If you are a member of the Class, you may ask the Court for permission to speak at the Final Fairness Hearing. To do so, you must send a letter via First Class U.S. Mail saying that it is your "Notice of Intention to Appear in *In re Lipitor Antitrust Litigation*, No. 3:12-cv-2389 (PGS/DEA) (S.D.N.Y.)." Be sure to include your name, address, and telephone number, your signature, and a summary statement outlining your positions and the reasons for them, as well as copies of any supporting documents or briefs you want the Court to consider. Your Notice of Intention to Appear must be postmarked no later than [date], and must be sent to the Clerk of the Court, Class Counsel and Counsel for Pfizer, at the addresses set forth in the responses to Question 14.

You cannot speak at the hearing if you do not send a Notice of Intention to Appear.

## IF YOU DO NOTHING

**18.   What Happens If I Do Nothing at All?**

If you are a member of the Class and you do nothing and the Court approves the settlement, then you will remain in the Class and will be eligible to participate in the settlement as described in this Notice. You will also release your claims against Pfizer as described in the Settlement Agreement. However, you will need to complete, sign, and return the Claim Form within sixty (60) days of the date on this Notice (so by date) in order to obtain a payment.

## GETTING MORE INFORMATION

**19. How Do I Get More Information?**

If you have questions about this case or wish to read more detailed information about this litigation, you may call or write to Lead Class Counsel as indicated in Question 14. Further information is also available at [website(s)]. The Notice and Claims Administrator, RG/2 Claims Administration, can be contacted at the following address:

> RG/2 Claims Administration
> P.O. Box 59479
> Philadelphia, PA 19102-9479

This Notice is only a summary of the proposed settlement and is qualified in its entirety by the terms of the actual Settlement Agreement. A copy of the Settlement Agreement is on public file with the Office of the Clerk, United States District Court for the District of New Jersey, United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608, and is also available at [website].

**PLEASE DO NOT CALL OR WRITE TO THE COURT OR THE CLERK'S OFFICE FOR INFORMATION. PLEASE DIRECT ANY INQUIRIES TO ANY OF LEAD CLASS COUNSEL LISTED ABOVE.**

DATE: [date]                                      BY THE COURT


                                                  The Honorable Peter G. Sheridan
                                                  United States District Judge

13

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: LIPITOR ANTITRUST LITIGATION | MDL No. 2332 |
| This document relates to: | Master Docket No. 3:12-cv-2389 (PGS/DEA) |
| Direct Purchaser Class Actions | |

## [PROPOSED] ORDER GRANTING FINAL JUDGMENT AND ORDER OF DISMISSAL APPROVING DIRECT PURCHASER CLASS SETTLEMENT AND DISMISSING DIRECT PURCHASER CLASS CLAIMS AGAINST PFIZER INC., PFIZER MANUFACTURING IRELAND, WARNER-LAMBERT CO., AND WARNER-LAMBERT CO. LLC.

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement dated _____ between Pfizer Inc., Pfizer Manufacturing Ireland, Warner-Lambert Co., and Warner-Lambert Co. LLC (collectively or individually, "Pfizer"), and Drogueria Betances, LLC, Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc., and Value Drug Company (collectively, "Named Plaintiffs," "Direct Purchaser Plaintiffs," or "Plaintiffs"), individually and on behalf of the Direct Purchaser Class (as defined in Paragraph 2 below, the "Direct Purchaser Class" or "Class"), in the above-captioned litigation (the "Action"), it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.     This Final Judgment and Order of Dismissal hereby incorporates by reference the definitions in the Settlement Agreement among Pfizer, the Plaintiffs, and the Direct Purchaser Class, and all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.    The following class (the "Class" or "Direct Purchaser Class") has been certified

under Fed. R. Civ. P. 23(b)(3) for purposes of Settlement with Pfizer:

> All persons or entities in the United States and its territories who purchased Lipitor or its AB-rated bioequivalent generic products directly from any of Defendants at any time during the period June 28, 2011 through May 28, 2012 (the "Class Period").
>
> Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy[1] during the Class Period; and (ii) all persons or entities that purchased Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011.
>
> Also excluded from the Class for purposes of the Settlement Agreement are the following entities: CVS Pharmacy, Inc. (which includes Caremark), Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co. (which includes Kerr Drug), The Kroger Co. (which includes Peytons), Safeway Inc., SuperValu Inc., Meijer, Inc. and Meijer Distribution, Inc., Giant Eagle, Inc., and H-E-B L.P. ("Retailer Plaintiffs").

3.    The Court previously appointed the Class Representatives. The Court previously

appointed David F. Sorensen of Berger Montague PC, Bruce E. Gerstein of Garwin Gerstein &

Fisher, LLP, and Thomas M. Sobol of Hagens Berman Sobol and Shapiro LLP as Lead Counsel

for the Class ("Lead Class Counsel"). The Class Representatives and Lead Class Counsel have

fairly and adequately represented the interests of the Class and satisfied the requirements of Fed.

R. Civ. P. 23(g).

4.    The Court has jurisdiction over these actions, each of the parties, and all members

of the Class for all manifestations of this case, including this Settlement.

---

[1] Ranbaxy Inc., Ranbaxy Laboratories Limited, and Ranbaxy Pharmaceuticals, Inc. are collectively, "Ranbaxy."

2

5.      The notice of settlement (substantially in the form presented to this Court as Exhibit B to the Settlement Agreement) (the "Notice") directed to the members of the Class via First Class Mail, constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided for individual notice to all members of the Class who were identified through reasonable efforts. Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Class members to object to the Settlement.

6.      Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the _____ Fairness Hearing, it is hereby determined that all Class Members are bound by this Order and Final Judgment.

7.      The Settlement of this Class Action was not the product of collusion between the Class Representatives and Pfizer or their respective counsel, but rather was the result of *bona fide* and extensive arm's-length negotiations conducted in good faith between Lead Class Counsel and counsel for Pfizer, with the assistance of a mediator, the Hon. Faith S. Hochberg.

8.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement and finds that the Settlement is, in all respects, fair, reasonable and adequate to Class members and in their best interests. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

9.      The Court hereby approves the Plan of Allocation of the Settlement Fund as proposed by Lead Class Counsel (the "Plan of Allocation"), which was summarized in the Notice of Proposed Settlement and filed as Exhibit 2 with Plaintiffs' Motion for Preliminary Approval of

3

Settlement, and directs RG/2 Claims Administration, the firm retained by Lead Class Counsel and previously appointed by the Court as the Notice and Claims Administrator, to distribute the Net Settlement Fund as provided in the Plan of Allocation.

10.     All claims against Pfizer in the Action are hereby dismissed with prejudice and without costs (other than as provided herein).

11.  .   Upon the Settlement Agreement becoming final in accordance with Paragraph 13.b of the Settlement Agreement, Pfizer on behalf of itself and its respective past, present, and future parents, subsidiaries, associates, affiliates, officers, directors, employees, insurers, general or limited partners, divisions, agents, attorneys, servants, trustees, joint ventures, heirs, executors, administrators, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and representatives (collectively, the "Pfizer Releasors"), release and forever discharge, and covenant not to sue, Direct Purchaser Class Members and their past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (collectively, the "Direct Purchaser Class Releasees") from all claims, debts, obligations, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, in law or equity, asserted in

4

connection with the Action or that should have been asserted in the Action as compulsory counterclaims arising out of the alleged conduct that is the subject matter of Paragraph 13 of the Settlement Agreement.

12.     In addition, upon the occurrence of the Effective Date set forth in Paragraph 6 of the Settlement Agreement, and in consideration of payment of the Settlement Amount specified in Paragraph 7 of the Settlement Agreement, Named Plaintiffs and all Class Members, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as the past and present general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives of all Class Members (the "Direct Purchaser Class Releasors"), release and forever discharge, and covenant not to sue Pfizer and its respective past, present, and future parents, subsidiaries, divisions, affiliates, joint ventures, stockholders, general partners, limited partners, officers, directors, management, supervisory boards, insurers, employees, agents, servants, trustees, associates, attorneys and any of their legal representatives, or any other representatives thereof (and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing) (the "Pfizer Releasees"), with respect to, in connection with, or relating to any and all past, present, or future liabilities, claims, demands, obligations, suits, damages, penalties, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, arising out of or relating to any conduct, events, or transactions up to the date of the Settlement Agreement, (a) alleged, or which could reasonably have been alleged, in the Direct Purchaser Class Action, (b) concerning purchases of Lipitor and/or its generic equivalents and arising under the

5

Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, any state or federal RICO statutes, or any other federal or state statute or common law doctrine relating to antitrust, fraud, unfair competition, unjust enrichment, or consumer protection, or (c) the sale, marketing, or distribution of Lipitor or generic Lipitor except as provided for in Paragraphs 13(c) and 14 of the Settlement Agreement (the "Released Claims"). The Direct Purchaser Class Releasors will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any forum whatsoever, including any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against the Pfizer Releasees.

In addition, Direct Purchaser Class Releasors hereby expressly waive, release and forever discharge, upon the Settlement becoming final, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

> Section 1542. General Release; extent. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code. The Direct Purchaser Releasors may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of Paragraph 13 of the Settlement Agreement, but each Direct Purchaser Releasor hereby expressly waives and fully, finally, and forever settles, releases, and discharges any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Direct Purchaser Releasor also hereby expressly waives and fully, finally and forever

6

settles, releases and discharges any and all claims it may have against any Pfizer Releasee under Section 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims.

13. The Settlement Agreement releases only the Pfizer Releasees and the Direct Purchaser Class Releasees with respect to the Released Claims. The Settlement Agreement, in whole or in part, does not compromise or otherwise affect in any way any rights the Direct Purchaser Releasors have or may have against any other person, firm, association, or corporation whatsoever. The release set forth in Paragraph 13 of the Settlement Agreement is not intended to and does not release any claims other than the Released Claims.

14. The Settlement effects a complete and total resolution of this Action to the extent of the claims of the Direct Purchaser Class, as well as any compulsory counterclaims of Pfizer relating to the allegations in this Action that were or should have been asserted, but Direct Purchaser Class members do not release any claims (1) arising in the ordinary course of business between any Direct Purchaser Class member and Pfizer arising under Article 2 of the Uniform Commercial Code (pertaining to sales), the laws of negligence or product liability or implied warranty, breach of contract, breach of express warranty, or personal injury; (2) unrelated to purchases of Lipitor or generic Lipitor; or (3) arising out of or in any way relating to the alleged horizontal price-fixing agreements between Pfizer and other manufacturers of generic pharmaceutical products that are alleged in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724, 16-MD-2724 (E.D. Pa.).

15. Lead Class Counsel have moved for the award of attorneys' fees, reimbursement of expenses and service awards for the Class Representatives. Lead Class Counsel request an

7

award of attorneys' fees of ____% of the Settlement amount (including the interest accrued thereon), reimbursement of the reasonable costs and expenses incurred in the prosecution of this action in the amount of $_____, and service awards of $100,000 to each Class Representative, and such motion has been on the docket and otherwise publicly available since

_____.

16. Upon consideration of the motion for attorneys' fees, costs and expenses, the Court hereby awards attorneys' fees of $_____ (representing ____% of the Settlement Fund), and costs and expenses totaling $_____, together with a proportionate share of the interest thereon from the date the funds are deposited in the Settlement Escrow Account until payment of such attorneys' fees, costs and expenses, at the rate earned by the Settlement Fund, to be paid solely from the Settlement Fund. The attorneys' fees, costs and expenses authorized and approved by this Final Judgment and Order shall be paid within ten (10) business days after this Final Approval Order is entered or as soon thereafter as is practical and in accordance with the terms of the Settlement Agreement and the Escrow Agreement.

17. Upon consideration of Lead Class Counsel's petition for service awards for Class Representatives, Drogueria Betances, LLC, Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc., and Value Drug Company are each hereby awarded $100,000, to be paid solely from the Settlement Fund as soon as possible after the Settlement becomes final in accordance with Paragraph 6 of the Settlement Agreement.

18. The Releasees shall have no responsibility for, and no liability whatsoever with respect to any payment or disbursement of attorneys' fees, expenses, costs or service awards among Lead Class Counsel or other counsel and/or Class Representatives, nor with respect to any allocation of attorneys' fees, expenses, costs or service awards to any other person or entity who

8

may assert any claim thereto. The attorneys' fees, costs and expenses, and service awards authorized and approved by this Final Judgment and Order shall constitute full and final satisfaction of any and all claims that Plaintiffs and any Class member, and their respective counsel, may have or assert for reimbursement of fees, costs, and expenses, and service awards, and Plaintiffs and members of the Class, and their respective counsel, shall not seek or demand payment of any fees and/or costs and/or expenses and/or service awards from Pfizer other than from the Settlement Fund.

19.     The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration and consummation of the Settlement, and over this Final Judgment and Order.

20.     The Court finds that this Final Judgment and Order adjudicates all of the claims, rights and liabilities of the parties to the Settlement Agreement (including the members of the Class) and is final and shall be immediately appealable pursuant to Fed. R. Civ. P. 54(b). Neither this Order nor the Settlement Agreement nor any other Settlement-related document shall constitute any evidence, admission, or concession by Pfizer or any other Releasee, in this or any other matter or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, nor shall either the Settlement Agreement, this Order, or any other Settlement-related document be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement, the terms of this Order, or if offered by any Releasee in responding to any action purporting to assert Released Claims, or if offered by any Releasor in asserting that a claim is not a Released Claim, including because such

9

claim is covered by Paragraphs 13(c) and 14 of the Settlement Agreement ("Reservation of Claims" and "Additional Reservation of Claims").

SO ORDERED this _____ day of _____, 2024

_____

The Honorable Peter G. Sheridan
United States District Judge

10

# EXHIBIT D

## CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated February 7, 2024, is made among Hagens Berman Sobol Shapiro, LLP, Berger Montague PC, and Garwin Gerstein & Fisher LLP ("Class Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

### Recitals

A.      This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Settlement Agreement (the "Settlement Agreement") dated February 7, 2024, entered into by, among others, Pfizer Inc., Pfizer Manufacturing Ireland, Warner-Lambert Co., and Warner-Lambert Co. LLC (collectively or individually, "Pfizer" or "Defendant") and Class Counsel on behalf of the Direct Purchaser Class Plaintiffs, will be paid to settle the class action captioned *In re Lipitor Antitrust Litigation,* MDL No. 2332 , No. 3:12-cv-2389 (PGS), pending in the United States District Court for the District of New Jersey (the "Court").

B.      Pursuant to the terms of the Settlement Agreement, the Defendant has agreed to pay or cause to be paid the total amount of ninety-three million dollars ($93,000,000) in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Class Action.

C.      The Settlement Amount, together with any interest accrued thereon, is to be deposited into Custodian/Escrow and used to satisfy payments to Authorized Claimants, payments for attorneys' fees and expenses, service awards, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

### Agreement

1.      Appointment of Custodian/Escrow Agent.      The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      The Custodian/Escrow Account. The Custodian/Escrow Agent shall establish and maintain one or more Custodian/Escrow accounts titled as Lipitor DPP Settlement Fund (the "Custodian/Escrow Account"). Pursuant to the Settlement Agreement, the Defendant shall cause twenty-three million two-hundred and fifty thousand dollars ($23,250,000) of the Settlement Amount to be deposited into the Custodian/Escrow Account within ten (10) calendar days after entry of the Preliminary Approval Order pursuant to Paragraph 7 of the Settlement Agreement and the remainder of the Settlement Amount ($69,750,000.00) to be deposited on or before fifteen (15) calendar days prior to the District Court's fairness hearing regarding final approval of the Settlement.   Custodian/Escrow Agent shall receive the Settlement Amount into the

Custodian/Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement and in orders of the Court approving the disbursement of the Settlement Fund.

3.      Investment of Settlement Fund. At the written direction of Class Counsel, Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Custodian/Escrow Agent.

4.      Custodian/Escrow Funds Subject to Jurisdiction of the Court. The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5.      Tax Treatment & Report: The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel. Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. Class Counsel shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.      Tax Payments of Settlement Fund. All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Custodian/Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by Class Counsel. Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. The Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Custodian/Escrow Agent at Class Counsel's direction. The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by the Defendant by reason of the income earned on the Settlement Fund, and Custodian/Escrow Agent, as directed by Class Counsel, shall establish such reserves as are

2

necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Custodian/Escrow Agent with a properly completed Form W-9.

      7.    Disbursement Instructions

      (a)    Class Counsel may, without further order of the Court or authorization by the Defendant's Counsel, instruct Custodian/Escrow Agent to disburse the funds necessary to pay Notice and Administration Expenses not to exceed, in the aggregate, $75,000.

      (b)    Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written direction of David F. Sorensen, Class Counsel.

      (c)    In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs. If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent. Class Counsel will notify Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

      (d)    The Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with

3

the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

      8.    Termination of Settlement. If the Settlement Agreement terminates in accordance with its terms, Class Counsel shall notify Custodian/Escrow Agent of the termination of the Settlement Agreement. Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Class Counsel and the Defendant, shall be returned to the Defendant in accordance with instruction from the Class Counsel.

      9.    Fees. The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit A. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund. The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel. If Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

      10.    Duties, Liabilities and Rights of Custodian/Escrow Agent.    This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

      (a)    Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

      (b)    Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon approval by Class Counsel or (ii) pursuant to an order of the Court.

4

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement.   The Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act  or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

11.     Non-Assignability by Custodian/Escrow Agent.     Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendant.

12.     Resignation of Custodian/Escrow Agent.   Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein. On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other

5

appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

13. Notices. Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:      Thomas M. Sobol
                          Hagens Berman Sobol Shapiro LLP
                          1 Faneuil Hall Square, 5th Floor
                          Boston, MA 02109
                          tom@hbsslaw.com

                          David F. Sorensen
                          Berger Montague PC
                          1818 Market Street, Suite 3600
                          Philadelphia, PA 19103
                          dsorensen@bm.net

                          Bruce E. Gerstein
                          Garwin Gerstein & Fisher LLP
                          88 Pine Street, 10th Floor
                          New York, NY 10005
                          bgerstein@garwingerstein.com

If to Custodian/Escrow     THE HUNTINGTON NATIONAL BANK
Agent:                     Robyn Griffin
                           Senior Managing Director
                           National Settlement Team
                           The Huntington National Bank
                           One Rockefeller Plaza 10th Fl
                           New York, NY 10020
                           Office: 212-581-5051
                           Mobile: 646-265-3817
                           E-mail: robyn.griffin@huntington.com

                           Susan Brizendine, Trust Officer
                           Huntington National Bank
                           7 Easton Oval – EA5W63
                           Columbus, Ohio 43219
                           Telephone: (614) 331-9804
                           E-mail: susan.brizendine@huntington.com

14. Patriot Act Warranties. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal

6

entity that opens an account (the "Identification Information"). The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15.     Entire Agreement. This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16.     Governing Law. This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects. The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.     Termination of Custodian/Escrow Account. The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18.     Miscellaneous Provisions.

(a)     Counterparts. This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

(b)     Further Cooperation. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give Custodian/Escrow Agent confirmation and assurance of Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to Custodian/Escrow Agent.

(c)     Electronic Signatures. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and

7

shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

(d)     Non-Waiver.     The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: _____
      Liz Lambert or Robyn Griffin, Senior Managing Director

Class Counsel

By: _____
David F. Sorensen
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net

By: _____
Bruce E. Gerstein
GARWIN GERSTEIN & FISHER, LLP
Wall Street Plaza
88 Pine Street, 10th Floor
New York, NY 10005
bgerstein@garwingerstein.com

By: _____
Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com

8

## Exhibit A

### Fees of Custodian/Escrow Agent

**Acceptance Fee:**                                             **Waived**

The Acceptance Fee includes the review of the Custodian/Escrow
Agreement, acceptance of the role as Custodian/Escrow Agent,
establishment of Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                  **Waived**

The Annual Administration Fee includes the performance of
administrative duties associated with the Custodian/Escrow
Account including daily account management, generation of
account statements to appropriate parties, and disbursement of
funds in accordance with the Custodian/Escrow Agreement.
Administration Fees are payable annually in advance without
proration for partial years.

**Out of Pocket Expenses:**                                     **Waived**

Out of pocket expenses include postage, courier, overnight mail,
wire transfer, and travel fees.

9