**COHN LIFLAND PEARLMAN**
  **HERRMANN & KNOPF LLP**
Peter S. Pearlman
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
(201) 845-9600 (telephone)
(201) 845-9423 (fax)
psp@njlawfirm.com

*(Additional counsel on signature page)*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: LIPITOR ANTITRUST LITIGATION**<br><br>This document relates to:<br><br>Direct Purchaser Class Actions | MDL No. 2332<br><br><br>Master Docket No. 3:12-cv-2389 (PGS/JBD) |

**DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF LEAD CLASS COUNSEL, PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS AND PROPOSED SCHEDULE FOR A FAIRNESS HEARING**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION .................................................................................1

II.     BACKGROUND .................................................................................3

    A.     Plaintiffs' Claims and Procedural Background.....................................3

    B.     Settlement Negotiations and the Proposed Settlement .......................6

III.    ARGUMENT......................................................................................7

    A.     The Requirements for Certification of a Settlement Class Have
         Been Met ............................................................................................7

         1.     The Requirements of Rule 23(a) Are Satisfied.........................11

         2.     The Requirements of Rule 23(b)(3) Are Satisfied....................19

         3.     Lead Class Counsel Meet the Requirements of Rule
              23(g) ........................................................................................27

    B.     The Proposed Settlement Meets the Standard for Preliminary
         Approval...........................................................................................29

         1.     Rule 23(e)(2)(A): The Class Representatives and Lead
              Class Counsel Have Adequately Represented the Class .........31

         2.     Rule 23(e)(2)(B): The Proposed Settlements Were
              Reached After Arm's Length Negotiations .............................32

         3.     Rule 23(e)(2)(C): The Relief Provided for the Class is
              Adequate .................................................................................33

         4.     Rule 23(e)(2)(D): The Proposed Plan of Allocation
              Treats All Class Members Equitably Relative to Each
              Other.......................................................................................41

    C.     The Proposed Form and Manner of Notice Are Appropriate ............42

         1.     Form of Notice ........................................................................42

          2.     Manner of Notice ....................................................................44

i

D.    R2/G Should Be Appointed Notice and Claims Administrator ..........45

E.    The Huntington National Bank Should Be Appointed Escrow
Agent ......................................................................................46

F.    The Plan of Allocation Should Be Preliminarily Approved ..............46

G.    The Proposed Schedule is Fair and Should Be Approved .................46

IV.    CONCLUSION.............................................................................48

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Am. Sales Co. v. SmithKline Beecham Corp.*,
  274 F.R.D. 127 (E.D. Pa. 2010) ....................................................................9, 22

*Am. Sales Co., LLC v. Pfizer, Inc.*,
  2017 WL 3669604 (E.D. Va. July 28, 2017) .................................................9, 17

*Am. Sales Co., LLC v. Pfizer, Inc.*,
  2017 WL 3669097 (E.D. Va. Aug. 24, 2017) .......................................................9

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................... 19, 27

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
  568 U.S. 455 (2013) ...........................................................................................20

*Atis v. Freedom Mortg. Corp.*,
  2018 WL 5801544 (D.N.J. Nov. 6, 2018)............................................................32

*Beneli v. BCA Fin. Servs., Inc.*,
  324 F.R.D. 89 (D.N.J. 2018) ...............................................................................38

*Bing Li v. Aeterna Zentaris, Inc.*,
  324 F.R.D. 331 (D.N.J. 2018) ....................................................................... 11, 16

*Block v. RBS Citizens, Nat'l Ass'n, Inc.*,
  2016 WL 8201853 (D.N.J. Dec. 12, 2016) ...................................... 32, 37, 44, 45

*Bullock v. Adm'r of Kircher's Est.*,
  84 F.R.D. 1 (D.N.J. 1979) ...................................................................................33

*Caddick v. Tasty Baking Co.*,
  2021 WL 1374607 (E.D. Pa. Apr. 12, 2021)................................................. 31, 34

*Castro v. Sanofi Pasteur Inc.*,
  134 F. Supp. 3d 820 (D.N.J. 2015).............................................................. passim

*Chimenti v. Wetzel*,
   2018 WL 2388665 (E.D. Pa. May 24, 2018) ......................................................17

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .........................................................................................25

*Davis v. Kraft Foods N. Am., Inc.*,
   2007 WL 9807443 (E.D. Pa. Aug. 10, 2007).....................................................33

*Dong v. Johnson*,
   2022 WL 2818481 (D.N.J. Jan. 10, 2022) ..........................................................30

*Easterday v. USPack Logistics LLC*,
   2023 WL 4398491 (D.N.J. July 6, 2023) ................................................ 29, 30, 32

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) .............................................................................29

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ....................................................35

*FTC v. Actavis, Inc.*,
   570 U.S. 136 (2013) ...........................................................................................4

*Gordon v. Lewistown Hosp.*,
   423 F.3d 184 (3d Cir. 2005) .............................................................................21

*Gordon v. Vanda Pharms. Inc.*,
   2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022)....................................................41

*Hall v. Accolade, Inc.*,
   2019 WL 3996621 (E.D. Pa. Aug. 23, 2019).....................................................31

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) .........................................................................................20

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) .........................................................................................23

*Hawaii v. Standard Oil Co.*,
   405 U.S. 251 (1972) .........................................................................................10

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ...................................................21

*In re AndroGel Antitrust Litig.*,
2018 WL 3424612 (N.D. Ga. July 16, 2018) .......................14

*In re Baby Prod. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ...................................................32

*In re Bulk (Extruded) Graphite Prod. Antitrust Litig.*,
2006 WL 891362 (D.N.J. Apr. 4, 2006) ..................................8

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 297 (E.D. Mich. 2001) ........................................26

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ........................................34

*In re Cathode Ray Tube (CRT) Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015) ...........................................10

*In re Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) ..............................................9

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
333 F.R.D. 364 (E.D. Pa. 2019) ..................................... 27, 32

*In re Domestic Drywall Antitrust Litig.*,
322 F.R.D. 188 (E.D. Pa. 2017) ...............................................9

*In re Elec. Carbon Prod. Antitrust Litig.*,
447 F. Supp. 2d 389 (D.N.J. 2006) ........................................36

*In re Flonase Antitrust Litig.*,
951 F. Supp. 2d 739 (E.D. Pa. 2013) .....................................38

*In re Generic Pharms. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) .....................................21

*In re Generic Pharms. Pricing Antitrust Litig.*,
2023 WL 2466622 (E.D. Pa. Mar. 9, 2023) ............................8

*In re Glumetza Antitrust Litig.*,
336 F.R.D. 468 (N.D. Cal. 2020) .................................................................9, 24

*In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................................29

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008) ................................................................22

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ................................................................19

*In re K-Dur Antitrust Litig.*,
2008 WL 2699390 (D.N.J. Apr. 14, 2008)................................................ passim

*In re K-Dur Antitrust Litig.*,
686 F.3d 197 (3d Cir. 2012) ................................................................ passim

*In re K-Dur Antitrust Litig.*,
2013 WL 5180857 (3d Cir. Sept. 9, 2013)................................................8

*In re K-Dur Antitrust Litig.*,
2017 WL 3124429 (D.N.J. May 23, 2017) ........................................... 40, 45, 48

*In re Lamictal Direct Purchaser Antitrust Litig.*,
957 F.3d 184 (3d Cir. 2020) ................................................................25

*In re Lidoderm Antitrust Litig.*,
2017 WL 679367 (N.D. Cal. Feb. 21, 2017)................................................ passim

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3d Cir. 2002) ................................................................22

*In re Lipitor Antitrust Litig.*,
2013 WL 4780496 (D.N.J. Sept. 5, 2013)................................................4

*In re Lipitor Antitrust Litig.*,
868 F.3d 231 (3d Cir. 2017) ................................................................4

*In re Loestrin 24 Fe Antitrust Litig.*,
2019 WL 3214257 (D.R.I. July 2, 2019)................................................ passim

*In re Mercedes-Benz Emissions Litig.,*
2021 WL 7833193 (D.N.J. Aug. 2, 2021) ............................................................36

*In re Modafinil Antitrust Litig.,*
837 F.3d 238 (3d Cir. 2016) .............................................. 11, 12, 22, 24

*In re Mushroom Direct Purchaser Antitrust Litig.,*
319 F.R.D. 158 (E.D. Pa. 2016) ......................................................26

*In re Mushroom Direct Purchaser Antitrust Litig.,*
2017 WL 696983 (E.D. Pa. Feb. 22, 2017) .........................................26

*In re Namenda Direct Purchaser Antitrust Litig.,*
331 F. Supp. 3d 152 (S.D.N.Y 2018) .......................................... 15, 24

*In re Namenda Direct Purchaser Antitrust Litig.,*
462 F. Supp. 3d 307 (S.D.N.Y. 2020) ...............................................38

*In re Neurontin Antitrust Litig.,*
2011 WL 286118 (D.N.J. Jan. 25, 2011) .................................... passim

*In re Nexium (Esomeprazole) Antitrust Litig.,*
296 F.R.D. 47 (D. Mass. 2013) ................................................ 9, 13, 26

*In re NFL Players Concussion Inj. Litig.,*
775 F.3d 570 (3d Cir. 2014) .................................................................9

*In re NFL Players Concussion Injury Litig.,*
821 F.3d 410 (3d Cir. 2016) ...............................................................11

*In re Niaspan Antitrust Litig.,*
397 F. Supp. 3d 668 (E.D. Pa. 2019) ......................................... passim

*In re Nifedipine Antitrust Litig.,*
246 F.R.D. 365 (D.D.C. 2007) .........................................................26

*In re Ocean Power Techs., Inc.,*
2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................33

*In re Opana ER Antitrust Litig.,*
2021 WL 3627733 (N.D. Ill. June 4, 2021) ................................ 13, 24

*In re Packaged Ice Antitrust Litig.*,
  2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ....................................................38

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ...................................................................................9

*In re Ranbaxy Generic Application Antitrust Litig.*,
  338 F.R.D. 294 (D. Mass. 2021) .............................................................................9

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 WL 8181042 (D.N.J. Nov. 9, 2005) ................................................................8

*In re Remeron Direct Purchaser Antitrust Litig.*,
  2005 WL 3008808 (D.N.J. Nov. 9, 2005) ...............................................................38

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  2017 WL 4621777 (D. Mass. Oct. 16, 2017) ...................................... 9, 15, 24, 25

*In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*,
  421 F. Supp. 3d 12 (E.D. Pa. 2019) ................................................... 8, 15, 16, 17

*In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*,
  967 F.3d 264 (3d Cir. 2020) ........................................................................ passim

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2021 WL 358611 (D.N.J. Feb. 1, 2021) .................................................................39

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
  2008 WL 1946848 (E.D. Pa. May 2, 2008) ............................................. 9, 17, 18

*In re Wellbutrin XL Antitrust Litig.*,
  2011 WL 3563385 (E.D. Pa. Aug. 11, 2011) .................................... 16, 24, 25, 26

*Kanefsky v. Honeywell Int'l Inc.*,
  2022 WL 1320827 (D.N.J. May 3, 2022) ...............................................................32

*King Drug Co. of Florence v. Cephalon, Inc.*,
  309 F.R.D. 195 (E.D. Pa. 2015) ............................................................................24

*Kress v. Fulton Bank, N.A.*,
  2022 WL 2357296 (D.N.J. June 30, 2022) ............................................................32

*McRobie v. Credit Prot. Ass'n*,
 2020 WL 6822970 (E.D. Pa. Nov. 20, 2020) .......................................................40

*Meijer, Inc. v. Warner Chilcott Holdings Co. III*,
 246 F.R.D. 293 (D.D.C. 2007) ...........................................................................24

*Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
 2014 WL 631031 (E.D. Pa. Feb. 18, 2014) ..........................................................8

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
 247 F.R.D. 253 (D. Mass. 2008) .........................................................................16

*New Directions Treatment Servs. v. City of Reading*,
 490 F.3d 293 (3d Cir. 2007) ..............................................................................18

*Reiter v. Sonotone Corp.*,
 442 U.S. 330 (1979) ...........................................................................................10

*Reyes v. Netdeposit, LLC*,
 802 F.3d 469 (3d Cir. 2015) ...................................................................... 15, 20

*Robidoux v. Celani*,
 987 F.2d 931 (2d Cir. 1993) ..............................................................................11

*Rodriguez v. Nat'l City Bank*,
 726 F.3d 372 (3d Cir. 2013) ..............................................................................27

*Sheinberg v. Sorensen*,
 606 F.3d 130 (3d Cir 2010) ................................................................................28

*Sheinberg v. Sorensen*,
 2016 WL 3381242 (D.N.J. June 14, 2016) .........................................................33

*Smith v. Pro. Billing & Mgmt. Servs., Inc.*,
 2007 WL 4191749 (D.N.J. Nov. 21, 2007) ......................................................9, 45

*State of W. Va. v. Chas. Pfizer & Co.*,
 314 F. Supp. 710 (S.D.N.Y. 1970) ......................................................................36

*Sullivan v. D.B. Invs., Inc.*,
 667 F.3d 273 (3d Cir. 2011) ................................................................................9

*Sullivan v. DB Invs., Inc.*,
   2008 WL 8747721 (D.N.J. May 22, 2008) ............................................................8

*Teva Pharms. USA, Inc. v. Abbott Lab'ys*,
   252 F.R.D. 213 (D. Del. 2008) .................................................................. passim

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ..............................................................................20

*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*,
   2023 WL 2314911 (E.D. Pa. Feb. 28, 2023).....................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..............................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .......................................................................32

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ..............................................................................22

Statutes

28 U.S.C. § 1715 .................................................................................... 47, 48

Rules

Fed. R. Civ. P. 23 ................................................................................ passim

Other Authorities

3 Newberg on Class Actions (4th ed. 2011) ...........................................................38

4 Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) ......38

4 Newberg on Class Actions (5th ed.) .................................................................30

7AA Charles Alan Wright et al., Federal Practice and Procedure (3d ed. 2005)....26

MANUAL FOR COMPLEX LITIGATION (4th ed. 2005) ........................................ 30, 42

*Newberg on Class Actions* (4th ed. 2002)..............................................................16

Direct Purchaser Class Plaintiffs Drogueria Betances, LLC ("Betances"), Professional Drug Company, Inc. ("PDC"), Rochester Drug Co-Operative, Inc. ("RDC"), Stephen L. LaFrance Holdings, Inc. ("LaFrance"), and Value Drug Company ("VDC") (collectively, "Named Plaintiffs" or "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Certification of a Settlement Class, Appointment of Lead Class Counsel, Preliminary Approval of Proposed Settlement, Approval of the Form and Manner of Notice to the Class and Proposed Schedule for a Fairness Hearing.

## I.  INTRODUCTION

Plaintiffs and Defendants Pfizer Manufacturing Ireland, Warner-Lambert Co., and Warner-Lambert Co. LLC (collectively "Pfizer") have reached a proposed settlement pursuant to which Pfizer will pay $93,000,000.00 (ninety-three million dollars) in cash into an escrow fund for the benefit of all members of the Class (defined below) in exchange for dismissal of this litigation between Plaintiffs and Pfizer with prejudice and certain releases (the "Settlement"). All the terms of the Settlement are set forth in the Settlement Agreement dated February 7, 2024 ("Settlement Agreement") (attached as Ex. 1 to the Pearlman Decl.).

Preliminary approval of the proposed Settlement is appropriate. Plaintiffs and Pfizer entered into the Settlement after more than twelve years of litigation and extensive mediation. Counsel for both sides are experienced in class actions and

pharmaceutical antitrust litigation and are well-positioned to assess the risks and merits of this case. The Settlement assures that all Class members will receive a cash settlement payment now. The Settlement also assures that the litigation against Pfizer (but not Ranbaxy[1]) will end, avoiding continued litigation and potential appeals.

Accordingly, Plaintiffs respectfully request that the Court enter the accompanying proposed order preliminarily approving the Settlement which provides for the following:

1. Preliminary approval of the proposed Settlement Agreement and the documents necessary to effectuate the Settlement, including a proposed Notice Plan and Form of Notice to the Class (Ex. B to the Settlement Agreement) and Direct Purchaser Class Plaintiffs' [Proposed] Plan of Allocation for the Direct Purchaser Class ("Plan of Allocation") (attached as Ex. 2 to the Pearlman Decl.) of the settlement funds as described in the proposed form of Notice;

2. Certification of the Class for purposes of settlement;

3. Appointment of David F. Sorensen and his firm Berger Montague PC, Bruce E. Gerstein and his firm Garwin Gerstein & Fisher LLP, and Thomas M. Sobol and his firm Hagens Berman Sobol Shapiro LLP as Lead Class Counsel for purposes of the Settlement pursuant to Federal Rule of Civil Procedure 23(c)(1)(B) and 23(g);

4. Appointment of RG/2 Claims Administration LLC ("RG/2") as Notice and Claims Administrator;

5. Appointment of The Huntington National Bank as Escrow Agent for the settlement funds (*see* Ex. D to the Settlement Agreement (Escrow

---

[1] "Ranbaxy" means, collectively, Ranbaxy Inc., Ranbaxy Laboratories Limited, and Ranbaxy Pharmaceuticals, Inc. Ranbaxy, together with Pfizer are collectively referred to as "Defendants."  The proposed Settlement is with Pfizer only.

Agreement)); and

6.     A settlement schedule, including the scheduling of a Fairness Hearing to consider: (a) Plaintiffs' request for final approval of the Settlement and entry of a proposed order and final judgment (in the form of the proposed order filed herewith); (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, payment of administrative costs, and service awards for the Named Plaintiffs; and (c) Plaintiffs' request for dismissal of this action against Pfizer with prejudice.

## II.     BACKGROUND

### A.     Plaintiffs' Claims and Procedural Background

Beginning on November 9, 2011, Plaintiffs filed the first antitrust lawsuits on behalf of all direct purchasers challenging Pfizer and Ranbaxy's conduct regarding the prescription drug, Lipitor.[2] All direct purchaser class actions were later consolidated and the Court appointed David F. Sorensen and his firm Berger Montague PC, Bruce E. Gerstein and his firm Garwin Gerstein & Fisher LLP, and Thomas M. Sobol and his firm Hagens Berman Sobol Shapiro LLP as Interim Lead Class Counsel for the proposed class of direct purchasers.[3] Plaintiffs filed the operative Consolidated Amended Class Action Complaint on October 14, 2013.[4]

---

[2] *See Stephen L. LaFrance Holdings, Inc., et al. v. Pfizer, Inc., et al*., No. 2:11-cv-07003-LDD (E.D. Pa.); *Professional Drug Co., Inc. v. Pfizer Inc., et al*., No. 1:11-cv-12058-RWZ (D. Mass.); *Value Drug Co. v. Pfizer Inc., et al*., No. 3:11-cv-06872-PGS-DEA (D.N.J.); *Rochester Drug Co-Operative, Inc. v. Pfizer Inc., et al*., No. 2:11-cv-07697-LDD (E.D. Pa.).

[3] ECF No. 109.

[4] ECF No. 472 (hereafter, "Compl.").

Plaintiffs alleged that Pfizer and generic drug maker Ranbaxy unlawfully delayed the availability of less expensive, generic versions of the brand drug Lipitor through an unlawful "reverse payment" agreement. *See FTC v. Actavis, Inc*., 570 U.S. 136 (2013).

The history of this litigation is extensive. In September 2013, this Court granted Defendants' motion to dismiss Plaintiffs' claims.[5] Plaintiffs appealed to the Third Circuit, and in August 2017, the Third Circuit reversed the Court's motion to dismiss order and reinstated Plaintiffs' claims.[6] The case then proceeded to discovery. Plaintiffs served two sets of document requests on Defendants in late 2012, four sets of interrogatories (one set in 2012, two sets in 2018, and one set in 2022), and one set of requests for admissions in 2022. Plaintiffs also served numerous document subpoenas on third parties. The parties negotiated discovery and where they could not reach agreement, both Defendants and Plaintiffs filed motions to compel related to document production, privilege disputes, and interrogatory responses.[7]

In March 2020, just six days before substantial completion of fact discovery

---

[5] *In re Lipitor Antitrust Litig*., No. 3:12-CV-2389 PGS, 2013 WL 4780496, at *1 (D.N.J. Sept. 5, 2013) (granting Pfizer's motion to dismiss).

[6] *See e.g., In re: Lipitor Antitrust Litig*., 868 F.3d 231 (3d Cir. 2017) (reversing and remanding dismissal of Plaintiffs' claims).

[7] *See e.g.,* ECF Nos. 812 (Joint Letter Motion to Compel) & 858 (Order); 925 (Motion to Compel Interrogatory Responses) & 944 (Order).

and the deadline for Defendants to make their privilege election, the Court referred the case to mediation and issued a stay of discovery.[8] The parties participated in years-long mediation efforts overseen by the (Ret.) Honorable Judge Hochberg, including extensive briefing on issues of liability, causation, class certification, and damages. In June 2022, the Court permitted some discovery "limited to the issues of causation and class certification."[9]

Pursuant to the Court's order, the parties served expert reports on causation, class certification, and damages in late 2022 and early 2023. In March 2023, Defendants filed a motion for summary judgment on the issue of whether Ranbaxy would have obtained final FDA approval earlier than November 30, 2011 (the date it actually received final approval) had Pfizer not paid it to delay the entry of generic Lipitor.[10] In May 2023, Plaintiffs filed their opposition to Defendants' motion for summary judgment, and Defendants filed their reply in further support of their motion later that same month.[11] In May 2023, Plaintiffs moved for class certification.[12] Defendants filed their opposition to Plaintiffs' class certification

---

[8] ECF No. 948.

[9] ECF No. 1085.

[10] ECF No. 1183.

[11] ECF Nos. 1217 (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment), 1235 (Defendants' Reply in Support of Summary Judgment).

[12] ECF Nos. 1221, 1222, 1223.

motion in June 2023 and Plaintiffs filed their reply the same month.[13] On November 27, 2023, the Court held hearings on the pending motions for summary judgment and class certification.[14]

### B. Settlement Negotiations and the Proposed Settlement

Plaintiffs and Pfizer engaged in extensive mediation proceedings before Judge Hochberg, an experienced mediator. As part of the mediation process, both sides submitted mediation briefs on five topics: (1) the alleged unlawful reverse payment, (2) whether such a payment was the cause of the date that generic Lipitor entered the market, (3) class certification, (4) whether there are any procompetitive justifications for any agreements reached between the Defendants, and (5) whether Defendants, or either of them, possessed the requisite degree of market power. As such, the parties are well aware of each other's respective positions.

As a result of the lengthy and substantive mediation before Judge Hochberg, Plaintiffs and Pfizer reached the proposed Settlement pursuant to which Pfizer will pay $93,000,000 (ninety-three million dollars) in cash for the benefit of all Class members in exchange for dismissal of the litigation between Plaintiffs and Pfizer and certain releases by Class members. The parties executed the Settlement

---

[13] ECF Nos. 1241 (Defendants' Opposition to Plaintiffs' Motion for Class Certification); 1257 (Plaintiffs' Reply in Support of Class Certification).

[14] *See* ECF No. 1323.

Agreement on February 7, 2024.

Plaintiffs have proposed the form and manner of notice of the proposed Settlement Agreement to the Class, and the procedures by which Class members may: (a) receive their share of settlement funds; (b) seek exclusion from the Class or object to the proposed Settlement; and (c) object to Lead Class Counsel's application for attorney's fees of up to one-third of the settlement amount, reimbursement of reasonable costs and expenses incurred in prosecuting this action, and service awards for the Named Plaintiffs. Final approval of the proposed Settlement will result in the dismissal with prejudice of Plaintiffs' claims against Pfizer.

## III.   ARGUMENT

### A.   The Requirements for Certification of a Settlement Class Have Been Met

Plaintiffs and Pfizer have agreed, subject to the Court's review and approval, to the certification of the following "Class" for purposes of settlement:

> All persons or entities in the United States and its territories who purchased Lipitor or its AB-rated bioequivalent generic products directly from any of Defendants at any time during the period June 28, 2011 through May 28, 2012 (the "Class Period").

> Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates, all federal governmental entities, and all persons or entities that (i) purchased Lipitor directly from Pfizer for the first time during the Class Period after November 30, 2011, but did not purchase generic Lipitor directly from Ranbaxy during the Class Period; and (ii) all persons or entities

that purchased Lipitor directly from Pfizer after November 30, 2011 that did not also purchase generic Lipitor after November 30, 2011.

Also excluded from the Class for purposes of this Settlement Agreement are the following entities: CVS Pharmacy, Inc. (which includes Caremark), Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co. (which includes Kerr Drug), The Kroger Co. (which includes Peytons), Safeway Inc., SuperValu Inc., Meijer, Inc. and Meijer Distribution, Inc., Giant Eagle, Inc., and H-E-B L.P. ("Retailer Plaintiffs").

Settlement Agreement ¶ 1.

The Court should certify the Class for purposes of settlement. Courts have repeatedly certified similar classes of direct purchasers of pharmaceutical drugs seeking antitrust overcharges both for purposes of litigation and settlement.[15]

---

[15] *See*, *e.g.*, <u>classes certified for settlement</u>: *In re Novartis and Par Antitrust Litig.*, No. 18-cv-04361, ECF No. 635 (S.D.N.Y. Jul. 26, 2023) ("*Exforge*"); *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724, 2023 WL 2466622 (E.D. Pa. Mar. 9, 2023); *Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2014 WL 631031, at *1 (E.D. Pa. Feb. 18, 2014) ("*Doryx*"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 8181042, at *1 (D.N.J. Nov. 9, 2005). *See also In re Domestic Drywall Antitrust Litig.*, No. 2:13-md-02437, ECF No. 503 (E.D. Pa. Dec. 7, 2016); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-md-01935, ECF No. 1106 (M.D. Pa. Dec. 12, 2011); *Sullivan v. DB Invs., Inc.*, 2008 WL 8747721, at *38 (D.N.J. May 22, 2008). <u>Classes certified for litigation</u>: *In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, No. 1:20-cv-01076, ECF No. 582 (D. Del. Feb. 6, 2024); *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 78 (E.D. Pa. 2019), *aff'd*, 967 F.3d 264 (3d Cir. 2020); *In re K-Dur Antitrust Litig.*, 2008 WL 2699390, at *1 (D.N.J. Apr. 14, 2008), *aff'd*, 686 F.3d 197, 224 (3d Cir. 2012), *reinstated*, 2013 WL 5180857, at *1 (3d Cir. Sept. 9, 2013); *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 826 (D.N.J. 2015); *In re Neurontin Antitrust Litig.*, 2011 WL 286118, at *1 (D.N.J. Jan. 25, 2011); *In re Bulk (Extruded) Graphite Prod. Antitrust Litig.*, 2006 WL 891362, at *16 (D.N.J. Apr.

"Judicial review of a proposed class action settlement is a two-step process: preliminary fairness approval and a subsequent fairness hearing."[16] At the "preliminary fairness review," the Court "should make a *preliminary determination* that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."[17] It is appropriate for a "final certification decision" to be "addressed at the final hearing."[18]

---

4, 2006) (same); *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d 668, 691 (E.D. Pa. 2019); *Am. Sales Co. v. SmithKline Beecham Corp.*, 274 F.R.D. 127, 137 (E.D. Pa. 2010) ("*Flonase*"); *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 2008 WL 1946848, at *11 (E.D. Pa. May 2, 2008); *In re Ranbaxy Generic Application Antitrust Litig.*, 338 F.R.D. 294, 309 (D. Mass. 2021); *In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 484 (N.D. Cal. 2020); *In re Loestrin 24 Fe Antitrust Litig.*, 2019 WL 3214257, at *17 (D.R.I. July 2, 2019); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *22 (D. Mass. Oct. 16, 2017); *Am. Sales Co., LLC v. Pfizer, Inc.*, 2017 WL 3669604, at *17 (E.D. Va. July 28, 2017), *adopted*, 2017 WL 3669097, at *1 (E.D. Va. Aug. 24, 2017); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *15 (N.D. Cal. Feb. 21, 2017); *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 60 (D. Mass. 2013). *See also In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188 (E.D. Pa. 2017); *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200 (M.D. Pa. 2012).

[16] *Smith v. Pro. Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007).

[17] *In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, at 582 (3d Cir. 2014) (quoting Manual Complex Lit. § 21.632 (4th ed.)); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir. 2010) ("In order to approve a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met."); *Sullivan v. D.B. Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*).

[18] *Smith*, 2007 WL 4191749 at *2; *see also Nat'l Football League*, 775 F.3d at 586 (describing the district court's preliminary class certification analysis as "basic and necessarily contingent" and noting that the court reserved a "rigorous analysis"

Class certification is particularly appropriate with respect to claims asserting nationwide antitrust violations like those alleged here. In *Hawaii v. Standard Oil Co.*, the Supreme Court explained:

> Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. This system depends on strong competition for its health and vigor, and strong competition depends, in turn, on compliance with antitrust legislation. . . . Congress chose to permit all persons to sue to recover three times their actual damages every time they were injured in their business or property by an antitrust violation. By offering potential litigants the prospect of recovery of three times the amount of their damages, Congress encouraged these persons to serve as 'private attorneys general.'. . . *Rule 23 of the Federal Rules of Civil Procedure provides for class actions that may enhance the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture.*[19]

Here, the Class satisfies these of Rule 23(a) and (b)(3) meriting certification for purposes of the Settlement and appointment of Lead Class Counsel.

---

until after the fairness hearing) (quotation omitted).

[19] 405 U.S. 251, 262, 266 (1972) (emphasis added) (citation omitted). *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("Congress created the treble-damages remedy . . . precisely for the purpose of encouraging *private* challenges to antitrust violations. These private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations.") (emphasis in original); *In re Cathode Ray Tube (CRT) Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) (observing that "[c]lass actions play an important role in the private enforcement of antitrust actions").

### 1. The Requirements of Rule 23(a) Are Satisfied

### (a) Numerosity and Impracticability of Joinder

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable[.]"[20] "Impracticable does not mean impossible"—"[n]o minimum number of plaintiffs is required."[21] Generally, if "the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[22] The Class here well exceeds 40, as there are 63 members (not including Retailer Plaintiffs that have already filed individual actions and are not included in the Class definition above) geographically dispersed around the United States, thus readily satisfying Rule 23(a)(1).[23] The Class size and its geographic dispersion render joinder difficult,

---

[20] *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (citation omitted).

[21] *Id.* (citations omitted); *id.* at 250 ("At this point, we need not specify a 'floor' at which a putative class will fail to satisfy the numerosity requirement.").

[22] *Id.* (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) for the proposition that "difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable"). *See also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) (similar).

[23] ECF No. 1223 (Declaration of Jeffrey J. Leitzinger, Ph.D., dated January 10, 2023) (hereafter "Leitzinger Rpt."). Dr. Leitzinger initially identified 65 Class members (*id.* at Ex. 6) but, after additional investigation, Interim Lead Class Counsel instructed Dr. Leitzinger that 2 of the 65 should not be listed as separate Class members. Accordingly, there are 63 Class members. Reducing the Class size from 65 to 63 does not change any of Dr. Leitzinger's opinions regarding damages and Class-wide injury. ECF No. 1223-47 (4/20/23 Leitzinger Tr.) at 105:12-

inconvenient, judicially inefficient, and costly, supporting certification.[24]

Further, judicial economy favors certification because joinder of individual plaintiffs would involve additional counsel, discovery, and unnecessary delay and result in some proposed Class members receiving no compensation for Defendants' alleged misconduct.[25] Two cases involving similar Class members

---

108:15. Although the Retailer Plaintiffs were not expressly excluded by definition from the proposed class that Plaintiffs sought to certify for purposes of litigation, Dr. Leitzinger was instructed to remove from the proposed class those Retailer Plaintiffs that purchased directly. ECF No. 1223 (Leitzinger Rpt.) at n.68 ("I was instructed to exclude from the Class the following entities that have filed individual cases or which I understand intend to opt out of the Class: Caremark, CVS, H.E. Butt, Kerr Drug, Peytons, Rite Aid, SuperValu, and Walgreens. Direct purchases by these entities are not included in my overcharge calculations."). In other words, there will be 63 members of the proposed Settlement Class because the Retailer Plaintiffs that are excluded from the Settlement Class by definition were not among the 63 Class members Dr. Leitzinger previously identified.

[24] ECF No. 1223 (Leitzinger Rpt.) at Ex. 7 (showing Class members' geographic dispersion); *Niaspan*, 397 F. Supp. 3d at 678 (geographic dispersion supports certification); *K-Dur*, 2008 WL 2699390, at *3 n.4 (numerosity satisfied due to, *inter alia*, geographic dispersion); *Teva Pharms. USA, Inc. v. Abbott Lab'ys* ("*TriCor*"), 252 F.R.D. 213, at 225 n.26 (D. Del. 2008) (similar). *See generally Modafinil*, 837 F.3d at 253 (when determining whether joinder is impracticable, courts should consider, *inter alia*, judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, and the geographic dispersion of class members).

[25] *Modafinil*, 837 F.3d at 257 ("each plaintiff may need to hire his own counsel to protect his individual interests" in a joinder action); *Niaspan*, 397 F. Supp. 3d at 677 ("Judicial economy will be served by allowing this case to proceed as a class action. If this case proceeds through joinder, the Court faces the prospect of individual plaintiffs represented by dozens of different attorneys with the potential for a multitude of summary judgment briefs espousing an array of arguments and additional complications at trial."); *In re Opana ER Antitrust Litig.* ("*Opana*"),

(though smaller class sizes) are instructive here. Following denial of class certification in *Value Drug*, more than 30 former putative absent class members did not sue after class certification was denied, including 21 of the 26 former class members with the smallest claim values (lowest share of damages), and discovery issued upon the former putative absent class members who did file joinder actions resulted in numerous discovery disputes requiring court intervention.[26] In *Zetia*, half the former putative absent class members—including two who had submitted declarations saying they feared retaliation (and then were deposed by the defendants about their declarations)—did not sue, and joinder of former putative

---

2021 WL 3627733, at *5 (N.D. Ill. June 4, 2021) ("This case will be a more impractical than average to join[] additional parties, and it will be a particularly efficient use of judicial resources in this litigation to have a single class of direct purchasers represented amongst the other plaintiffs."); *Loestrin*, 2019 WL 3214257, at *10 ("the Court is further satisfied that joinder is impracticable after considering the non-exhaustive list of considerations, especially judicial economy; the class members' incentives to bring suit individually against their supplier(s); and the geographic dispersion of class members.") (citations omitted); *Nexium*, 296 F.R.D. at 53 ("judicial economy would best be served by certifying the Direct Purchaser class, primarily because all putative class members seek damages stemming from the same, identical transactions") (citations omitted).

[26] *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, 2023 WL 2314911, at *1 (E.D. Pa. Feb. 28, 2023) (proposed class included 49 members); *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, Nos. 2:21-cv-03500, ECF Nos. 905 (E.D. Pa. Apr. 14, 2023) (complaint of 19 former putative class members); 724-3 at p.409 (of 879) (listing each class member's damages allocation) (showing that 21 of the 26 former class members with claimed damages below $250,000 did not sue after certification was denied); ECF Nos. 901, 915, 918, 922, 927, 935 (discovery disputes).

absent class members likewise resulted in discovery disputes filed before the court.[27]  In *AndroGel*, over half the former putative absent class members did not join, and those that sued chose a jurisdiction different from where the class action had been pending,[28] further showing that judicial economy will be served by certification.

Not certifying the proposed settlement Class here would also likely result in even more motion practice before this Court and further delay in the completion of this litigation. Furthermore, because many Class members here have small claims relative to the cost of litigating this case,[29] absent certification of the settlement Class they will likely recover no overcharge damages from Pfizer. It is far more practicable to resolve the claims here via settlement on a classwide basis.

---

[27] *In re Zetia Antitrust Litig.*, 18-md-02836, ECF No. 1356-1 (listing class members), 1583-2 (listing plaintiffs) (E.D. Va.); *Burlington Drug Co. v. Merck & Co., Inc.*, 22-cv-00269, ECF 1 (E.D. Va. June 30, 2022) (listing plaintiffs); *Zetia*, 18-md-2836, ECFs 1358, 1360 (E.D. Va. Sept. 24, 2021) (two former class members would "likely not be able to pursue [their] claim" in a joinder action because of, *inter alia*, risk of retaliation). ECF Nos. 1627, 1653, 1657, 1663, 1665-69, 1680-81, 1686, 1693, 1708-10, 1731-32, 1734-37 (discovery disputes and related hearings).

[28] *See In re AndroGel Antitrust Litig.*, 2018 WL 3424612 (N.D. Ga. July 16, 2018) (declining to certify proposed class of 33 members); *King Drug Co. v. Abbott Laby's*, 19-cv-3565, ECF 1 (E.D. Pa. Aug. 7, 2019) (14 former absent class members sued as plaintiffs in a different jurisdiction, the Eastern District of Pennsylvania (instead of the Northern District of Georgia, where the putative class action had been pending)).

[29] *See* ECF No. 1223 (Leitzinger Rpt.) ¶¶ 57-60 & Ex. 12.

14

As such, it is unsurprising that courts have repeatedly found that similar classes with more than 40 direct purchasers of pharmaceutical drugs satisfy Rule 23(a)(1), including classes smaller than the Class here and two recent decisions in similar generic delay cases brought by similar classes in this circuit. *Suboxone*, 421 F. Supp. 3d at 47 (finding numerosity in class with 71 members), *aff'd*, 967 F.3d at 267 ("In a thorough, thoughtful, and well-reasoned opinion, the District Court certified a class of those who purchased Suboxone...We will affirm."); *Niaspan*, 397 F. Supp. 3d at 677-79 (48 class members); *Neurontin*, 2011 WL 286118, at *3.[30] The Court should do the same here.

### (b)   Commonality

Rule 23(a)(2) is met if the class representatives, here the Named Plaintiffs, share at least one question of fact or law with the Class.[31] The claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution" and have the capacity to "generate common answers apt to drive the

---

[30] *See also In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, at 221 (S.D.N.Y 2018) (62 class members); *Solodyn*, 2017 WL 4621777, at *4 (48); *Lidoderm*, 2017 WL 679367, at *14 (53). Illustrating the significance of whether a class includes more or fewer than 40 members is *HIV Antitrust Litig.*, which, citing *Modafinil*, certified classes of 51 and 78 purchasers, while ruling a proposed class with fewer than 40 did not satisfy 23(a)(1). Slip op., *In re HIV Antitrust Litig.*, No. 19-cv-02573, ECF No. 1452-7 (N.D. Cal. Sept. 27, 2022), at 82-87.

[31] *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015); *Castro*, 134 F. Supp. 3d at 844.

resolution of the litigation."[32] "In the antitrust context 'courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite.'"[33]

Here, as in dozens of previous cases alleging impaired generic entry,[34] commonality is "easily met."[35] The common issues here include, *inter alia*: whether Pfizer conspired with Ranbaxy to suppress generic competition to Lipitor; whether Ranbaxy agreed to delay its entry into the market with generic Lipitor; whether Pfizer possessed market or monopoly power over Lipitor; whether Pfizer's conduct caused the Plaintiffs and members of the Class to pay higher prices than they otherwise would have; whether Pfizer conspired with Ranbaxy to suppress generic competition to Lipitor; and whether Pfizer's conduct caused the Plaintiffs and members of the Class to pay higher prices than they otherwise would have.

---

[32] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).

[33] *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting *Newberg on Class Actions* § 3.10 (4th ed. 2002)).

[34] *E.g.*, *Suboxone*, 421 F. Supp. 3d at 64-65 (commonality met); *Niaspan*, 397 F. Supp. 3d at 679 (same); *In re Wellbutrin XL Antitrust Litig.*, 2011 WL 3563385, at *4 (E.D. Pa. Aug. 11, 2011) (same); *K-Dur*, 2008 WL 2699390, at *4-5 (same). *See also supra* note 5 (citing cases).

[35] *Bing Li*, 324 F.R.D. at 339; *Neurontin*, 2011 WL 286118, at *3 ("Because only one issue must be in common, 'the burden for meeting this requirement is low' … and is routinely found to be satisfied in antitrust cases alleging monopolization.") (citations omitted).

### (c)    Typicality

Rule 23(a)(3) requires that the Plaintiffs' claims are typical of the Class's claims. The Third Circuit has a "low threshold" for satisfying typicality.[36] "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."[37] As in prior similar cases, typicality is met here because Plaintiffs assert that Defendants' scheme impaired generic competition market-wide, and the overcharges Plaintiffs seek for themselves and the Class are based on the same factual allegations and legal theories.[38]

### (d)    Adequacy of Representation

Rule 23(a)(4) requires that "(a) the plaintiff's attorney must be qualified,

---

[36] *E.g.*, *Niaspan*, 397 F. Supp. 3d at 680; *Chimenti v. Wetzel*, 2018 WL 2388665, at *6 (E.D. Pa. May 24, 2018).

[37] *Chimenti*, 2018 WL 2388665, at *6 (citation omitted). *See also Castro*, 134 F. Supp. 3d at 844 (claims are typical if they "'arise from the same alleged wrongful conduct' and are based upon 'the same general legal theories'") (citation omitted); *Niaspan*, 397 F. Supp. 3d at 680 ("The Third Circuit has a 'low threshold' for satisfying typicality.") (citation omitted).

[38] *See Suboxone*, 421 F. Supp. 3d at 49 (typicality generally satisfied where defendants engaged in a common scheme relative to all class members); *Loestrin*, 2019 WL 3214257, at *11 (typicality satisfied because "members' claims plainly stem from a unitary course of conduct" in delayed generic entry antitrust case); *Celebrex*, 2017 WL 3669604, at *11; *Neurontin*, 2011 WL 286118, at *4; *K-Dur*, 2008 WL 2699390, at *6; *TriCor*, 252 F.R.D. at 226; *Wellbutrin SR*, 2008 WL 1946848, at *3.

experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."[39] Here, both criteria are met. Proposed Lead Class Counsel are well-qualified, as the Court recognized in appointing them Interim Lead Class Counsel. *See* ECF No. 109, §D. Since then, as the Court is aware, Interim Lead Class Counsel worked vigorously and diligently on behalf of the Class. The Named Plaintiffs—Drogueria Betances, LLC, Professional Drug Company, Inc., Rochester Drug Co-Operative, Inc., Stephen L. LaFrance Holdings, Inc., and Value Drug Company—are also adequate, as they likewise litigated this case vigorously on behalf of the Class, including through an appeal to the Third Circuit. Courts have repeatedly found these same Named Plaintiffs adequate class representatives.[40]

Plaintiffs' interests also align with, and are not in conflict with, the Class. Plaintiffs, on their own behalf and on behalf of all Class members, seek to recover overcharges caused by Defendants' alleged unlawful conduct. Their interests are congruent with the interests of other Class members. As the Third Circuit held in

---

[39] *Suboxone*, 967 F.3d at 272 (the adequacy analysis "serves to uncover conflicts of interest between named parties and the class they seek to represent") (rejecting defendant's challenge to class representatives' adequacy); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (similar).

[40] *E.g.*, *Niaspan*, 397 F. Supp. 3d at 680-81 (RDC, VDC and PDC. adequate); *Wellbutrin SR*, 2008 WL 1946848, at *3-4 (LaFrance adequate); *Lidoderm*, 2017 WL 679367, at *2, n.5 (RDC and Betances adequate).

*K-Dur* (and as is true here), "all of the class members have the same financial incentive for purposes of the litigation - *i.e.*, proving that they were overcharged and recovering damages based on that overcharge."[41] "Only 'fundamental' conflicts 'will defeat the adequacy requirement.'"[42] There are no conflicts here, much less "fundamental" conflicts defeating certification.

### 2.    The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3), which is met here, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### (a)    Predominance

Predominance is "readily met" in antitrust cases like this one.[43] Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [its] claim [is] susceptible to classwide proof.' What the rule does

---

[41] *K-Dur*, 686 F.3d at 223.

[42] *Suboxone*, 967 F.3d at 272 (citation omitted).

[43] *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). *See also Castro*, 134 F. Supp. 3d at 845 ("Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members.") (citation omitted); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 108 (D.N.J. 2012) ("Given that antitrust class action suits are particularly likely to contain common questions of fact and law, it is not surprising that these types of class actions are also generally found to meet the predominance requirement").

require is that common questions '*predominate* over any questions affecting only individual [class] members.'"[44] Rule 23(b)(3) requires only that "*questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.*"[45] "[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'"[46] Thus, Rule 23(b)(3) is satisfied when common issues predominate, even if there are some individualized questions.[47]

Here, the evidence at trial will consist mostly or exclusively of evidence common to the Class as a whole, including testimony and documents from

---

[44] *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 469 (2013) (citing Fed. R. Civ. P. 23(b)(3)) (alterations in original).

[45] *Id.* at 459.

[46] *Id.* at 460 (quotation omitted).

[47] *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) (even if there are "individualized questions of reliance in the case, there is no reason to think that these questions will overwhelm common ones and render class certification inappropriate") (citation omitted); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'") (citation omitted); *Reyes*, 802 F.3d at 489 ("Rule 23 does not require . . . the elimination of all individual circumstances."); *TriCor*, 252 F.R.D. at 227 ("[T]he existence of an individual inquiry does not preclude class certification, especially where all members face the necessity of proving the same fraudulent scheme.").

Defendants' employees and files and expert testimony based on that common evidence concerning the above-listed common questions, so Rule 23(b)(3) is met.

>    *(a)    Common Issues Predominate as to Violation of the Antitrust Laws*

Plaintiffs allege that Defendants violated Sections 1 and 2 of the Sherman Act.[48] The elements of a Section 1 claim are "(1) concerted actions; '(2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that [plaintiffs were] injured as a proximate result of the concerted action.'"[49] The elements of a Section 2 conspiracy to monopolize claim are "(1) an agreement to monopolize; (2) an overt act in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) a causal connection between the conspiracy and the injury alleged."[50]

If litigating separately, each Class member would have to prove, *e.g.*, the same anticompetitive conduct of Defendants, using the same documents and witnesses. Predominance is therefore satisfied on the issue of antitrust violation

---

[48] Compl. ¶¶ 296-315.

[49] *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 438 (E.D. Pa. 2018) (quoting *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005)).

[50] *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 (3d Cir. 2010) (citations omitted).

alone.[51]

### (b)    Common Issues Predominate as to Injury

Antitrust injury, or impact, requires showing "some damage" due to the antitrust violation.[52] "[F]or certification[,] plaintiff need not prove antitrust injury actually occurred."[53] Plaintiffs must provide a plausible theory of injury that can be proven through common evidence.[54] Class certification is proper even if the class includes some uninjured members.[55]

---

[51] *See TriCor*, 252 F.R.D. at 228 ("[E]ach putative class member, had they pursued their claims individually, would have been required to prove identical facts, such as defendants' monopoly power, exclusionary scheme, effect on interstate commerce, conspiracy, and unreasonable restraint of trade. Therefore, these common issues predominate[.]"); *Flonase*, 274 F.R.D. at 135 (predominance met because plaintiffs' Section 2 claim requires proof of "actions and intent. Such proof will necessarily be classwide — GSK's actions did not vary with respect to individual direct purchasers, aside from the price charged. . . . The evidence thus should be identical for all 33 members of the Proposed Class."); *K-Dur*, 2008 WL 2699390, at *12 ("Courts routinely find that proof of a violation of the antitrust law focuses on the defendants' conduct and not on the conduct of individual class members.") (citations omitted).

[52] *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969). *See also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 325 (3d Cir. 2008); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 151 (3d Cir. 2002).

[53] *K-Dur*, 686 F.3d at 222.

[54] *See Modafinil*, 837 F.3d at 262-63 (a class should be certified "if such impact is plausible in theory [and] . . . susceptible to proof at trial through available evidence common to the class") (citation omitted) (alteration in original).

[55] *K-Dur*, 686 F.3d at 221-22 (certification appropriate even if some class members might have "zero or negative damages"); *Linerboard*, 305 F.3d at 158 (affirming certification despite "limited exceptions" of uninjured class members); *Castro*, 134 F. Supp. 3d at 847 (uninjured class members do not preclude

Plaintiffs allege, as in all prior impaired generic competition cases, injury in the form of overcharges, a classic form of antitrust injury.[56] Plaintiffs allege that the reverse payment from Pfizer to Ranbaxy unlawfully delayed the market entry of generic Lipitor (by Ranbaxy, the AG—which would have launched at the same time as Ranbaxy—and then the later generics, who could not launch until after Ranbaxy's 180-day exclusivity period), causing all or nearly all Class members to suffer overcharges.

Plaintiffs will prove classwide injury here using three forms of common evidence: (a) economic studies on the predictable and substantial market-wide effects of generic competition, showing that generic competition causes the brand to lose significant sales to the lower-priced generic and that generic prices fall even lower as additional generics enter the market; (b) Defendants' and non-party generics' documents showing they knew generic competition would cause brand Lipitor sales to be lost to cheaper generic Lipitor, and that as additional generics enter, generic Lipitor prices would fall further; and (c) the actual market experience after delayed generic competition began in November 2011, showing

---

certification).

[56] *E.g.*, *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) ("[W]hen a buyer shows that the price paid by him for materials purchased for use in his business is illegally high and also shows the amount of the overcharge, he has made out a prima facie case of injury and damage"); *K-Dur*, 686 F.3d at 221.

that the majority of the Class's brand Lipitor purchases converted to lower-priced generic Lipitor, and that generic Lipitor prices fell further as additional generics launched.[57] Significantly, *all* Class members paid lower prices for the generic than the brand, and *all* paid lower generic prices with five or six generics on the market as compared to just two generics.[58]

These are the same types of common evidence found sufficient in finding that the predominance requirement was met in numerous similar cases, including by the Third Circuit in *K-Dur*, 686 F.3d 197 and *Modafinil*, 837 F.3d 238, involving similar classes.[59] Likewise, predominance is satisfied as to class-wide impact here.

---

[57] ECF No. 1223 (Leitzinger Rpt.), at ¶¶ 37-42.

[58] *Id.* at ¶¶ 9, 37, 40 & Exs. 8, 9.

[59] *K-Dur*, 2008 WL 2699390, at *14-19 (government and academic studies, defendants' forecasts and projections, and sales data showing the effect of generic entry on pricing sufficient forms of common evidence to satisfy predominance); *King Drug Co. of Florence v. Cephalon, Inc.*, 309 F.R.D. 195, 209-12 (E.D. Pa. 2015) (similar), *Rule 23(b)(3) holding aff'd sub nom. Modafinil*, 837 F.3d at 260-66; *Niaspan*, 397 F. Supp. 3d at 685-88 (similar) (collecting cases). *See also Opana*, 2021 WL 3627733, at *5 (similar; class of brand and generic Opana purchasers); *Glumetza*, 336 F.R.D. at 476-79 (similar; brand and generic Glumetza purchasers); *Loestrin*, 2019 WL 3214257, at *13-14 (similar; brand and generic Loestrin purchasers); *Namenda*, 331 F. Supp. 3d at 215-17 (similar; brand and generic Opana purchasers); *Solodyn*, 2017 WL 4621777, at *7-8 (similar; brand and generic Solodyn purchasers); *Lidoderm*, 2017 WL 679367, at *9-10 (similar; brand and generic Solodyn purchasers); *Wellbutrin XL*, 2011 WL 3563385, at *12 (similar) *TriCor*, 252 F.R.D. at 229-30 (similar); *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 308-10 (D.D.C. 2007) ("*Ovcon*") (similar).

*(c)      Common Issues Predominate as to Damages*

Common issues also predominate with respect to damages. The Third Circuit in *Lamictal* explained that courts "apply a more lenient predominance standard for damages" and that "damages need not be susceptible of measurement across the entire class for purposes of Rule 23(b)(3)[.]"[60] More recently, in *Suboxone*, the Third Circuit reaffirmed that predominance is readily satisfied as to damages where, as here, aggregate Class damages can and have been reliably measured using Class-wide evidence.[61]

Here, Dr. Leitzinger used the same basic methodology to measure aggregate Class overcharge damages as has been approved in similar cases.[62] Dr. Leitzinger's model satisfies the requirement that evidence of damages "measure[s] only those damages attributable to [the] theory"[63] of liability and harm advanced by the direct purchasers, namely the unlawful delay and impairment of generic competition.

---

[60] *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, at 195 (3d Cir. 2020) (quotation and citations omitted).

[61] *Suboxone*, 967 F.3d at 272.

[62] ECF No. 1223 (Leitzinger Rpt.) ¶¶ 44-52. *See, e.g.*, *Niaspan*, 397 F. Supp. 3d at 689 ("Dr. Leitzinger's aggregate damages model properly captures damages only attributable to DPPs' single theory of unlawful conduct"); *Loestrin,* 2019 WL 3214257, at *16 (approving Dr. Leitzinger's methodology and finding it applicable to the class as a whole) (internal quotation omitted); *Solodyn*, 2017 WL 4621777, at *9-10 (same); *Lidoderm*, 2017 WL 679367, at *10 (same); *Wellbutrin XL*, 2011 WL 3563385, at *14-15 (same); *K-Dur*, 2008 WL 2699390, at *19 (same) (citation omitted).

[63] *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Any individualized damages determinations and allocation issues do not preclude

certification; nor do variations in pricing, rebates, and damage amounts among

Class members.[64]

### (b)   A Class Action is Superior to Other Methods of Adjudication

The "superiority" requirement of Rule 23(b)(3) ensures that a class action

will "achieve economies of time, effort, and expense, and promote . . . uniformity

---

[64] *See e.g.*, *Suboxone*, 967 F.3d at 272 ("Individualized determinations, however, are of no consequence in determining whether there are common questions concerning liability."); *K-Dur*, 686 F.3d at 221-22 (certification affirmed despite pricing variation among class members); *Niaspan*, 397 F. Supp. 3d at 688 ("[I]ndividualized rebuttal does not cause individual questions to predominate.") (citation omitted); *Neurontin*, 2011 WL 286118, at *9 n.24 ("Any arguments regarding the variable rates at which Class Members substituted generic . . . for [brand] relate to the quantum of injury, rather than the fact of injury, and therefore do not defeat predominance with respect to the impact element."); *Wellbutrin XL*, 2011 WL 3563385, at *12-14 (similar); *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 206 (E.D. Pa. 2016) (rejecting arguments "premised on the notion that variation of damages between and among class members defeats predominance. . . . The determination of the aggregate classwide damages is something that can be handled most efficiently as a class action, and the allocation of that total sum among the class members can be managed individually") (citations omitted), *recon. denied*, 2017 WL 696983 (E.D. Pa. Feb. 22, 2017); *Lidoderm*, 2017 WL 679367, at *11 (variation in direct purchasers' prices and damages amounts no bar to certification); *Tricor*, 252 F.R.D. at 231 (approving aggregate damages analysis); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 318-19 (E.D. Mich. 2001) (similar); *Nexium*, 296 F.R.D. at 57-58 (similar); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 370-71 (D.D.C. 2007) (similar); 7AA Charles Alan Wright et al., Federal Practice and Procedure § 1781, at 235 (3d ed. 2005) ("[I]t uniformly has been held that differences among the members as to the amount of damages incurred does not mean that a class action would be inappropriate.").

of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."[65] For certification of a settlement class, the Court is not required to analyze the superiority factors in great detail,[66] but, regardless, superiority is readily met here. This case concerns overwhelmingly common issues and evidence. Certification avoids congesting the courts with multiple suits, prevents inconsistent results, and allows Class members with smaller claims an opportunity for redress they might otherwise be denied. Courts in similar cases have uniformly found that a class action is the superior method of adjudication (*supra* n.15 (citing cases certifying similar classes)). Certification of the Class for settlement purposes is plainly the superior method by which Class members can obtain compensation for their injuries.

### 3.   Lead Class Counsel Meet the Requirements of Rule 23(g)

Under Rule 23(g), a court that certifies a class must appoint class counsel. Lead Class Counsel is charged with fairly and adequately representing the interests

---

[65] *Amchem*, 521 U.S. at 615 (citation omitted).

[66] *See, e.g.*, *Amchem*, 521 U.S. at 620 (holding that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial); *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013) (recognizing that "certain Rule 23 considerations, such as whether the case, if tried, would present intractable management problems, are not applicable in the settlement class context") (internal quotation marks omitted); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 374 (E.D. Pa. 2019) ("because a settlement obviates the need for trial, concerns regarding the manageability of a Rule 23(b)(3) class disappear.").

of the class. Fed. R. Civ. P. 23(g)(1)(B). In appointing Lead Class Counsel for the purposes of settlement, the Court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.[67]

The Court previously appointed David F. Sorensen and his firm Berger Montague PC, Bruce E. Gerstein and his firm Garwin Gerstein & Fisher LLP, and Thomas M. Sobol and his firm Hagens Berman Sobol Shapiro LLP as Interim Lead Class Counsel for the class of direct purchasers on August 10, 2012. *See* ECF No. 109, §D. Plaintiffs respectfully request that the Court now reaffirm these appointments.

Harnessing decades of experience in litigating pharmaceutical antitrust cases, Interim Lead Class Counsel have vigorously and efficiently pursued this litigation on behalf of the proposed Class for twelve years, including by identifying, investigating and filing this action, successfully appealing the Court's decision on the motion to dismiss, engaging in fact and expert discovery, pursuing class certification, and opposing a "causation" summary judgment motion. Interim

---

[67] *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir 2010) (citing Fed. R. Civ. P. 23(g)(1)(A)(i-iv)).

Lead Class Counsel have capably represented the Class throughout the litigation and thus should be appointed as Lead Class Counsel.

### B.   The Proposed Settlement Meets the Standard for Preliminary Approval

As the Third Circuit has recognized, "a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation."[68]

There are two steps to approval: preliminary and final approval. *See* Fed. R. Civ. P. 23(e).[69] At preliminary approval, the Court must assess whether it "will *likely be able to* approve the proposal" under the four factors enumerated by Rule 23(e)(2):

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;

---

[68] *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). *See also In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

[69] *See also Easterday v. USPack Logistics LLC*, 2023 WL 4398491, at *5 (D.N.J. July 6, 2023) ("Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing.")

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.[70]

This analysis enables the Court to determine that the "terms of the parties' Settlement Agreement appear fair, reasonable, and adequate such that notice of the proposed Settlement should be directed to the preliminarily certified class."[71]

---

[70] Fed. R. Civ. P. 23(e)(2) (emphasis added). *See also* 4 Newberg on Class Actions § 13:14 (5th ed.) ("Rule 23(e)(1) authorizes a court to grant **preliminary approval** of a proposed class action settlement—and hence send notice of it to the class—so long as the moving parties demonstrate that the court will **'likely be able to' grant final approval** to the settlement.") (citing Fed. R. Civ. P. 23(e)(1)(B)) (emphases added). Preliminary approval does not require a hearing (though Plaintiffs will make themselves available should the Court desire one). As explained in the *Manual for Complex Litigation (Fourth)*, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id.* § 21.632 at 382. Given the Court's knowledge of counsel and the litigation, supplemented by the documents and exhibits submitted herewith, this Court can and should grant Plaintiffs' motion and preliminarily approve the Settlement.

[71] *Dong v. Johnson*, 2022 WL 2818481, at *2 (D.N.J. Jan. 10, 2022). *See also Easterday*, 2023 WL 4398491, at *5 ("At the preliminary fairness evaluation stage, the court must determine whether the proposed settlement falls 'within the range of fairness, reasonableness and adequacy' required by Rule 23(e).") (citation omitted). In contrast, "Rule 23(e)(2) in turn authorizes **final approval** only upon a showing that the settlement is 'fair, reasonable, and adequate,' made after a consideration of four factors." 4 Newberg on Class Actions § 13:14 (5th ed.) (emphasis added) (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to

"Generally, preliminary approval should be granted [w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]" *Id.* (citation omitted, alterations in original).

### 1. Rule 23(e)(2)(A): The Class Representatives and Lead Class Counsel Have Adequately Represented the Class

In evaluating a proposed Settlement, this factor focuses on "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) Advisory Committee Note on 2018 Amendments.[72] As addressed above, Interim Lead Class Counsel engaged in fact and expert discovery and motion practice, including an appeal to the Third Circuit, prior to entering this Settlement. *See supra*, Section II.A. In reaching this Settlement, Interim Lead Class Counsel engaged in lengthy, hard-fought, arm's length negotiations on behalf of the Class.

---

2018 amendment).

[72] *See also Caddick v. Tasty Baking Co.*, 2021 WL 1374607, at *6 (E.D. Pa. Apr. 12, 2021) (finding adequate representation under Rule 23(e)(2)(a) where "class counsel expanded considerable time and effort on this case, engaged in extensive discovery, including reviewing and analyzing a substantial volume of documents."); *Hall v. Accolade, Inc.*, 2019 WL 3996621, at *4 (E.D. Pa. Aug. 23, 2019) (finding adequate representation under Rule 23(e)(2)(a) where class counsel logged hundreds of attorney hours on the litigation, took depositions, requested and reviewed written and electronic discovery, constructed a damages model, and interviewed class members).

*See supra*, Section II.B. This factor will likely be satisfied for final approval and thus weighs in favor of preliminarily approving of the Settlement.

### 2. Rule 23(e)(2)(B): The Proposed Settlements Were Reached After Arm's Length Negotiations

"A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"[73]

This Settlement is the result of lengthy, hard-fought, arm's length negotiations that began with mediation under the direction of Judge Hochberg in 2020 between Interim Lead Class Counsel and Pfizer's counsel, all of whom are capable attorneys with decades of experience in complex class actions and antitrust

---

[73] *Easterday*, 2023 WL 4398491, at *5 (*citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2d Cir. 2005)). *See also Atis v. Freedom Mortg. Corp.*, 2018 WL 5801544, at *2 (D.N.J. Nov. 6, 2018) ("A settlement is presumed fair when it results from arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (citations and quotations omitted); *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *4 (D.N.J. May 3, 2022) ("The law encourages and favors the settlement of civil actions in federal court, particularly in complex class actions where, as here, the settlement is the result of arm's-length negotiations between experienced counsel after meaningful discovery"); *Block v. RBS Citizens, Nat'l Ass'n, Inc*., 2016 WL 8201853, at *4 (D.N.J. Dec. 12, 2016) (preliminarily approving settlement reached "in the absence of collusion, and [which was a] product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel"); *Kress v. Fulton Bank, N.A.*, 2022 WL 2357296, at *2 (D.N.J. June 30, 2022) (granting preliminary approval of settlement where it had "key indicia of fairness" including "extensive negotiations were contentious [and] arm's-length"). Further, "when evaluating a settlement, a court should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.'" *Comcast Corp. Set-Top*, 333 F.R.D. at 378 (quoting *In re Baby Prod. Antitrust Litig*., 708 F.3d 163, 175 (3d Cir. 2013)).

matters. *See supra,* Section II. Interim Lead Class Counsel and Pfizer's counsel vigorously advocated for their respective clients and were prepared to continue with the litigation if the parties did not reach a settlement.

The proposed Settlement was reached 12 years into the litigation, after limited fact and expert discovery, with both parties submitting briefs to the mediator on issues of causation, liability, class certification, and damages, and with briefings pending before the Court on class certification and summary judgment. *See generally* Section II, *supra.* Accordingly, this factor weights in favor of preliminary approval.

### 3. Rule 23(e)(2)(C): The Relief Provided for the Class is Adequate

In approving class action settlements, courts in the Third Circuit have long deferred to the judgment of experienced counsel who conducted the arm's length settlement negotiations.[74] Here, Interim Lead Class Counsel have extensive

---

[74] *See*, *e.g.*, *Sheinberg v. Sorensen*, 2016 WL 3381242, at *9 (D.N.J. June 14, 2016) ("The opinion of experienced counsel supporting the settlement is entitled to considerable weight."); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016) ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.") (quotations and citations omitted); *Davis v. Kraft Foods N. Am., Inc.*, 2007 WL 9807443, at *1 (E.D. Pa. Aug. 10, 2007) ("Courts in this Circuit give considerable weight and deference to the views of experienced counsel as to the merits of an arms-length settlement."); *Bullock v. Adm'r of Kircher's Est.*, 84 F.R.D. 1, 10 (D.N.J. 1979) ("Plaintiff's counsel is an experienced and skillful practitioner in this area of the law. His recommendation that the settlement be approved is not to be taken lightly.").

experience litigating antitrust claims; they have demonstrated throughout this litigation that they are well-versed in this area of law and committed to vigorously prosecuting this case to achieve the best result for the class.[75] Interim Lead Class Counsel endorse this Settlement and believe that the monetary recovery ($93 million) provided for in the Settlement Agreement is a fair and reasonable result for the Class. Their experienced opinion should be given great weight.

Consideration of each of the four Fed. R. Civ. P. 23(e)(2)(C) factors relevant to determining whether the proposed settlement provides adequate relief to the Class weighs in favor of preliminary approval.

> (a)   *Rule 23(e)(2)(C)(i): The Costs, Risks, and Delay of Trial and Appeal.*

"This factor balances the 'relief that the settlement is expected to provide to class members' against 'the costs and risks involved in pursuing a litigated outcome.'"[76]

"Antitrust actions are inherently complex."[77] Here, layered on top of the complex economic issues associated with a typical antitrust case are additional regulatory and patent issues about which the jury would need to be educated. Just

---

[75] *See* Section II.A, *supra.*

[76] *Caddick*, 2021 WL 1374607, at *6 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)).

[77] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003).

as in *Cardizem*, these issues include "regulatory issues arising out of the Hatch-Waxman Act; patent law issues relevant to the Defendants' patent litigation underlying the[ir] Agreement; the intricacies of the pharmaceutical industry from a sales and marketing perspective; the scientific and production processes involved with investing and commercializing branded and generic pharmaceutical products; and the FDA regulations applicable to reviewing and approving pharmaceutical products and new manufacturing facilities and processes."[78] Resolving those claims would require "conflicting testimony by experts" and credibility assessments.[79]

Pfizer, represented by one of the largest and most capable law firms in the world, has vigorously disputed the plausibility of Plaintiffs' claims, class certification, causation, and injury. *See supra,* II.A. While Interim Lead Class Counsel are confident they will prevail on class certification and summary judgment, and present a strong case at trial, there is always a risk of no recovery for the Class at all, or that appeals would significantly delay any recovery. To succeed through trial, Plaintiffs would have to prevail as to every contested issue,

---

[78] *Id*. at 533-34.

[79] *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *20 (S.D.N.Y. Sept. 9, 2015).

whereas Pfizer would have to prevail on just a single defense to defeat Plaintiffs' claims or severely devalue them.[80]

The proposed Settlement affords Class members immediate economic relief. Accordingly, this factor weighs in favor of preliminary approval.

> (b)     Rule 23(e)(2)(C)(ii): The Effectiveness of the Proposed Method of Distributing Settlement Proceeds to the Class

This factor examines how the claims of Class members are processed to ensure the facilitation of the filing of legitimate claims in a manner that is not unduly demanding.[81] Collectively, the proposed Form and Manner of Notice (detailed below in Section III.C) and proposed Plan of Allocation ensure that Class members are provided with all relevant information concerning, *inter alia*, the terms of the proposed Settlement and the process for obtaining a portion of the Settlement proceeds, and that the Settlement proceeds are allocated to Class

---

[80] *See State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."); *In re Elec. Carbon Prod. Antitrust Litig.*, 447 F. Supp. 2d 389, 399 (D.N.J. 2006) ("It is especially in antitrust cases that the legal and factual issues involved are always numerous and uncertain in outcome.") (quotation and citation omitted).

[81] *In re Mercedes-Benz Emissions Litig.*, 2021 WL 7833193, at *8 (D.N.J. Aug. 2, 2021).

members in a manner that is fair, reasonable and adequate under the proposed Plan of Allocation (filed herewith as Ex. 2 to the Pearlman Decl.).[82]

As explained in the proposed form Notice to Class members, as set forth in the accompanying proposed Plan of Allocation, and as described in the Declaration of Jeffrey J. Leitzinger, Ph.D. Related to Proposed Allocation Plan and Net Settlement Fund Allocation, dated February 13, 2024 ("Leitzinger Allocation Decl.") (Ex. 3 to the Pearlman Decl.), the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees, any Court-approved Named Plaintiff service awards, and Court-approved costs and expenses, including settlement-related costs and expenses ("Net Settlement Fund"), will be paid to Class members (or their assignees) who submit timely and valid claims based on each Class member's *pro rata* share of weighted combined net purchases of brand and generic Lipitor tablets purchased directly from Pfizer, Ranbaxy, or Watson[83] during the relevant damages time periods during which Plaintiffs' expert, Dr. Leitzinger, calculated damages.[84]

---

[82] *See generally Block*, 2016 WL 8201853, at *4-5 (mailing of notice of settlement to class members combined with a claims website constitutes sufficient notice).

[83] "Watson" is Watson Pharmaceuticals, Inc.

[84] *See* Ex. 3 to the Pearlman Decl. (Leitzinger Allocation Decl.), at ¶ 3. As set forth above (at 7-8), each Class member must have purchased from Pfizer or Ranbaxy directly. However, each Class members' *pro rata* share of the Net

This proposed Plan of Allocation is "similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency"[85] and should be approved here as well.

In addition, the proposed Plan of Allocation is efficient and will ensure timely distribution of the Settlement funds. Using data produced in discovery, Dr.

---

Settlement Fund will be calculated based on purchases from Pfizer June 28, 2011 through May 29, 2014 and purchases from Ranbaxy or Watson from November 30, 2011 through May 28, 2012. *Id.*

[85] *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316-17 (S.D.N.Y. 2020) (collecting cases). *See also* 4 Alba Conte & Herbert Newberg, Newberg on Class Actions, § 12.35, at 350 (4th ed. 2002) (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105-06 (D.N.J. 2018) ("In particular, pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation differentiat[e] within a class based on the strength or weakness of the theories of recovery.") (citation and internal quotation marks omitted); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) ("Typically, a class recovery in antitrust or securities suits will divide the common fund on a pro rata basis among all who timely file eligible claims, thus leaving no unclaimed funds.") (quoting 3 Newberg on Class Actions, § 8:45 (4th ed. 2011)); *Solodyn*, 1:14-md-02503-DJC, ECF Nos. 1163, 1179 (D. Mass. 2018) (pro rata shares of settlement fund computed on basis of claimants' brand and generic purchases); and *Lidoderm*, 3:14-md-02521-WHO, ECF Nos. 1004-5, 1004-6, 1054 (N.D. Cal. 2018) (ordering pro rata distribution of settlement fund); *Loestrin*, No. 1:13-md-02472, ECF No. 1462 (D.R.I. Sept. 1, 2020) (same); *Flonase*, 951 F. Supp. 2d 739, 752 (E.D. Pa. 2013) (same); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516, ECF Nos. 733-1 at 16-18, 739 (D. Conn. 2017) (same); *Doryx*, No. 12-cv-3824, ECF Nos. 452-3, 665 (E.D. Pa. 2014) (same); *Tricor*, No. 05-cv-340, ECF Nos. 536-1, 543 (D. Del. 2009) (same); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *11 (D.N.J. Nov. 9, 2005) (same).

Leitzinger has already performed a preliminary computation of each Class

member's relevant purchases of brand and generic Lipitor. Ex. 3 to the Pearlman

Decl. (Leitzinger Allocation Decl.), at ¶ 6. Class members will be sent pre-

populated Claim Forms listing the amounts of their relevant purchases of brand

and generic Lipitor. *Id.* In addition, claimants will have the option to submit their

own purchase data (though they will not be required to do so, as they can simply

verify that the purchase numbers in the pre-populated Claim Forms are correct),

and any such data that is submitted will be reviewed by the claims administrator,

Dr. Leitzinger and his staff, and Lead Class Counsel before finalizing calculations

to determine each Claimant's[86] *pro rata* share of the Net Settlement Fund. *Id.* at ¶

7.

Finally, both Dr. Leitzinger—who serves as Plaintiffs' class certification

damages expert in the litigation—and Interim Lead Class Counsel endorse the

fairness of the proposed Plan of Allocation.[87] In Dr. Leitzinger's opinion, the

---

[86] "Claimant" is defined in the proposed Plan of Allocation to mean any entity that timely submits a completed claim form. A Claimant's percentage share will be zero if that Claimant timely submits a claim form but that Claimant's claim is rejected because, for example, the Claimant did not purchase brand or generic Lipitor during the relevant time period (*see* n.84, *supra*) and does not have any valid assignment covering any such direct purchases. Plan of Allocation (Ex. 2 to the Pearlman Decl.), at n.4

[87] *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *3 (D.N.J. Feb. 1, 2021) ("In determining whether a plan of allocation is fair, reasonable and adequate, courts give great weight to the opinion of qualified

proposed Plan of Allocation is fair, reasonable, and reflects the type and approximate extent of the injury alleged by Class members. Leitzinger Allocation Decl., at ¶ 8.

> (c)    *Rule 23(e)(2)(C)(iii): The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment*

Under the proposed Settlement, Class Counsel will apply for an award of attorneys' fees plus reimbursement of litigation costs and expenses (and service awards for the Named Plaintiffs). If the Court approves the proposed schedule set forth in the accompanying proposed preliminarily approval order, Interim Lead Class Counsel will brief their application for such awards sufficiently in advance (14 days) of the deadline for Class members to object to the proposed Settlement, including any award of fees, expenses or service awards, and the Court may consider any such request for fees and any objections thereto in determining whether to grant final approval of the proposed Settlement.[88] Accordingly, this factor does not weigh against preliminary approval.

---

counsel").

[88] *See McRobie v. Credit Prot. Ass'n*, 2020 WL 6822970 at *5 (E.D. Pa. Nov. 20, 2020) (deferring a finding as to this factor because counsel's fee request was forthcoming); *In re K-Dur Antitrust Litig.*, 2017 WL 3124429, at *2 (D.N.J. May 23, 2017) (preliminarily approving settlement setting schedule for application for award of attorney's fees).

> (d)     *Rule 23(e)(2)(C)(iv): Any Agreements Made in Connection With the Proposed Settlement*

By its terms, the proposed Settlement Agreement represents the full agreement of the parties with one caveat: as the Settlement Agreement makes clear, Pfizer and Plaintiffs agreed that Pfizer may, in its sole discretion, terminate the Settlement in the event that Class members representing in the aggregate more than a certain percentage of total brand and generic Lipitor purchases opt out of the Class following preliminary approval of the Settlement. Settlement Agreement ¶ 17. The details are set forth in a confidential side letter between Plaintiffs and Pfizer, which can be filed under seal with the Court at the Court's request.[89]

### 4.     Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats All Class Members Equitably Relative to Each Other

The final Rule 23(e)(2) factor requires the Court to assess whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P.

---

[89] *See, e.g.*, *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (allowing parties to file under seal for *in camera* review a supplemental agreement allowing termination of the settlement if a certain percentage of class members exclude themselves because "there is sufficient reason to keep the document confidential–for instance, to prevent objectors from attempting to manipulate responses to undermine the settlement") (holding that "[t]he existence of such an agreement does not preclude preliminary approval" and granting preliminary approval) (internal citation omitted). In addition, if the Settlement is not approved, including because the Court does not certify a class for purposes of settlement, for any reason other than because the Settlement is not fair, reasonable or adequate, Pfizer has agreed to offer Class members at least their *pro rata* shares.  *See* Settlement Agreement ¶ 16.

23(e)(2)(D). As set forth above at § III.B.3(b), the proposed Plan of Allocation (Ex. 2 to the Pearlman Decl.), which is similar to plans of allocation that have been accepted repeatedly by other courts, treats Class members equitably by distributing Settlement proceeds on a *pro rata* basis. Accordingly, this factor weighs in favor of preliminary approval.

### C.    The Proposed Form and Manner of Notice Are Appropriate

#### 1.    Form of Notice

Under Rule 23(e), Class members are entitled to reasonable notice of a proposed settlement before it is finally approved by the Court, and to notice of the final fairness hearing.[90] For 23(b)(3) classes, the Court must "direct to class members the best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). There are two components of notice: (1) the form of the notice; and (2) the manner in which notice is sent to Class members.

The proposed form of Notice (Ex. B to the Settlement Agreement) is based on and substantially similar to notices approved by courts in similar cases.[91]

---

[90] *See* MANUAL FOR COMPLEX LITIGATION, §§ 21.312, 21.633 (4th ed. 2005) ("MANUAL").

[91] *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724, ECF Nos. 2093, at ¶¶ 15-18 (E.D.P.A. May 11, 2022) (approving form and manner of notice); *K-Dur*, No. 01-cv-1652 (SRC)(CLW), ECF No. 1044-5, at Ex. B (D.N.J.) (notice); *id.* at ECF No. 1045, ¶ 5 (approving form and manner of notice);

The proposed Notice (Ex. B to the Settlement Agreement) is designed to alert Class members to the proposed Settlement by using a bold headline, and the plain language text provides important information regarding the terms of the proposed Settlement, including the nature of the action; the definition of the Class; the identity of the counter party, here Pfizer; the significant terms of the proposed Settlement Agreement, including the total amount Pfizer has agreed to pay to the Class ($93,000,000); that a Class member may opt out of the Class or object to all or any part of the proposed Settlement and the process and deadline for doing so, including entering an appearance through an attorney if the Class member desires; the process for obtaining a portion of the Settlement proceeds; the final approval process for the proposed Settlement and Class Counsel's request for attorneys' fees of up to one third (33 1/3%) of the Settlement amount (plus accrued interest), reimbursement of all litigation costs and expenses, and service awards to the Named Plaintiffs; the schedule for completing the settlement approval process, including the submission of the motion for final approval of the Settlement, and the

---

*Suboxone*, No. 13-MD-2445, ECF No. 984, ¶¶ 4-6 (E.D. Pa. Oct. 30, 2023) (approving form and manner of notice); *Exforge*, No. 18-cv-04361, ECF No. 595, ¶ 13 (S.D.N.Y. Jan. 26, 2023) (approving form and manner of notice); *Namenda*, 1:15-cv-07488, ECF No. 919-1, at Ex. B (S.D.N.Y.) (notice); *id.* at ECF No. 920, ¶ 7 (approving the form and manner of notice); *Solodyn*, No. 1:14-md-02503-DJC, ECF No. 1094-1, at Ex. B (D. Mass.) (notice); *id.* at ECF No. 1095, ¶¶ 6-9 (approving the form and manner of notice); *Lidoderm*, 3:14-md-02521-WHO, ECF No. 1004-7 (N.D. Cal.) (notice); *id.* at ECF No. 1018, ¶¶ 6-9 (approving the form and manner of notice).

submission of the motion for attorneys' fees, expenses, and service awards to the Named Plaintiffs; and the binding effect of a final judgment on members of the Class.

In addition, the proposed Notice prominently features proposed Lead Class Counsel's contact information and information about proposed Lead Class Counsel's websites where the Settlement documents, including the proposed Plan of Allocation, Lead Class Counsel's requests for fees, expenses and service awards for the Named Plaintiffs, and any supplemental information will be provided, as well as contact information for the claims administrator.[92]

As noted above, for efficiency, each Class member will also receive, contemporaneously with their Notice, a pre-populated Claim Form that will be due 60 days from the date the Notice and Claim Form are mailed.

### 2.    Manner of Notice

Plaintiffs propose to send Notice by first-class United States mail to each Class member, all of which are business entities. The list of Class members was drawn from Pfizer, Ranbaxy, and Watson's electronic transactional sales data and/or are otherwise known to Interim Lead Class Counsel. In circumstances in

---

[92] *See Block*, 2016 WL 8201853, at *4 (approving notice that "is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's Fee Application, and the request for a Service Award for Plaintiff.").

which all class members can be identified, the best method of notice is individual notice.[93] Individual notice by first-class United States mail has been repeatedly recognized as appropriate.[94] As discussed above, courts have approved similar notice plans in similar generic suppression cases brought by direct purchasers.

### D.  R2/G Should Be Appointed Notice and Claims Administrator

Plaintiffs request that RG/2 be appointed as the Notice and Claims Administrator. RG/2 will oversee the administration of the Settlement, including disseminating Notice to the Class, calculating each Class member's *pro rata* share of the Net Settlement Fund in conjunction with Dr. Leitzinger, and distributing Settlement proceeds. RG/2 has been appointed claims administrator in similar cases, including in this Circuit.[95]

---

[93] *See* MANUAL, § 21.311 at 488 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort.").

[94] *See, e.g.*, *Smith*, 2007 WL 4191749, at *5 ("first-class mail . . . is unquestionably the best notice practicable under the circumstances"); *K-Dur*, 2017 WL 3124429, at *1; *Block*, 2016 WL 8201853, at *4; *Neurontin,* No. 02-cv-01390, ECF No. 727, at ¶ 6 (D.N.J. May 2, 2014); *Suboxone*, No. 13-MD-2445, ECF No. 984, ¶¶ 4-6 (E.D. Pa. Oct. 30, 2023). *See also* 5 MOORE'S FEDERAL PRACTICE § 23.102[3][a] (2020) ("Courts most often have ordered the class proponent to give notice of the class action by first-class mail to all individual class members who can be identified with reasonable effort").

[95] *See, e.g.*, *Suboxone*, No. 13-MD-2445, ECF No. 984, ¶ 9 (E.D. Pa. Oct. 30, 2023); *Exforge*, No. 18-cv-04361, ECF No. 595, ¶ 16 (S.D.N.Y. Jan. 6, 2023); *Opana*, No. 14-cv-10150, ECF No. 1054, ¶ 10 (N.D. Il. Jul. 28, 2022); *Loestrin*, No. 13-md-2472, ECF No. 1426, ¶ 11 (D.R.I. Mar. 23, 2020). *See also* Ex. 4 (Declaration of William Wickersham, dated Feb. 13, 2024), at ¶ 3.

### E.    The Huntington National Bank Should Be Appointed Escrow Agent

Plaintiffs request that the Court approve The Huntington National Bank to serve as Escrow Agent, just as courts have previously done in other cases.[96] Pfizer has approved this selection. *See* Ex. D to the Settlement Agreement (Escrow Agreement).

### F.    The Plan of Allocation Should Be Preliminarily Approved

The proposed Plan of Allocation is attached as Exhibit 2. As outlined in Sections §§ III.B.3(b) and III.B.4, *supra*, the proposed Plan of Allocation is fair and equitable, is endorsed by Interim Lead Class Counsel and Dr. Leitzinger, and should be approved.

### G.    The Proposed Schedule is Fair and Should Be Approved

As set forth in the proposed order filed herewith, Plaintiffs propose the following schedule for completing the Settlement approval process:

- Within 10 days of filing of the Settlement Agreement and motion for preliminary approval, Pfizer shall serve notices pursuant to the Class Action Fairness Act of 2005 ("CAFA notices");

- Within 15 days from the date of preliminary approval, Notice shall be mailed to each member of the Class;

---

[96] *See e.g., In Re Broiler Chicken Grower Antitrust Litig. (No II)*, No21-cv-00033, ECF No. 326, at ¶¶ 10-12 (E.D. Okla. Apr. 17, 2023) (appointing The Huntington National Bank as escrow agent); *Loestrin*, No. 13-md-02472, ECF No. 1426, at ¶ 12 (D.R.I. Mar. 23, 2020) (same); *Solodyn*, No. 14-md-2503, ECF No. 1095, ¶ 11 (D. Mass); *Cook v. Rockwell Int'l Corp., et al*, No. 90-cv-00181, ECF No. 2418 (D. Colo. Jul. 15, 2016) (same).

- No later than 14 days before the expiration of the deadline for Class members to object to the Settlement and/or attorneys' fees, expenses and service awards, Interim Lead Class Counsel will file all briefs and materials in support of the application for attorneys' fees, costs and expenses, and service awards;

- Within 45 days from the date that Notice is mailed to each member of the Class, Class members may opt out of the Class or object to the Settlement and/or attorneys' fees, costs and expenses, and service awards;

- No later than 21 days after the expiration of deadline for Class members to object to the Settlement and/or attorneys' fees, costs and expenses, and service awards, Interim Lead Class Counsel will file all briefs and materials in support of final approval of the Settlement; and

- On a date to be set by the Court after the expiration of the deadline for Class members to file any objections to the Settlement and/or attorneys' fees, costs and expenses, and service awards, the Court will hold a final fairness hearing.[97]

This schedule is fair to Class members since it provides ample time for consideration of the Settlement and Class Counsel's request for fees, costs and expenses, and service awards before the deadline for submitting objections. Specifically, Class members will have 45 days from when the Notice is sent to opt out of the Class or object to the Settlement, and will have Class Counsel's request for fees, costs and expenses, and service awards for two weeks before the deadline to object to Class Counsel's request for fees, costs and expenses, and service awards. In addition, the schedule allows the full statutory period for Pfizer to serve

---

[97] Pursuant to 28 U.S.C. § 1715(d), a court may not finally approve a proposed settlement until 90 days from service of the CAFA notices. However, the final fairness hearing may be held prior to the expiration of that 90-day period.

its Class Action Fairness Act notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view. Similar scheduled have been approved by courts in similar cases.[98]

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the accompanying proposed order granting Plaintiffs' unopposed motion for certification of a settlement Class, preliminarily approving the Settlement, appointing David F. Sorensen and his firm Berger Montague PC, Bruce E. Gerstein and his firm Garwin Gerstein & Fisher LLP, and Thomas M. Sobol and his firm Hagens Berman Sobol Shapiro LLP as Lead Class Counsel for purposes of settlement, appointing RG/2 as Notice and Claims Administrator, appointing The Huntington National Bank as Escrow Agent, approving the form and manner of Notice to the Class, and entering the attached proposed schedule for a final fairness hearing.

---

[98] *See e.g., Exforge*, No. 18-cv-04361, ECF No. 595, ¶¶ 13-21 (S.D.N.Y. Jan. 26, 2023) (objections 45 days after notice, fee brief 14 days before objections, final approval brief 21 days after objections); *Opana*, No. 14-cv-10150, ECF No. 1054 (N.D. Il. Jul. 28, 2022) (same); *K-Dur*, 2017 WL 3124429, at *1 (D.N.J. May 23, 2017) (objections 60 days after notice, fee brief 21 days before objections, final approval brief 14 days after objections); *Neurontin,* No. 02-cv-01390, ECF No. 727 (D.N.J. May 2, 2014) (fee brief and final approval brief 30 days before fairness hearing, objections 14 days before fairness hearing).

Dated:  February 14, 2024

Respectfully submitted,

*/s/ Peter S. Pearlman*
**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Peter S. Pearlman
Park 80 West, Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
psp@njlawfirm.com

**CARELLA, BYRNE, CECCHI, OLSTEIN BRODY, & AGNELLO, P.C.**
James Cecchi
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com

*Liaison Counsel for the Direct Purchaser Class Plaintiffs*

**GARWIN GERSTEIN & FISHER LLP**
Bruce E. Gerstein
Kimberly Hennings
88 Pine Street, 28th Floor
New York, NY 10005
bgerstein@garwingerstein.com
khennings@garwingerstein.com

**BERGER MONTAGUE PC**
David F. Sorensen
Caitlin G. Coslett
1818 Market Street, Suite 3600
Philadelphia, PA 19103
dsorensen@bm.net
ccoslett@bm.net

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
Thomas M. Sobol
Gregory T. Arnold
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
tom@hbsslaw.com
grega@hbsslaw.com

*Interim Lead Counsel for the Direct Purchaser Class Plaintiffs*

Stuart E. Des Roches
Andrew W. Kelly
**ODOM & DES ROCHES LLP**
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077

Susan Segura
David C. Raphael
Erin R. Leger
**SMITH SEGURA RAPHAEL
& LEGER LLP**
221 Ansley Blvd
Alexandria, LA 71303
Tel: (318) 445-4480

Peter Kohn
**FARUQI & FARUQI LLP**
1617 JFK Blvd, Suite 1550
Philadelphia, PA 19103
Tel: (215) 277-5770

Russell Chorush
**HEIM PAYNE & CHORUSH**
1111 Bagby Street, Suite 2100
Houston, TX 88002
Tel: (713) 221-2000

*Additional Counsel for the Direct Purchaser Class Plaintiffs*